NINA MARINO, ESQ. (State Bar No. 142815)
JENNIFER LIESER, ESQ. (State Bar No. 313707)
KAPLAN MARINO, PC
1546 N. Fairfax Avenue
Los Angeles, CA  90046
Tel:    (310) 557-0007
Fax:   (310) 861-1776
Email:  marino@kaplanmarino.com
            lieser@kaplanmarino.com

Attorneys for Plaintiffs
DONALD LEO MELLEIN
PAULA MARGARITA VILLEGAS de MELLEIN

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD LEO MELLEIN;<br>PAULA MARGARITA VILLEGAS DE<br>MELLEIN,<br><br>                              Plaintiffs,<br><br><br>                              v.<br><br><br>UNITED STATES OF AMERICA;<br><br>TRACY WILKISON,<br>   in her official capacity only;<br><br>KRISTI KOONS JOHNSON,<br>   in her official and individual capacities;<br><br>LYNNE ZELLHART,<br>   in her individual capacity;<br><br>DOE UNIDENTIFIED FEDERAL LAW<br>ENFORCEMENT AGENTS 1-10,<br>   in their individual capacities,<br><br>                              Defendants. | No. 21-CV-06588<br><br>**COMPLAINT (MOTION) FOR:**<br><br>**(1) RETURN OF PROPERTY PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 41(g);**<br><br>**(2) RETURN OF PROPERTY OR DAMAGES IN AMOUNT EQUAL TO VALUE OF PROPERTY PURSUANT TO 28 USC §§ 1346, 2674 AND *CHoPP COMPUTER CORP. V. UNITED STATES*, 5 F.3D 1344 (9TH CIR. 1993);**<br><br>**(3) DAMAGES PURSUANT TO *BIVENS V. SIX UNKNOWN NAMED AGENTS OF THE FEDERAL BUREAU OF NARCOTICS*, 403 U.S. 388 (1971);**<br><br>**(4) ORDER REQUIRING DISCLOSURE OF WRITTEN AND VIDEO INVENTORY**<br><br>**DEMAND FOR JURY TRIAL** |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that as soon as the matter may be calendared and heard, Plaintiffs Donald Mellein and Paula Margarita Villegas de Mellein will and hereby do move the Court (1) for an order that the government returns all as-yet unreturned property it seized from Box #224 pursuant to Fed. R. Crim. Proc. § 41(g), or in the alternative; (2) for compensatory damages pursuant to 28 USC §§ 1346, 2647; (3) for an order awarding damages pursuant to *Bivens v. Six Unknown Names Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); and (4) for an order requiring the government to provide all inventory materials and records related to the search, seizure, and chain-of-custody of the contents of Box #224 at U.S. Private Vaults, located at 9182 West Olympic Blvd., Beverly Hills, CA 90212. Plaintiffs are entitled to this material pursuant to Federal Rules of Criminal Procedure 41 and the Fourth and Fifth Amendments of the United States Constitution.

This Motion shall be based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declarations of Nina Marino and Jennifer Lieser, the files and records in this action, and any other evidence that may be presented at or before the hearing on this matter.

Because Plaintiffs are not the subject of any criminal prosecution, any request made under Fed. R. Crim. Proc. § 41 is treated as a civil equitable proceeding. *Nottoli v. United States*, No. 1: 13-mc-0049-BAM (E.D. Cal. Sep. 26, 2013) (citing *United States v. Ritchie*, 342 F.3d 903, 906 (9th Cir. 2003)).

DATED: August 13, 2021

Respectfully submitted,
KAPLAN MARINO, PC

/s/ Nina Marino

_____

NINA MARINO
JENNIFER LIESER
Attorneys for Plaintiffs
DONALD LEO MELLEIN
PAULA MARGARITA VILLEGAS de
MELLEIN

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

1.      Donald Mellein is a 77-year-old retired civil servant for the City of Los Angeles and Paula Margarita Villegas de Mellein is his wife, an El Salvadorean who fled to the United States in 1981 after experiencing severe hardship. Both have led law-abiding lives of service and dedication to the City of Los Angeles where Donald Mellein worked for 24 years. Nearly five months ago, the government unlawfully seized from their safe deposit Box #224 at U.S. Private Vaults, Inc. ("USPV") their retirement savings and the inheritance they had slowly built up for their 19-year-old son. On June 14, 2021, the FBI returned only *some* of their property. ***The FBI failed to return approximately 110 one-ounce gold coins, worth roughly $220,000.***

2.      Counsel for Plaintiffs immediately sent written notice to FBI Agent Lynne Zellhart and AUSA Andrew Brown requesting a copy of the video footage captured by the FBI when inventorying Plaintiffs' safe deposit box. Counsel also attempted to reach Agent Zellhart multiple times via phone, however, the number appeared to be disconnected. After receiving no written or verbal response from Agent Zellhart, counsel contacted AUSA Brown who informed counsel that the FBI's raid of U.S. Private Vaults, was "not [the FBI's] finest moment" and promised counsel he would work on obtaining a copy of the video inventory for Plaintiffs' box. Later that same day, in response to counsel's request for the video inventory, AUSA Brown provided counsel with the contact information for FBI Associate Division Counsel Tammy Bloomfield. Counsel attempted to reach Ms. Bloomfield, but her phone rang indefinitely with no voicemail. Counsel then sent an email to Ms. Bloomfield on that same day requesting the video inventory. Ms. Bloomfield never responded.

3.      The Government's seizure of Plaintiffs' retirement savings and inheritance for their teenage son has caused Plaintiffs considerable stress and anxiety. The Government's loss of 110 gold coins valued at approximately $220,000 and lack of any kind of inventory necessary to trace them, coupled with the lack of ***any meaningful response at all*** from the Government, only adds to their injury.

4.      Plaintiffs seek an order (1) that the government returns all as-yet unreturned

property it seized from Box #224 pursuant to Fed. R. Crim. Proc. § 41(g), or in the alternative; (2) for compensatory damages pursuant 28 U.S.C. §§ 1346, 2647 and *CHopp Corp. v. United States*, 5 f.3d 1344 (9th Cir. 1993); (3) for damages pursuant to *Bivens v. Six Unknown Names Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); and (4) for the government to provide all inventory materials and records related to the search, seizure, and chain-of-custody of the contents of Box #224 at U.S. Private Vaults, Inc., located at 9182 West Olympic Blvd., Beverly Hills, CA 90212. Plaintiffs are entitled to this material pursuant to Federal Rules of Criminal Procedure 41 and the Fourth and Fifth Amendments of the United States Constitution.

## II.     JURISDICTION, AUTHORITY AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Article III of the United States Constitution in that the United States is a party to this action, and the action involves questions of federal statutory and constitutional law.

6.     The Court has the authority to order Defendants to return Plaintiffs' personal property pursuant to Federal Rules of Criminal Procedure § 41(g) ("Rule 41(g)"), even in the absence of a criminal proceeding, as it was the subject of an unlawful search, seizure, and deprivation of property. *See Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993); *United States v. Martinson*, 809 F.2d 1364, 1366-67 (9th Cir. 1987).

7.     This Court has the inherent equitable power to order the return of Plaintiffs' personal property separate and apart from Rule 41(g). *see Otonye v. United States*, 903 F. Supp. 357, 360 (E.D.N.Y. 1995).

8.     This Court has the authority to award damages against law enforcement agents for wrongful taking and for wrongful retention of property pursuant to the Federal Tort Claims Act and Ninth Circuit precedent in *CHoPP Computer Corp. v. United States*, 5 F.3d 1344 (9th Cir. 1993).

9.     This Court also has the authority to award damages against the law enforcement agents who engaged in the unlawful search and seizure of Plaintiffs' property pursuant to the United States Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), and its progeny.

10.   This Court has the authority to grant the declaratory relief sought herein pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Federal Rules of Civil Procedure § 57.

11.   This Court has the authority to order the government to disclose to Plaintiffs' counsel any inventory of the contents of the safe deposit box pursuant to Federal Rules of Criminal Procedure § 41(f) ("Rule 41(f)").

12.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1), (2) and (3) and (e)(1) because Defendants include officers and employees of the United States and its agencies and, on information and belief, they reside in this district; because a substantial part of the events and/or omissions giving rise to the claims alleged herein occurred in this district; and because a substantial part of the property that is the subject of this action is situated in this district.

## III.   PARTIES

### A.  Plaintiffs

13.   Plaintiffs Donald Leo Mellein and Paula Margarita Villegas de Mellein, are, and at all relevant times were, individuals over the age of 18 and residing in Los Angeles County, California.

### B.  Defendants

14.   Defendant United States of America is, and at all relevant times was, the United States, its departments, agencies, and entities, including those responsible for the Fourth and Fifth Amendment violations alleged in this action.

15.   Defendant Wilkison is, and at all relevant times was, the Acting United States Attorney for the Central District of California (the "U.S. Attorney"). The U.S. Attorney has authority over all policies and practices of the USAO, and all actions taken by Assistant United States Attorneys for the Central District of California. Defendant Wilkison is sued in her official capacity only.

16.   Defendant Koons Johnson is, and at all relevant times was, the Assistant Director in Charge of the FBI's Los Angeles Field Office (the "Assistant Director"). The Assistant Director has authority over the policies and procedures implemented by, and the actions of, FBI agents

1  assigned to the Los Angeles Field Office. Defendant Koons Johnson is sued in her official and

2  individual capacities.

3      17.   Defendant Lynne Zellhart is, and at all relevant times was, the lead agent assigned

4  to the search and seizure at U.S. Private Vaults, Inc. Agent Zellhart supervised, participated in,

5  and/or otherwise aided and assisted the unlawful search and seizure of Plaintiffs' safe deposit box

6  and its contents, and is jointly and severally responsible and liable for the damage and harm caused

7  to Plaintiffs.

8      18.   Plaintiffs are unaware of the true names and capacities of those Defendants sued as

9  DOES 1-10, and therefore sues those Defendants using their fictitious names. On information and

10  belief, each such Defendant is a federal law enforcement agent who supervised, participated in, or

11  otherwise aided and assisted the unlawful search and seizure of Plaintiffs' safe deposit box and its

12  contents, and is jointly and severally responsible and liable for the damage and harm caused to

13  Plaintiffs. Plaintiffs will amend this pleading to allege the true names and capacities of DOES 1-

14  10 when they have been ascertained.

15  **IV.   RELATED CASES**

16      19.   This case is related to the following civil cases pending in this district before United

17  States District Judge Gary R. Klausner:

18  (a) *John Doe v. United States of America, et al.*,

19  Case No. 2:21-cv-02803, filed on March 31, 2021;

20  (b) *Richard Roe v. United States of America, et al.*,

21  Case No. 2:21-cv-02919, filed on April 5, 2021;

22  (c) *Michael Moe v. United States of America, et al.*,

23  Case No. 2:21-cv-02990, filed on April 6, 2021;

24  (d) *Charles Coe v. United States of America, et al.*,

25  Case No. 2:21-cv-03019, filed on April 7, 2021;

26  (e) *DOES 1-6 v. United States of America, at al.*, Case No. 2:21-cv-

27  03254, filed on April 15, 2021;

28  (f) *Mitchell Magee v. United States of America, et al.*,

1 Case No. 2:21-cv-03298, filed on April 16, 2021;

2 (g) *Louis Loe v. United States of America, et al.,*

3 Case No. 2:21-cv-03348, filed on April 19, 2021;

4 (h) *Search and Seizure of Box No. 8309 at U.S. Private Vaults*

5 Case No. 2:21-cv-03554, filed on April 26, 2021; and

6 (i) *John Joe v. United States, et al.,*

7 Case No. 2:21-cv-04366, filed on May 25, 2021.

8     20. This case is related to the above civil cases pursuant to Local Rule 83-1.3, in that:

9 (a) they all arise from the same or closely related transactions, happenings and events; (b) they all

10 call for the determination of the same or substantially related or similar questions of law and fact;

11 and (c) because they all name the United States as a defendant and seek some of the same relief,

12 they would entail substantial duplication of effort if heard by different judges.

13 **V.     STATEMENT OF FACTS**

14     21. Plaintiffs request that the Court take judicial notice of all filings before this Court

15 arising from the search of USPV and, ¶¶ 22 through 57 contained in the Statement of Facts to the

16 Complaint of *John Joe v United States et al.*, Case No. 2:21-cv-04366.

17 **A. Defendants' search and seizure of Plaintiffs' property at USPV.**

18     22. Plaintiffs leased safe deposit Box #224 at USPV. They were given the only two

19 keys to Box #224 and have maintained control over Box #224 since commencement of their lease

20 in September 2017. Plaintiff Donald Mellein has one of the keys and Plaintiff Paula Margarita

21 Villegas de Mellein has the other. As of the time of the search and seizure of USPV by the FBI,

22 Plaintiffs were current on their rent payments and had an expectation of privacy in the interior of

23 Box #224 and its contents.

24     23. Neither of Plaintiffs are owners, officers, directors, managers, supervisors,

25 employees, or representatives of USPV, and are not associated with or a customer of the Gold

26 Business that is co-located with or adjacent to USPV. Plaintiffs were not aware of any criminal

27 activity occurring at or connected to USPV. Plaintiffs would not have rented Box #224 or

28 continued to rent Box #224 at USPV if they had become aware of any such activity.

24.     Plaintiffs' property was in their safe deposit Box #224 when the Government seized control of USPV and the nests of other safe deposit boxes at USPV on or about March 22, 2021.

25.     Plaintiffs invested their retirement savings and inheritance for their 19-year-old son in a collection of gold coins and one gold bar that they stored at USPV along with cash from an auto accident settlement. Specifically, Plaintiffs' safe deposit Box #224 contained (a) miscellaneous papers, including a receipt for 20 of the 110 gold coins stored in Box #224; (b) one gold bar; (c) $57,434.61 in US currency; and (d) 110 one-ounce gold coins – which included 30 Canadian maple leaf gold coins and 80 American Eagle going coins. Defendants have already implicitly acknowledged by returning some of Plaintiffs' property that the contents of Box #224 were not contraband or otherwise connected to criminal activity. Affixed to the top of Box #224 was Donald Mellein's name and contact information and name and contact information for the successor trustee in the event Plaintiffs died or wered otherwise incapacitated.

26.     As this Court is now aware, beginning on March 22, 2021, Defendants executed search and seizure warrants at USPV. Among other things, Defendants seized each of the hundreds of safe deposit boxes housed at the facility, along with the contents of each box belonging to the individual box holders who rented them. Plaintiffs' Box #224 and its contents were among those seized.

**B.  Plaintiffs' background and purchase of gold coins.**

27.     In 1966, Don Leo Mellein left his job with Security Pacific Bank and tested with the City of Los Angeles Department of Water and Power. After passing the test, he was hired as an Assistant Steam Plan Operator at the Van Nuys DWP plant.  He went on to work his way up through various positions in DWP, participating in major projects including the Pacific Northwest Intertie and the building of the Castaic dam.  In 1979, he transferred to Parks and Recreation as an electrician and electrical supervisor. Eventually, in approximately 1984, he transferred to the General Services Division where he rose to the position of Building Maintenance District Supervisor. He was in this position when he retired on March 6, 2000, after 24 years of service to the City of Los Angeles.

28.     Paula Margarita Villegas was born April 15, 1961 in El Salvador.  Paula grew up

in El Salvador during periods of political instability and violent unrest, including civil war. One of her brothers was kidnapped and killed by guerillas. She spoke out against communism and experienced great personal hardship at the hands of the government as a result. She eventually fled to America in 1981.

29.     Soon after Paula arrived in the United States, Donald and Paula met, began dating, and were married in 1986. After his retirement from the City of Los Angeles in 2000, Donald had plans to do volunteer work for the Salvation Army, but this was derailed when Paula decided she wanted to have a baby before it was too late. (She was 40.) She became pregnant and the pregnancy was difficult. At the time, she and Donald were living in a four-story house in Malibu at 2955 Sequit Drive.  Paula was bedridden for most of the pregnancy, which was touch and go as to whether the baby would be carried to term.  Donald cared for Paula throughout the pregnancy.

30.     On May 26, 2002, the baby was born, a son, William Alexander Villegas-Mellein. William was born with severe health problems, including hip displacement which resulted in him being placed in a full-body cast, then a harness. After treatment for 18 months, he was able to stand and eventually was able to overcome his health problems. Today William lives with his family and is employed by Trader Joe's.

31.     To help provide for their new family, in 2002, Donald and Paula sold their four-story house in Malibu for $895,000. The mortgage was fully paid at that point, so Donald and Paula netted approximately $800,000. A very substantial amount of these proceeds remained intact and were available to Donald and Paula as they began to buy gold coins in 2005.

32.     In the early 2000s, Donald became friendly with an elderly holocaust survivor, the owner of Kurt Jewelers in Los Angeles. Kurt spoke to Donald at length about the wisdom of opting out of the banking system for at least part of his personal wealth, due to the instability of the banking system, and what Kurt perceived to be the wisdom of owning gold.  Donald had always maintained a somewhat skeptical view of the government and its institutions, and after listening to Kurt, Donald made his first purchase of gold coins on January 5, 2005, purchasing 30 gold one-ounce Canadian Maple leaf coins for $433 each, a total of $13,000. (Lieser Dec., ¶ 3, Ex A, 30 gold coins receipt.) He used funds from his savings, mainly the proceeds from sale of the Malibu

1  property, to fund the purchase.

2      33.    Donald's next purchase of gold was 60 American Eagle one-ounce gold coins,

3  purchased in March 2006 with the proceeds from liquidating his Great West Retirement Services

4  account, for which he received a check in the amount of $57,434.61. He cashed the check on March

5  16, 2006, and after paying taxes used the remainder to buy the 60 gold coins.

6      34.    Donald's final purchase of gold coins took place on May 5, 2008, when he bought

7  20 American Eagle one-ounce coins at approximately $900 each, for a total purchase of

8  approximately $18,000, paid from savings. The receipt for this purchase was stored in Box #224

9  at USPV and was returned to counsel by the FBI on June 14, 2021. (Lieser Dec., ¶ 4, Ex. C, 20

10  gold coins receipt.)

11      35.    Upon making each purchase of gold coins, Plaintiffs stored the coins in their safe

12  deposit box at Wells Fargo Bank in Thousand Oaks. As time went on, Donald became

13  progressively more concerned about banking instability. Paula mentioned seeing USPV when she

14  drove on Olympic Blvd. The couple decided to move their property from Wells Fargo Bank in

15  Thousand Oaks to USPV in September 2017.  Their property remained there, at USPV, until it

16  was seized by the FBI on or about March 22, 2021.

17      36.    Plaintiffs frequented USPV to add to or check on the contents of their safe deposit

18  Box #224 approximately three to four times a year since September 2017. During these visits,

19  Donald added cash, documents, and on a few occasions, took out cash. The major cash infused

20  came when Donald received a settlement of $145,000 in approximately 2017 to 2018 from an auto

21  accident that nearly took his life. Plaintiffs last viewed the contents of Box #224, including their

22  110 gold coins which were neatly stored in plastic vials, in January 2021. Plaintiffs have been

23  unable to enter the USPV facility or access Box #224 or its contents since March 22, 2021.

24      **C. Defendants returned some, but not all, of Plaintiffs' property.**

25      37.    Shortly after learning of the seizure of their property, around April 12, 2021,

26  Plaintiffs' counsel submitted a claim for return of property on behalf of Plaintiffs at

27  forms.fbi.gov/uspvclaims and provided the law firm contact information. The form did not require

28  the inclusion of a box number or box contents – it only requested name and contact information.

1    (Lieser Dec., ¶ 2.)

2        38.    On or about May 24, 2021, Plaintiffs received via certified mail a notice of

3    forfeiture of their property. The forfeiture notice did not identify all the property Plaintiffs had

4    stored in Box #224. It failed to include approximately 110 gold coins belonging to Plaintiffs.

5    (Lieser Dec., ¶ 3.)

6        39.    On June 1, 2021, Plaintiffs' counsel spoke with Agent Zellhart in connection with

7    this matter. During that call Agent Zellhart agreed to remove Box #224 from the FBI forfeiture list

8    and return the property identified as belonging to Box #224 to Plaintiffs. When counsel inquired

9    regarding the status of Plaintiffs' gold coins, which did not appear on the FBI forfeiture list, Agent

10   Zellhart stated that perhaps the gold coins were separated from the rest of the property as not

11   subject to forfeiture. It was counsels' expectation that all of Plaintiffs' property was to be returned,

12   including the gold coins. (Marino Dec., ¶ 2.)

13       40.    On June 14, 2021, Plaintiffs' counsel met with FBI Agent Lynne Zellhart and

14   another unidentified agent to obtain the contents of Box #224 that had been seized by Defendants.

15   When the agents arrived with Box #224, they verified Plaintiffs' ownership by testing the USPV

16   key that counsel had brought. After the key turned the lock for Box #224,[1] the agents provided

17   counsel with a property receipt for Box #224. (Lieser Dec. ¶ 4, Ex. B.). Notably, the receipt – and

18   apparently the "inventory" form from which it was allegedly precisely copied – fails to include

19   any record of the 110 gold coins seized on March 22, 2021.

20       41.    Upon return from the FBI, Counsel Lieser immediately sent a letter to Agent

21   Zellhart and copied AUSA Andrew Brown notifying them of the missing coins and requesting a

22   copy of the video inventory.[2] (Lieser Dec., ¶ 5, Ex. D.) Counsel requested that Agent Zellhart

23   respond to their request with urgency. Despite multiple follow-up attempts, counsel has not

24   received a response from Agent Zellhart. That same day, counsel also left a voice message for

25   _____

26   [1] Of note, the key did not actually retract the lock to the safe deposit box, it merely turned in the
     lock. Agent Zellhart stated, although not verbatim, "Well what do you say, should we trust
27   them?" and proceeded to have her unidentified FBI agent assistant remove the contents of the
     box.

28   [2] In the letter, counsel indicated there were 120 missing coins. After a thorough accounting, it
     has been determined there were approximately 110.

1  Agent Zellhart which was never returned. (Lieser Dec., ¶¶ 5-6.)

2        42.    On June 21, 2021, Plaintiffs' counsel left a voice message and an email for AUSA

3  Andrew Brown again requesting a copy of the video inventory of Box #224 and on June 22, 2021,

4  counsel attempted to reach Agent Zellhart over the phone, but her line continued to ring and

5  eventually just cut off. Counsel then contacted the receptionist at the FBI who informed that an

6  email message had been sent to Agent Zellhart. Later that same day, AUSA Brown returned

7  counsel's call and informed counsel that the FBI's search and seizure at USPV was "not their finest

8  moment." Counsel did not disagree. AUSA Brown then provided counsel with the phone number

9  for FBI Associate Division Counsel Tammy Bloomfield whom AUSA Brown indicated would be

10  the appropriate contact for requesting the video inventory. Counsel then attempted to reach Ms.

11  Bloomfield; however, Ms. Bloomfield's number just rang and rang with no voicemail. Counsel

12  then emailed Ms. Bloomfield requesting the video inventory and a return call. Counsel never

13  received a response from Ms. Bloomfield. (Marino Dec., ¶ 3; Lieser Dec., ¶ 6.)

14        43.    With no further non-litigious recourse and with Plaintiffs' growing panic and

15  emotional distress, Plaintiffs have filed this present Complaint to seek the Court's intervention.

## VI. RULE 41 AND THE COURT'S INHERENT POWER TO PROVIDE A VEHICLE TO OBTAIN RELIEF

### A. Plaintiffs are "aggrieved by the deprivation of their property" and are entitled to a copy of the video inventory of Box #224.

      44.    Federal Rule of Criminal Procedure 41(g) provides:

> **Motion to Return Property.** A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant but may impose reasonable conditions to protect access to the property and its use in later proceedings.

45. Plaintiffs are "aggrieved . . . by the deprivation of property," namely the 110 one-ounce gold coins that Defendants have not returned to them. Plaintiffs seek the immediate return of their property.

46. Rule 41 is clear that "in a motion for return of property, as with any other equitable action, a court may fashion *any* appropriate relief that comports with traditional equitable principles" absent "clear Congressional command to exclude certain forms of relief." *United States v. Rodriguez*, No. EP-08-1865-PRM, 2011 WL 5854369, at *3 (W.D. Tex. Feb. 18, 2011); *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974) ("Rule 41 is a crystallization of the principle of equity jurisdiction. That equity jurisdiction persists as to situations not specifically covered by the Rule."); *see also United States v. Martinson*, 809 F.2d 1364, 1367 (9th Cir. 1987) (reversing denial of Rule 41(g) motion because "[i]t is the historic purpose of equity secure complete justice. The courts will be alert to adjust their remedies so as to grant the necessary relief."). The guiding principle of Rule 41(g) is "reasonableness under all of the circumstances." Fed. R. Crim. P. 41(g) Advisory Comm. Notes (1989), 124 F.R.D. 397, 427-29.

47. In addition to the power granted by Rule 41, the Court has the inherent equitable power to consider motions for return of property. "This power stems from the court's disciplinary authority over attorneys appearing before it as officers of the court. This inherent power also extends to federal agents charged with 'observ[ing] 'standards for law enforcement' established by 'the federal Rules governing searches and seizures.'" *Otonye v. United States*, 903 F. Supp. 357, 360 (E.D.N.Y. 1995) (citations omitted).

48. Where, as here, the Government concedes that it must return a claimant's property, the Government bears the initial burden of proving that it "observed standards . . . governing searches and seizures," and handled the property consistent with proper protocols:

> Since [] Plaintiff's constitutional rights under the Fourth
> Amendment are implicated, it makes sense that the government
> should initially bear the burden of proving that it dealt with
> Plaintiff's property in accordance with regulations prescribed in 41

C.F.R. § 128.50–101[3] or other acceptable standards. Once this showing is made, the burden should then shift to the claimant to demonstrate the existence of the claimed property.

*Id.* at 363 n.8; *see also United States v. Cardona*, 897 F. Supp. 802, 804 (S.D.N.Y. 1995) ("Clearly, the Government, in order to defeat a motion for the return of seized property, must provide some evidentiary proof accounting for the property seized."). Thus, the Government should be prepared to provide this information.

49.     Where, as here, no criminal proceeding is pending against a Rule 41(g) movant, the district court considers four factors in deciding whether to exercise jurisdiction over the movant's request for relief: whether "(1) the Government displayed a callous disregard for the constitutional rights of the movant; (2) the movant has an individual interest in and need for the property he wants returned; (3) the movant would be irreparably injured by denying return of the property; and (4) the movant has an adequate remedy at law for the redress of his grievance." *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) (quoting *Ramsden v. United States*, 2 F.3d 322, 324-325 (9th Cir. 1993)) (internal citation marks omitted). Not all factors must weigh in the movant's favor for the district court to exercise jurisdiction; rather, a court engages in a balancing test. *Ramsden*, 2 F.3d at 326 (exercising jurisdiction over Rule 41(g) motion despite finding that the plaintiff had not shown irreparable injury).

50.     The Government's failure to account for 110 gold coins and its provision of a patently deficient receipt which fails to include a complete accounting of all of Plaintiffs' property

---

[3] This regulation applies to Justice Department agencies and provides:

Each bureau shall be responsible for establishing and maintaining inventory records of its seized personal property to ensure that:

(a) The date the property was seized is recorded;

(b) All of the property associated with a case is recorded together under the case name and number;

(c) The location of storage of the property is recorded;

(d) A well-documented chain of custody is kept; and

(e) All information in the inventory records is accurate and current.

41 C.F.R. § 128-50.101.

stored in Box #224 satisfies all four elements of Rule 41's jurisdictional query: (1) failing to create or provide any useful inventory and losing Plaintiffs' retirement assets and inheritance for their son is easily callous; (2) Plaintiffs have an individual interest in and need for their retirement funds and ability to continue to care for and provide for their son; (3) Plaintiffs would be irreparably injured by the loss of their assets; and (4) Plaintiffs have no adequate remedy at law for the redress of this grievance. Thus, Plaintiffs submit that the Court should exercise its jurisdiction to help them.

51.    Because Plaintiffs have not been charged in any criminal proceeding – indeed Defendants have already returned some of their property and therefore impliedly concedes it had no probable cause to search or seize it – their Rule 41 motion is treated as a civil equitable proceeding. *See, e.g., United States v. Ibrahim*, 522 F.3d 1003, 1008 (9th Cir. 2008).

### B. Plaintiffs are entitled to their as-yet-unreturned assets.

52.    Federal Rule of Criminal Procedure 41(g) empowers the Court to order return of both lawfully and unlawfully seized property. The Rule provides that "[a]person aggrieved by . . . the deprivation of property may move for the property's return" and "[i]f it grants the motion, the court must return the property to the movant[.]" Fed. R. Crim. P. 41(g). Rule 41(g) offers recourse for anyone "whose property or privacy interests are impaired by [a] seizure." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1173 (9th Cir. 2010), overruled in part on other grounds as recognized by *Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018). Even if the original seizure was legal, Rule 41 provides for relief for the continued improper retention of property: "As amended, Rule 41[g] provides that . . . a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it." Fed. R. Crim. P. 41(g), Advisory Comm. Notes (1989), 124 F.R.D. 397, 427-429.

53.    A court determines whether property should be returned to its owner based on "reasonableness under all of the circumstances." Fed. R. Crim. P. 41(g) Advisory Comm. Notes (1989), 124 F.R.D. 397, 427-29; *Ramsden*, 2 F.3d at 326. The standard of proof is preponderance of the evidence. *See Motion to Return Property*, 3A Fed. Prac. & Proc. Crim. § 690 (4th ed.) (citing cases). Importantly, where, as here, the property at issue is not being held as part of a criminal

search or seizure, the property owner "is presumed to have a right to [the property's] return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property." *United States v. Gladding*, 775 F.3d 1149, 1152 (9th Cir. 2014) (citing *Martinson*, 809 F.2d at 1369 (alteration in original). Indeed, a property owner's Rule 41(g) motion "should presumptively be granted if the government no longer needs the property for evidence." *United States v. Kriesel*, 720 F.3d 1137, 1144 (9th Cir. 2013). The Government can rebut this presumption only with admissible evidence; mere arguments or assertions by Government attorneys are not sufficient. *See Gladding*, 775 F.3d at 1153 ("[R]epresentations are not evidence unless adopted by the opponent. The government failed to submit any evidence [supporting] a 'legitimate reason' for retention of the noncontraband files. For that reason, the government could not have carried its burden of proof[.]"); *Motion to Return Property*, 3A Fed. Prac. & Proc. Crim. § 690 (4th ed.) ("If factual issues need to be resolved to decide the motion, the court must receive evidence on the factual issues.").

54.    Even a temporary delay in returning property has Fourth Amendment ramifications. For example, the Ninth Circuit has found that a "30-day impound is a 'meaningful interference with an individual's possessory interests'" under the Fourth Amendment. *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017) (quoting *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)). This is true even when the original seizure was justified: "The Fourth Amendment doesn't become irrelevant once an initial seizure has run its course. . . . Thereafter, the government must cease the seizure or secure a new justification." *Id.* at 1197 (citing *United States v. Jacobsen*, 466 U.S. 109, 124 & n.25 (1984)). Here, Defendants say the inventory and inspection were completed no later than March 26, 2021, when it ended its search of USPV. (Govt. Opp. to Ex Parte App. for TRO and OSC at 2, *Doe v. United States*, No. 2:21-cv-02803, Dkt. 15.) But the Defendants have continued the "impound" of Plaintiffs' property for over two months now and still refuse to return it or even acknowledge Plaintiffs continued requests for the video inventory search. Defendants have no authority for the continued retention of Plaintiffs' property and indeed have acknowledged that it does not by agreeing to return some of it. Defendants' retention, therefore, violates the Fourth Amendment.

## VII.  RELEVANT PROVISIONS OF THE FEDERAL TORT CLAIMS ACT

55.     Under the Federal Torts Claim Act ("FTCA"), United States "[D]istrict [C]ourts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346. With respect to tort claims under the FTCA, "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. The FTCA applies to "any claim based on injury or loss of goods, merchandise, or other property, while in the possession of any [] law enforcement officer." 28 U.S.C. § 2680(c).

56.     A conversion claim may be brought against the federal government under California law in conjunction with the FCTA. *CHoPP Computer Corp. v. United States*, 5 F.3d 1344, 1347 (9th Cir. 1993). Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998).

57.     Plaintiffs owned 110 one oz. gold coins which were stored in their safe deposit box until the government wrongfully took possession of the box and hence the coins. Plaintiffs' property is not being held pursuant to any sort of criminal investigation nor is the Government seeking forfeiture of said property. Yet Defendants refuse to return the remainder of Plaintiffs' property. Since there is no legal basis for the continued detention of Plaintiffs' property, Defendants have engaged in a wrongful taking of Plaintiffs' property entitling Plaintiffs to return of said property and damages.

## VIII.  RELEVANT SEARCH AND SEIZURE LAW

58.     Not only are Defendants actively violating Plaintiffs' Fourth Amendment rights

1   through the wrongful detention of their property, but the initial search and seizure of Plaintiffs'

2   safe deposit box was in violation of Plaintiffs' Fourth Amendment rights. The Fourth Amendment

3   to the United States Constitution provides that, "[t]he right of the people to be secure in their

4   persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

5   violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation,

6   and particularly describing the place to be searched, and the persons or things to be seized." U.S.

7   Const., amend IV. "The Fourth Amendment protects two types of expectations, one involving

8   'searches,' the other 'seizures.' A 'search' occurs when the government intrudes upon an

9   expectation of privacy that society is prepared to consider reasonable. A 'seizure' of property

10  occurs when there is some meaningful interference with an individual's possessory interests in that

11  property." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012) (quoting *United

12  States v. Jacobsen*, 466 U.S. 109, 113 (1984)). There is no question both occurred here. All of

13  Plaintiffs' possessions in Box #224 were searched and were seized—but at issue here are solely

14  the 110 missing gold coins.

15  **A.  The Probable Cause requirement**

16       59.     The confiscation, detention, inspection, and/or cataloging of the contents of a safe

17  deposit box containing private property is a search and seizure for purposes of the Fourth

18  Amendment. *See, e.g., United States v. Chadwick*, 433 U.S. 1, 11 (1977) ("By placing personal

19  effects inside a double-locked footlocker, respondents manifested an expectation that the contents

20  would remain free from public examination."), abrogated on other grounds by *California v.

21  Acevedo*, 500 U.S. 565 (1991); *United States v. Spilotro*, 800 F.2d 959, 962 (9th Cir. 1986) ("We

22  begin by noting that there is no question that defendant Blasko has standing to challenge the search

23  of his home, person, and safe deposit box."); *United States v. Wetselaar*, 2013 WL 8206582, *10

24  (D. Nev. Dec. 31, 2013) ("[A]s renters of those boxes, Defendants had a reasonable expectation of

25  privacy in the contents, which include the space inside the box and the inner metal liner itself.").

26       60.     The Supreme Court has made clear that a warrant must describe the places to be

27  searched and the items to be seized with particularity and supported by probable cause specific to

28  those places and items:

The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized." The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase."

*Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (*quoting United States v. Ross*, 456 U.S. 798, 824 (1982)); *accord United States v. SDI Future Health, Inc*., 568 F.3d 684, 702-703 (9th Cir. 2009) ("A warrant must not only give clear instructions to a search team, it must also give legal, that is, not overbroad, instructions. Under the Fourth Amendment, this means that there [must] be probable cause to seize the particular thing[s] named in the warrant. [P]robable cause means a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of circumstances.") (citations and quotation marks omitted).

61.    Consequently, the search of a place or the seizure of an item pursuant to an overbroad warrant for which there is no specific probable cause is invalid. *See United States v. Know*, 58 F.3d 423, 427 (9th Cir. 1995) ("The warrant authorized the seizure of virtually every document and computer file at HK Video . . . . [T]he warrant contained no limitations on which documents within each category could be seized or suggested how they related to specific criminal

activity. By failing to describe with any particularity the items to be seized, the warrant is indistinguishable from the general warrants repeatedly held by this court to be unconstitutional.").

62.     Moreover, probable cause in the warrant context requires more than "mere suspicion" that the place to be searched or the item to be seized is connected to criminal activity; it requires an "evidentiary nexus" to the alleged criminal activity. *United States v. Wanless*, 882 F.2d 1459, 1466 (9th Cir. 1989) ("Even if the evidence here would . . . justify the . . . suspicion that there were illegal substances . . . [m]ere suspicion does not rise to the level of probable cause.") (internal quotations omitted); *United States v. Schultz*, 14 F.3d 1093, 1097-98 (6th Cir. 1994) ("While an officer's 'training and experience' may be considered in determining probable cause, it cannot substitute for the lack of evidentiary nexus . . . between the safe-deposit boxes and any criminal activity. Officer Ideker did not have anything more than a guess that contraband or evidence of a crime would be found in the boxes, and therefore the . . . warrant should not have been issued.").

## B.  The Government cannot deliberately or recklessly mislead the issuing Magistrate Judge.

63.     It is also well established that a warrant based upon deliberately or recklessly false or misleading information material to the issue of probable cause is invalid, in whole or in part. As the Supreme Court has decreed:

> [W]hen the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be a truthful showing. This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true. It is established law,

that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter. If an informant's tip is the source of information, the affidavit must recite some of the underlying circumstances from which the informant concluded that relevant evidence might be discovered, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was "credible" or his information "reliable." Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment."

*Franks v. Delaware*, 438 U.S. 154, 164-65 (1984) (citations and internal quotations omitted, emphasis in original); see also *United States v. Perkins*, 850 F.3d 1109, 1123 (9th Cir. 2017) ("We hold that the district court clearly erred in finding that Agent Ensley did not omit relevant information with at least a reckless disregard for whether the omissions would render the warrant application misleading. Had the omitted information been included, the application would not have supported probable cause. We, therefore, reverse the district court's denial of the motion to suppress evidence obtained pursuant to the search warrant, and vacate Perkins' conviction.").

64.    The "good faith" exception to a legally insufficient search or seizure warrant, recognized by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), does not apply where the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923; *see also United States. v. Underwood*, 725 F.3d 1076, 1085-86 (9th Cir. 2013) ("An affidavit is so lacking in indicia of probable cause, or bare bones, when it fails to provide a colorable argument for probable cause. A colorable argument is made when 'thoughtful and competent judges' could disagree that probable cause does not exist. Here .

1  . . the affidavit submitted . . . in support of the state search warrant . . . was so deficient as to render

2  official belief in its existence entirely unreasonable.") (citations omitted).

3       65.     Thus, "[a]n inventory search will not be sustained where the court believed that the

4  officers were searching for incriminating evidence of other offenses." *United States v. Feldman*,

5  788 F.2d 544, 553 (9th Cir. 1986).

6       66.     In the course of an inventory search, Government agents are not permitted to read

7  written documents, as they may contain information that goes well beyond the allowed limited

8  scope of an inventory search. *See United States v. Khoury*, 901 F.2d 948, 959 (11th Cir. 1990)

9  (reading diary during inventory search was a Fourth Amendment violation; the government agent

10  was only allowed to flip through the diary to see if any separate document or object was stuck

11  between its pages); *see also United States v. Santos*, 961 F.Supp. 71, 73–74 (S.D.N.Y.1997)

12  (finding that reading all written material among defendant's possessions during inventory search

13  was an "affirmative, investigatory act" in violation of the Fourth Amendment).

14  **C.  Relevant Fifth Amendment Due Process Law.**

15       67.     The Due Process Clause of the Fifth Amendment to the United States Constitution

16  provides that, "[n]o person shall be . . . deprived of life, liberty, or property, without due process

17  of law." U.S. Const., amend. V.

18       68.     The government's continued retention of seized property – even if initially lawful

19  – raises the issue of procedural due process. See *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir.

20  2009) ("A complaint of continued retention of legally seized property raises an issue of procedural

21  due process. . ."); *see also Al Haramain Islamic Foundation v. U.S. Dept. of Treasury*, 686 F.3d

22  965, 980 (9th Cir. 2012) ("[T]he Constitution does require that the government take reasonable

23  measures to ensure basic fairness to the private party and that the government follow procedures

24  reasonably designed to protect against erroneous deprivation of the private party's interests.");

25  *Lewis v. City of Culver City*, 2018 WL 1406609, *2 (C.D. Cal. Mar. 19, 2018) ("[T]he continued

26  retention of legally seized property would raise an issue of procedural due process . . . ."); *Lena*

27  *Sutton v. Leesburg*, Alabama, 2021 WL 1264244, *13 (N.D. Ala. Apr. 6, 2021) ("[T]he continued

28  retention of legally seized property. . . raises an issue of procedural due process.").

**D. *Bivens*.**

69.     In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that "violation of [the Fourth Amendment's] command by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct," *id.* at 389, and that a plaintiff "is entitled to recover money damages for any injuries he has suffered as a result of the agent's violation of the Amendment." *Id.* at 397; *see also Boule v. Egbert*, 980 F.3d 1309, 1315 (9th Cir. 2020) (Plaintiffs' "Fourth Amendment claim . . . is a permissible area for *Bivens* claims," and thus "may proceed as a Bivens damages claim.")

70.     The Supreme Court has long held that punitive damages may be awarded in a *Bivens* action. *See Carlson v. Green*, 446 U.S. 14, 22 (1980) ("Punitive damages are 'a particular remedial mechanism normally available in the federal courts,' and are especially appropriate to redress the violation by a government official of a citizen's constitutional rights.") (citation omitted).

**E. Defendants unlawfully searched, seized, and deprived Plaintiffs of their property.**

71.     Defendants' search of Plaintiffs' safe deposit Box #224 and continued detention of their property was, and is, unlawful and unconstitutional in the following respects, among others.

72.     First, the seizure warrant for Plaintiffs' Box #224 was invalid because Defendants lacked any probable cause that the contents of the box were contraband or otherwise connected to criminal activity. That the Defendants lacked probable cause is manifest on the face of the seizure warrant which, expressly states that "[t]his warrant does not authorize a criminal search or seizure of the contents of the safety deposit boxes." It is also evident from the supporting affidavit, which expressly states that "[t]he warrants authorize seizure of the nest of boxes themselves, not their contents." Finally, it is evident since the government returned some of Plaintiffs' property. (Unsealed redacted affidavit available at https://www.documentcloud.org/documents/21037781-uspv-aff-under-seal_redacted.)

73.     Second, based on the affidavit to the search warrant, there is no probable cause to search and/or seize the contents of Plaintiff's Box #224. (Id.)

74.     Third, Defendants cannot avail themselves of the good faith exception to a facially deficient seizure warrant because the warrant was so lacking in indicia of probable cause with respect to Plaintiffs' safe deposit box and its contents as to render official belief in the existence of such probable cause entirely unreasonable. Indeed, the warrant expressly states that it does not authorize the search or seizure of any box, including Plaintiffs, for purposes of criminal investigation.

75.     Fourth, Defendants acted unreasonably in breaking open Plaintiffs' box because they lacked probable cause that the contents of the box were contraband or otherwise connected to criminal activity, and by breaking it open, Defendants needlessly subjected its contents to theft and government tampering.

76.     Fifth, Defendants purported "inventory search" of Plaintiffs' box was unlawful because their seizure was invalid in the first place, as entirely lacking in probable cause.

77.     Sixth, Defendants purported "inventory search" of Plaintiffs' box was also unlawful as it was, in fact, a pretext for conducting an investigatory search, the true purpose of which was to further Defendants' indiscriminate criminal investigation of USPV box holders.

78.     Seventh, Defendants purported "inventory search" of Plaintiffs' box was also unlawful because it was not required by or conducted pursuant to established and standardized agency policies and procedures. By way of example, and without limitation, under the Government's inventory search policies, the Government is only permitted to conduct an inventory search as far as needed to "determine ownership" and "should extend no further." Here, there was no need for the Government to conduct an inventory search of the contents of Plaintiffs' box to determine ownership because Plaintiffs' name and telephone number, and other identifying information were affixed to the top of Plaintiffs' box.  Despite this readily available information, the Government made no effort to contact Plaintiffs before searching and seizing Plaintiffs' box and its contents.

79.     Eighth, since Defendants completed inventorying the contents of Plaintiffs' box on or about March 26, 2021, Defendants have deprived Plaintiffs of the use, benefit, and enjoyment of their property without due process by failing to return Plaintiffs' missing property.

1

## IX.   CONCLUSION

2       80.   Defendants concede that it must return Plaintiffs' property, and it has already done

3   so for some of it. But Defendants have yet to return approximately $220,000 worth of gold coins

4   belonging to Plaintiffs which they are clearly entitled to under Rule 41, the FCTA and the Fourth

5   Amendment. Plaintiffs therefore respectfully assert the following causes of action.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST CAUSE OF ACTION**

**(For Return of Property Pursuant to FRCP § 41(g)**

**(Against Defendants United States, Wilkinson, and Koons Johnson)**

81.     Plaintiffs repeat and reallege paragraphs 1 through 80 of this Complaint as if fully alleged herein.

82.     Federal Rules of Criminal Procedure § 41(g) provides that, "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return …"

83.     Plaintiff is a "person aggrieved" within the meaning of Rule 41(g) because, as described more fully above:

(a) Defendants unlawfully seized their safe deposit box at USPV and its contents, in violation of their Fourth Amendment rights;

(b) Defendants unlawfully searched that box and its contents, in further violation of their Fourth Amendment rights; and

(c) Defendants have unlawfully deprived (and continue to deprive) Plaintiffs of the use, benefit, and enjoyment of their property, in violation of their Fifth Amendment due Process rights.

84.     Because Defendants' conduct as described herein constituted an unlawful search of Plaintiffs' safe deposit box and its contents, an unlawful seizure of Plaintiffs' box and its contents, an unlawful taking of Plaintiffs' box and its contents, and an unlawful deprivation of Plaintiffs' property without due process, Plaintiffs are entitled to the return of their property under Rule 41(g).

**SECOND CAUSE OF ACTION**

**(For Return of Property or Damages in an Amount Equal to the Value of the Property**

**Pursuant to 28 U.S.C. §§ 1346, 2647 and**

***CHoPP Computer Corp.*, 5 F.3d 1344 (9th Cir. 1993))**

**(Against Koons Johnson individually, Zellhart and DOES 1-10)**

85.    Plaintiffs repeat and reallege paragraphs 1 through 84 of this Complaint as if fully alleged herein.

86.    Under California conversion law and the FCTA, Plaintiffs' safe deposit box and its contents may not be wrongfully taken or otherwise converted by the federal government.

87.    Defendants Koons Johnson, Zellhart and DOES 1-10, as agents of the United States acting under color of authority, wrongfully took or otherwise converted Plaintiffs' property in violation of California law.

88.    Because Defendants Koons Johnson, Zellhart and DOES 1-10's conduct as described herein constituted an unlawful taking of the gold coins in Plaintiffs' safe deposit box and an unlawful deprivation of Plaintiffs' property, Plaintiffs are entitled to return of their property, or if the property has been otherwise lost or stollen, compensatory damages in the amount equal to the value of the property.

**THIRD CAUSE OF ACTION**

**(For Damages Pursuant to *Bivens*, 403 U.S. 388 (19791))**

**(Against Koons Johnson individually, Zellhart and DOES 1-10)**

89.    Plaintiffs repeat and reallege paragraphs 1 through 88 of this Complaint as if fully alleged herein.

90.    Under the Fourth Amendment, Plaintiffs' safe deposit box and its contents may not be searched and seized without probable cause.

91.    Under the Fifth Amendment, Plaintiffs may not be deprived of the use, benefit, and enjoyment of their property without due process of law.

92.    Defendants Koons Johnson, Zellhart and DOES 1-10, as agents of the United States acting under color of authority, further violated Plaintiffs' Fourth Amendment rights by searching their safe deposit box without probable cause.

93.    Defendants Koons Johnson, Zellhart and DOES 1-10, as agents of the United States acting under color of authority, violated Plaintiffs' Fourth Amendment rights by seizing their safe deposit box and its contents without probable cause.

94.    Defendants Koons Johnson, Zellhart and DOES 1-10, as agents of the United States acting under color of authority, also violated Plaintiffs' Fifth Amendment rights by depriving Plaintiffs of the use, benefit, and enjoyment of the property they were storing in their safe deposit box without due process of law.

95.    Because Defendants Koons Johnson's, Zellhart's and DOES 1-10's conduct as described herein constituted an unlawful search of Plaintiffs' safe deposit box and its contents, an unlawful seizure of Plaintiffs' box and its contents, and an unlawful deprivation of Plaintiffs' property without due process, Plaintiffs are entitled to damages under *Bivens*, 403 U.S. 388 (1971), and its progeny, including, but not limited to, punitive and exemplary damages.

**FOURTH CAUSE OF ACTION**

**(For Order Disclosing Video Inventory Pursuant to Rule 41(f)**

**and the Court's Inherent Power)**

**(Against Defendants United States, Wilkison, and Koons Johnson)**

96.     Plaintiff repeats and realleges paragraphs 1 through 95 of this Complaint as if fully alleged herein.

97.     Federal Rule of Criminal Procedure 41(f)(1)(D) provides, in relevant part, that "[t]he judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant."

98.     The government has taken property from Plaintiffs, namely, 110 gold coins from their safe deposit box at USPV. Despite repeated requests, the Government has not provided Plaintiffs with the inventory of their property that was the product of Defendants' purported inventory search of Plaintiffs' safe deposit box. Accordingly, pursuant to Rule 41(f), Plaintiffs are entitled to receive any inventories of their property prepared by Defendants.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRAYER FOR RELIEF**

Plaintiffs pray for judgment against Defendants as follows:

A.     For an order requiring Defendants to immediately return all 110 gold coins seized from Plaintiffs' Box No. 224 at USPV.

B.     For damages against Defendants Koons Johnson individually, Zellhart and DOES 1-10 in an amount to be determined at trial, but at least for the value of the property taken.

C.     For punitive and exemplary damages against Defendants Koons Johnson individually, Zellhart and DOES 1-10.

D.     For an order requiring Defendants to immediately provide Plaintiffs' counsel with a copy of any inventory of Plaintiffs' property.

E.     For costs and reasonable attorney's fees pursuant to 28 U.S.C. § 2412.

F.     For such other and further relief as the Court deems just and proper.

DATED: August 13, 2021

Respectfully submitted,
KAPLAN MARINO, PC

/s/ Nina Marino

_____
NINA MARINO
JENNIFER LIESER
Attorneys for Plaintiffs
DONALD LEO MELLEIN
PAULA MARGARITA VILLEGAS de
MELLEIN

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a jury trial on all issues properly triable to a jury pursuant to Federal Rule of Civil Procedure 38.


DATED: August 13, 2021                        Respectfully submitted,
                                              KAPLAN MARINO, PC

                                              /s/ Nina Marino

                                              _____
                                              NINA MARINO
                                              JENNIFER LIESER
                                              Attorneys for Plaintiffs
                                              DONALD LEO MELLEIN
                                              PAULA MARGARITA VILLEGAS de
                                              MELLEIN

COMPLAINT