1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division
RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division
JOSEPH A. GONZALEZ
Trial Attorney, Torts Branch, Civil Division
     U.S. DEPARTMENT OF JUSTICE
     Ben Franklin Station
     P.O. Box 7146
     Washington, D.C. 20044-7146
     (202) 598-3888 (phone)
     joseph.a.gonzalez@usdoj.gov

Attorneys for Defendants Kristi Koons Johnson
and Lynne K. Zellhart in their individual capacities

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| DONALD MELLEIN, ET AL.<br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA, ET AL.,<br>    Defendants. | Case No. 2:21-cv-06588-RGK-MAR<br><br>**Individual Defendants' Notice Of Motion And Motion To Dismiss The Complaint; Memorandum Of Points And Authorities And Declaration Of Joseph A. Gonzalez; [Proposed] Order Granting Motion Lodged Under Separate Cover**<br><br>Date:    January 18, 2022<br>Time:    9:00 a.m.<br>Courtroom: 850, the Honorable<br>       R. Gary Klausner |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on January 18, 2022 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable R. Gary Klausner, United States District Court, Courtroom 850, Royal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012, Defendants Kristi Koons Johnson and Lynne K. Zellhart will and hereby do move, under to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief can be granted. This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on December 1, 2021 (*see* Gonzalez Decl. ¶ 2), and is made on the grounds that the Complaint fails to state a claim upon which relief can be granted.

This motion is based upon this notice of motion; the attached memorandum of points and authorities and declaration of Joseph A. Gonzalez; the proposed order granting the motion (lodged under separate cover); all pleadings and papers on file in this action; such other and further matters as may be presented at any hearing on this motion; and matters of which the Court may take notice.


Dated: December 2, 2021                      Respectfully submitted,

                                             BRIAN M. BOYNTON
                                             Acting Assistant Attorney General, Civil Division

                                             C. SALVATORE D'ALESSIO, JR.
                                             Acting Director, Torts Branch, Civil Division

                                             RICHARD MONTAGUE
                                             Senior Trial Counsel, Torts Branch, Civil Division

                                             /s/ *Joseph A. Gonzalez*
                                             JOSEPH A. GONZALEZ
                                             Trial Attorney, Torts Branch, Civil Division
                                             U.S. DEPARTMENT OF JUSTICE
                                             Ben Franklin Station
                                             P.O. Box 7146

1

Washington, D.C. 20044-7146
(202) 598-3888 (phone)
(202) 616-4314 (fax)
joseph.a.gonzalez@usdoj.gov

Attorneys for Defendants Kristi Koons Johnson
and Lynne K. Zellhart in their individual
capacities

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................**Error! Bookmark not defined.**

INTRODUCTION ............................................... 1

BACKGROUND .............................................. 1

STANDARD OF REVIEW ...................................... 3

ARGUMENT ................................................ 4

I.  Plaintiffs' *Bivens* claims against the Individual Defendants fail because they arise in a new context and special factors counsel hesitation .................................... 4

    A.  Plaintiffs' *Bivens* claims present a new context. .................................... 5

    B.  Special factors counsel against a *Bivens* remedy in this new context. ........ 7

        1.  Plaintiffs have alternative procedures for relief that counsel against recognizing a new *Bivens* action. ................................. 8

        2.  *Bivens* precludes holding the Defendants responsible for the formulation of policy. .................................. 9

        3.  Plaintiffs' *Bivens* action would cause disruptive intrusion into the Executive Branch. .................................. 11

        4.  Existing legislation suggests that the absence of a monetary remedy against individuals under the circumstance alleged is more than inadvertent. ............................................ 12

II.  The Individual Defendants are entitled to qualified immunity. ....................... 13

    A.  Plaintiffs fail to allege that Assistant Director in Charge Johnson was personally involved in the alleged actions that were unconstitutional. ..... 13

    B.  The Individual Defendants did not violate Plaintiff's clearly established rights. .................................. 14

        1.  It is not clearly established that the warrant was invalid. .............. 15

        2.  It is not clearly established that the inventory search was unconstitutional. .................................. 16

3.      Plaintiffs have not alleged a violation of clearly established rights
under the Fifth Amendment...................................................... 18

CONCLUSION ....................................................................................... 19

# TABLE OF AUTHORITIES

**Federal Cases**

*Ahmed v. Weyker*,
  984 F.3d 564 (8th Cir. 2020) ................................................................. 6

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ............................................................................. 4

*Annappareddy v. Pascale*,
  996 F.3d 120 (4th Cir. 2021) ................................................................ 6

*Armstrong v. Asselin*,
  734 F.3d 984 (9th Cir. 2013) ........................................................ 11, 15

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ...................................................................... 13, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................... 13, 14

*Barren v. Harrington*,
  152 F.3d 1193 (9th Cir. 1998) ............................................................ 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................ 3, 4

*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*,
  403 U.S. 388 (1971) ............................................................... 1, 3, 5, 6

*Bonneau v. Maxwell*,
  No. 3:12-CV-130-PA, 2012 WL 3644140 (D. Or. Aug. 23, 2012) ............ 9

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
  824 F.3d 1156 (9th Cir. 2016) .............................................................. 3

*Cantu v. Moody*,
  933 F.3d 414 (5th Cir. 2019) ........................................................ 6, 11

iii

*Carlson v. Green*,
   446 U.S. 14 (1980)................................................................5

*City of W. Covina v. Perkins*,
   525 U.S. 234 (1999)............................................................18

*Colorado v. Bertine*,
   479 U.S. 367 (1987)............................................................16

*Davis v. Billington*,
   681 F.3d 377 (D.C. Cir. 2012) ............................................9

*Davis v. Dotson*,
   No. 20-13123, 2021 WL 5353099 (11th Cir. Nov. 17, 2021) ...................................9

*Davis v. Passman*,
   442 U.S. 228 (1979)..............................................................5

*Diaz v. United States*,
   517 F.3d 608 (2d Cir. 2008) ..............................................12

*District of Columbia v. Wesby*,
   138 S. Ct. 577 (2018) .........................................................14

*Farah v. Weyker*,
   926 F.3d 492 (8th Cir. 2019) ......................................passim

*Fazaga v. Fed. Bureau of Investigation*,
   965 F.3d 1015 (9th Cir. 2020)...............................................4

*Fed. Bureau of Investigation v. Fazaga*,
   No. 20-828, 2021 WL 2301971 (U.S. June 7, 2021) ....................4

*Florida v. Wells*,
   495 U.S. 1 (1990) ...............................................................16

*Foster v. United States*,
   522 F.3d 1071 (9th Cir. 2008)..............................................12

iv

*Gerstein v. Pugh*,
    420 U.S. 103 (1975)..................................................................................18

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)..................................................................................13

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020) ........................................................................4, 7, 9

*Hudson v. Palmer*,
    468 U.S. 517 (1984)..................................................................................18

*Kisela v. Hughes*,
    138 S. Ct. 1148 (2018)..............................................................................14

*Lanuza v. Love*,
    899 F.3d 1019 (9th Cir. 2018)...................................................................10

*Leyland v. Edwards*,
    797 F. Supp. 2d 7 (D.D.C. 2011)................................................................8

*Libretti v. Woodson*,
    600 F. App'x 367 (6th Cir. 2015)..............................................................16

*Loumiet v. United States*,
    948 F.3d 376 (D.C. Cir. 2020) ....................................................................7

*Marulanda v. U.S. Marshals Serv.*,
    467 F. Appx 590 (9th Cir. 2012)...............................................................18

*Messerschmidt v. Millender*,
    565 U.S. 535 (2012)..................................................................................15

*Mullenix v. Luna*,
    577 U.S. 7 (2015) .....................................................................................14

*Ochoa v. Bratton*,
    No. 16-CV-2852 (JGK), 2017 WL 5900552 (S.D.N.Y. Nov. 28, 2017)......................9

v

*Perkins v. City of W. Covina,*
   113 F.3d 1004 (9th Cir. 1997)......................................................................18

*Ramsden v. United States,*
   2 F.3d 322 (9th Cir. 1993)..............................................................................8

*Schweiker v. Chilicky,*
   487 U.S. 412 (1988)........................................................................................9

*Seismic Reservoir 2020, Inc. v. Paulsson,*
   785 F.3d 330 (9th Cir. 2015).........................................................................3

*South Dakota v. Opperman,*
   428 U.S. 364 (1976)......................................................................................16

*Starr v. Baca,*
   652 F.3d 1202 (9th Cir. 2011)......................................................................13

*Terrell v. Brewer,*
   935 F.2d 1015 (9th Cir. 1991)......................................................................13

*United States v. Bowhay,*
   992 F.2d 229 (9th Cir. 1993)........................................................................17

*United States v. Chung,*
   553 F. App'x 690 (9th Cir. 2014)................................................................16

*United States v. Gaston,*
   740 F. App'x 576 (9th Cir. 2018)................................................................17

*United States v. Leon,*
   468 U.S. 897 (1984)......................................................................................15

*United States v. Lopez,*
   547 F.3d 364 (2d Cir. 2008)........................................................................17

*United States v. SDI Future Health, Inc.,*
   568 F.3d 684 (9th Cir. 2009)......................................................................16

*Vega v. United States*,

  881 F.3d 1146 (9th Cir. 2018)..........................................................................8

*Warren v. Fox Fam. Worldwide, Inc.*,

  328 F.3d 1136 (9th Cir. 2003)..........................................................................4

*White v. Pauly*,

  137 S. Ct. 548 (2017) ....................................................................................14

*Wilkie v. Robbins*,

  551 U.S. 537 (2007)........................................................................................8

*Wong v. United States*,

  373 F.3d 952 (9th Cir. 2004) ..........................................................................14

*Ziglar v. Abbasi*,

  137 S. Ct. 1843 (2017)...........................................................................passim

**Federal Statutes**

28 U.S.C. § 2680(c)(1) ........................................................................... 12

31 U.S.C. § 3723(a) ................................................................................ 8, 9

31 U.S.C. § 3724(a) ........................................................................... 8, 9, 18

**Other Authorities**

H.R. Rep. No. 106-192 1999 WL 406892 ................................................. 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This case arises out of a criminal investigation into U.S. Private Vaults, Inc. (USPV), a company that anonymously leases safe deposit boxes. Plaintiffs allege in their Count III *Bivens* claim, *see generally Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), that FBI Assistant Director in Charge Kristi Koons Johnson and FBI Special Agent Lynne K. Zellhart (Individual Defendants) violated their constitutional rights in two ways. By seizing their safe deposit box pursuant to a seizure warrant issued in the investigation and then allegedly failing to return 110 gold coins contained in the box. Plaintiffs' *Bivens* claims warrant dismissal for two reasons.

First, Plaintiffs' theories of recovery arise in a new context that implicates classic reasons for rejecting the creation of a new *Bivens* remedy. These include: (i) the claim is improper given the existence of alternative remedies; (ii) it would impermissibly hold the Individual Defendants responsible for policy decisions; (iii) the claim would cause disruptive intrusion into the Executive branch; and (iv) it likely infringes on legislative intent to not provide a remedy against federal officers in this circumstance. Second, the unique circumstances of this case also demonstrate an entitlement to qualified immunity. No controlling authority or robust consensus of persuasive authority establishes that any of the actions alleged in these specific circumstances amounts to a violation of a clearly established right.

## BACKGROUND

USPV operates a safe deposit box business in a Beverly Hills strip-mall that houses hundreds of boxes. *See* Gonzalez Decl. ¶ 3; Ex. C (Warrant Affidavit ¶¶ 4, 6). Unlike typical safety deposit boxes located in a bank, USPV does not use personal identifying information to identify box holders. *See id.* ¶ 6. Instead, box holders "anonymously" use "biometric identification" to gain access to the vault area without anyone ever knowing their identity. *Id.* ¶¶ 6, 10. Plaintiffs, a retired couple living in Los

Angeles, allege that they own Box No. 224. Compl. ¶ 1. It allegedly contained 110 gold coins worth approximately $220,000, as well as "(a) miscellaneous papers, including a receipt for 20 of the 110 gold coins stored in Box #224; (b) one gold bar; and (c) $57,434.61 in US currency[.]" *Id.* ¶¶ 1, 25.

In March 2021, a grand jury indicted USPV for conspiracy to launder money, to distribute controlled substances, and to structure transactions to avoid reporting requirements. Gonzalez Decl. ¶ 3; Ex. A (Indictment). The indictment states that USPV's business is predicated on "attract[ing] customers in possession of proceeds from criminal offenses[.]" Ex. A 3:21. USPV allegedly did so by "touting the anonymity of the safety deposit rentals" and "boasting that, unlike banks, its anonymous safety deposit box rentals did not require customer information that 'can be easily accessed by government agencies (such as the IRS)[.]'" *Id.* at 3:23-28.

Thereafter the government obtained a seizure warrant for, among other things the "[n]ests of safety deposit boxes and keys" located at USPV. Gonzalez Decl. ¶ 4; Ex. B (Warrant Attachment B) 2:26. The warrant did "not authorize a criminal search or seizure of the contents of the safety deposit boxes." *Id.* at 2:28-3:1. Rather, it mandated that "agents shall follow their written inventory policies to protect their agencies and the contents of the boxes," and directed agents to "inspect the contents of the boxes in an effort to identify their owners[.]" *Id.* at 3:2-5. On March 22, 2021, the government executed the warrant and seized all boxes. Compl. ¶¶ 24, 26. Special Agent Zellhart allegedly served as the lead agent for the operation and "supervised, participated in, and/or otherwise aided and assisted" with executing the warrant. *Id.* ¶ 17. Plaintiffs make no factual allegation that Assistant Director in Charge Johnson personally participated in, supervised, or even observed. Instead, they simply allege she had "authority over the policies and procedures implemented by, and the actions of, FBI agents assigned" to the LA field office. *Id.* ¶ 16.

Soon after executing the warrant the FBI directed box owners to an FBI website to make a claim for their property, which Plaintiffs did, through counsel, on April 12, 2021.

*See Id.* ¶ 37. On May 24, 2021, Plaintiffs received via certified mail a notice of forfeiture of their box contents. *Id.* ¶ 38. The notice did not list the 110 gold coins Plaintiffs allege were in the box. *Id.* On June 1, 2021 Plaintiffs' counsel allegedly called Special Agent Zellhart regarding the forfeiture and secured Special Agent Zellhart's agreement to return the contents of Box No. 224 to them. *Id.* ¶ 38. Plaintiffs' counsel also inquired about the coins and Special Agent Zellhart allegedly responded "that perhaps the gold coins were separated from the rest of the property as not subject to forfeiture." *Id.* ¶ 39. On June 14, 2021, Special Agent Zellhart provided to Plaintiffs' counsel all of the box contents except for the 110 coins. *Id.* ¶ 40. Plaintiffs' counsel allegedly followed up with Special Agent Zellhart several times thereafter about the coins but has yet to receive a response. *Id.* ¶ 41.

On August 13, 2021, Plaintiffs filed a four count complaint. Relevant here, in Count III, they bring a *Bivens* claim against Assistant Director in Charge Johnson, Special Agent Zellhart, and DOES 1-10 in their individual capacities. Plaintiffs allege that they violated the Fourth Amendment by seizing and searching Plaintiffs' safe deposit box without probable cause and performing an illegal investigatory search under the guise of an inventory search. *Id.* ¶¶ 72-77, 92, 93. Plaintiffs also allege that the Individual Defendants have, in violation of the Fifth Amendment, "deprived Plaintiffs of the use, benefit, and enjoyment of their property without due process by failing to return" the 110 gold coins. *Id.* ¶¶ 79, 94. As set forth in more detail below, Plaintiffs have failed to state a claim against the Individual Defendants.

## **STANDARD OF REVIEW**

Courts should grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss when a complaint fails to allege a cognizable legal theory or sufficient factual support for a legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016); *see Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (internal quotations and citation omitted). Thus, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face" to defeat the motion. *Bell Atl. Corp. v.*

3

*Twombly*, 550 U.S. 544, 570 (2007). But while courts should accept as true the well-pleaded material factual allegations, they should not accept as true conclusory allegations, unwarranted factual deductions, unreasonable inferences or legal characterizations. *Id.* at 555; *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

## ARGUMENT

I. **Plaintiffs' *Bivens* claims against the Individual Defendants fail because they arise in a new context and special factors counsel hesitation.**

*Bivens* remedies are the product of what the Supreme Court has called an "*ancien regime*" where it "would imply causes of action" not present in the text of a law. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). In the forty years since then, the Court has reversed course and "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). Now if a law "itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Abbasi*, 137 S. Ct. at 1856 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)) (internal quotations omitted). As a result, "the availability of *Bivens* actions for new claims and contexts" is now "severely restricted." *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1055 (9th Cir. 2020) (citing *Abbasi*, 137 S. Ct. at 1856-57), *cert. granted sub nom. Fed. Bureau of Investigation v. Fazaga*, No. 20-828, 2021 WL 2301971 (U.S. June 7, 2021).

A plaintiff now only has two narrow paths to pursuing a *Bivens* action. If a plaintiff establishes that their claim qualifies as one of "the three *Bivens* claims the Court has approved in the past" then the *Bivens* claim may proceed (subject to other defenses). *Abbasi*, 137 S. Ct. at 1860. Alternatively, if the claim arises in a new context, a plaintiff must establish that there are no "special factors [that] counsel[] hesitation" before a court will imply a new cause of action. *Id.* at 1857. Plaintiffs fail to establish a *Bivens* claim through either path.

### A.   Plaintiffs' *Bivens* claims present a new context.

Whether a claim presents a new context depends on whether the case is "different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court." *Id.* at 1859. This requires a comparison with the only three cases in which the Supreme Court has previously recognized a *Bivens* remedy: *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980). Because search and seizure are primarily at issue "[t]he most analogous Supreme Court case" here "is *Bivens* itself." *Quintero Perez v. United States*, 8 F.4th 1095, 1104 (9th Cir. 2021). *Davis* and *Carlson* are "are clearly dissimilar." *Id.* at 1104 n.4. But "coming closest" is still a far cry from "exactly mirror[ing] the facts and legal issues[.]" *Farah v. Weyker*, 926 F.3d 492, 498 (8th Cir. 2019). Even a case with "significant parallels to one of the [Supreme] Court's [three] previous *Bivens* cases," or a case presenting just a "modest extension" of one of them, "is still an extension" into a new context. *Abbasi*, 137 S. Ct. at 1864; *see id.* at 1860 (listing seven non-exhaustive factors).

Plaintiffs' claims against the Individual Defendants directly implicate several of the meaningful differences set forth by the Supreme Court and thus establish that the claims present a new context. Foremost, the type of injury is different. Unlike in *Bivens*, where the plaintiff was personally subjected to a warrantless search, seizure, and arrest that resulted in "humiliation, embarrassment, and mental suffering," 403 U.S. at 389-90, here, Plaintiffs were never personally seized or arrested. Rather, their alleged Fourth Amendment injury is confined to a property interest in a safe-deposit box that was located in a strip-mall. Plaintiffs' Fifth Amendment due process claim fares even worse, as the alleged deprivation of the gold coins is also fundamentally different from the rights, injuries, and context alleged in *Bivens*, *Carlson*, or *Davis*. The fact that the government returned part of the property in the box only heightens the distinctions from those three cases, and thus so too the lack of similarity.

But it is not just the injury that establishes a new context in this case. So too does the mechanism of injury. *Bivens* concerned a warrantless search from "stem to stern." 403 U.S. at 389. Here, conversely, the claims focus on an allegedly invalid warrant and the subsequent property retrieval process. *See Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2021) (finding new context because "*Bivens* involved [] the Fourth Amendment right to be free of unreasonable warrantless *searches* and seizures; [whereas] this case, by contrast, involves searches and a seizure conducted *with* a warrant") (emphasis in original). This difference not only establishes a new context by itself, but also reveals another meaningful difference from *Bivens*— attenuation between the defendant and the ultimate injury absent from *Bivens*.

For example, in *Ahmed v. Weyker*, 984 F.3d 564 (8th Cir. 2020) the plaintiff alleged that an officer drafted a sworn affidavit that, among other things, lacked probable cause. *Id.* at 566. The court held that this was enough to establish a new context. It reasoned that the steps between constructing the affidavit and executing the warrant involved "independent legal actors" and thus the "direct causal chain [present in *Bivens*] is missing." *Id.* at 569 (citation and internal quotations omitted). *See also Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019). The same holds true here. Plaintiffs allege that the "facially deficient seizure warrant" was "lacking in indicia of probable cause with respect to Plaintiffs' safe deposit box[.]" Compl. ¶ 74. This implicates independent legal actors responsible for both constructing the affidavit (various law enforcement officers) and approving it (magistrate judge), thus premising the claim on an "indirect mechanism of injury [that] bears little resemblance to the straightforward claims from *Bivens*." *Farah*, 926 F.3d at 499.

Similar reasoning establishes that Plaintiffs' related inventory search theory also presents a new context. Plaintiffs allege that it was "a pretext for conducting an investigatory search . . . to further Defendants' indiscriminate criminal investigation of USPV box holders." Compl. ¶ 78. This theory implies government coordination among numerous actors that had various levels of participation in inventorying hundreds of

6

boxes. Thus not only does the theory present an "indirect mechanism of injury," it is also far more complicated than "the straightforward claims from *Bivens*." *Farah*, 926 F.3d at 499.

Finally, the allegations against Assistant Director in Charge Johnson evince a textbook difference—the "rank of the officers involved." *Abbasi*, 137 S. Ct. at 1860. *Bivens* concerned line-level officers operating in the field, not a high-level supervisor allegedly responsible for "the policies and procedures . . . and the actions of [] FBI agents assigned to the Los Angeles Field Office." Compl. ¶ 16. This casts Assistant Director in Charge Johnson as an entirely new category of defendant, which is dispositive. *See Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020) (observing that a "'new context' is present whenever the plaintiff seeks damages from a 'new category of defendants'" and finding that executive officers in the comptroller office were a new category) (quoting *Abbasi*, 137 S. Ct. at 1860).

**B.    Special factors counsel against a *Bivens* remedy in this new context.**

The creation of a new *Bivens* remedy is a rare thing. Indeed, "for almost 40 years, [the Supreme Court has] consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez*, 140 S. Ct. at 743. This remains the status quo because the Supreme Court's "precedents now instruct [that] the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Abbasi*, 137 S. Ct. at 1857 (internal citations and quotations omitted). The Supreme Court urges "caution" for this reason, holding that the mere presence of a "special factor counselling hesitation" forecloses the creation of *Bivens* remedy. *Id.* That is a case-specific inquiry. But if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy[.]" *Id.* at 1858. Plaintiffs' allegations here implicate textbook "sound reasons" to hesitate and for the Court to "refrain from creating" the *Bivens* remedies Plaintiffs request. *Id.*

1.  <u>Plaintiffs have alternative procedures for relief that counsel against recognizing a new *Bivens* action.</u>

In *Abbasi*, the Supreme Court held that "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Id.* at 1865; *see Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) ("[A]ny alternative, existing process for protecting the [injured party's] interest" may "amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages."). Such "'[a]lternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). Here, there are at least three.

In Count I, Plaintiffs seek the return of their property under Federal Rule of Criminal Procedure Rule 41(g), which as an equitable procedure, falls within the "other form[s] of equitable relief" category set forth in *Abbasi*. *See Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993) ("district courts have the power to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant."). As a result, the principal relief Plaintiff seeks (property return) is provided for under Rule 41(g)'s alternative remedial structure. *See Leyland v. Edwards*, 797 F. Supp. 2d 7, 11 (D.D.C. 2011) (holding that the plaintiff's *Bivens* claim for the return of his property was "barred due to Rule 41(g) providing an adequate, comprehensive procedural and remedial scheme").

Plaintiffs also have potential statutory remedies that qualify as an alternative remedial structure. Under 31 U.S.C. § 3724(a), the "Attorney General may settle, for not more than $50,000 . . . a claim for . . . damage to, or loss of, privately owned property, caused by . . . [a] Department of Justice [employee] acting within the scope of employment[.]" Section 3723(a) also provides relief up to $1,000 for "damage to, or loss of, privately owned property" under similar circumstances. Courts throughout the country have recognized that these alternative remedial structures preclude a Bivens remedy for a variety of lost or damaged property claims. Indeed, most recently, the

8

Eleventh Circuit rejected a Bivens claim because § 3724(a) "provided at least one alternative means for [the plaintiff] to seek compensation for the destruction of his property." *Davis v. Dotson*, No. 20-13123, 2021 WL 5353099, at \*2 (11th Cir. Nov. 17, 2021). *See also Ochoa v. Bratton*, No. 16-CV-2852 (JGK), 2017 WL 5900552, at \*2, 7 (S.D.N.Y. Nov. 28, 2017) (denying Bivens claim alleging that DEA agents failed to return clothes and $4,800 because sections 3723(a) and 3724(a) provide alternative remedies); *Bonneau v. Maxwell*, No. 3:12-CV-130-PA, 2012 WL 3644140, at \*2 (D. Or. Aug. 23, 2012) (denying Bivens claim alleging that FBI agents destroyed hard drives with intellectual property claimed to be worth 1.7 million because sections 3723(a) and 3724(a) provide alternative remedies). This case requires the same result.

The preclusive effect of these alternative remedies remains even if they prove unsuccessful. *See Davis v. Billington*, 681 F.3d 377, 387 (D.C. Cir. 2012) (A "scheme's failure to provide a remedy to a particular plaintiff for the particular claim . . . does not make the scheme any less comprehensive for purposes of determining whether it is a special factor that precludes the creation of a *Bivens* remedy.") (citation and quotations omitted); *Cf. Hernandez*, 140 S. Ct. at 750 n.12 ("Indeed, in *Abbasi* we explained that existence of alternative remedies was merely a further reason not to create *Bivens* liability.") (citation omitted). The inability to provide full compensation under a remedial structure also does not render it inadequate. *See Davis*, 2021 WL 5353099, at \*2 (That § 3724 "may not fully compensate [the plaintiff] for his lost data . . . does not justify the expansion of *Bivens* to a new context.") (citing *Schweiker v. Chilicky*, 487 U.S. 412, 425–29 (1988)). Thus, Rule 41(g), § 3724(a), and § 3723(a)'s existence as remedial schemes designed to address the type of injury Plaintiffs allege is enough to counsel hesitation, regardless of their actual success and the possibility of full compensation.

## 2. *Bivens* precludes holding the Defendants responsible for the formulation of policy.

A "*Bivens* action is not 'a proper vehicle for altering an entity's policy.'" *Abbasi*, 137 S. Ct. at 1860. This holds true "[e]ven if the [*Bivens*] action is confined to the

9

conduct of a particular Executive Officer in a discrete instance." *Id.* Such claims still require hesitation if they "call into question the formulation and implementation of a general policy[.]" *Id.*; *see Lanuza v. Love*, 899 F.3d 1019, 1028 (9th Cir. 2018) ("special factors include . . . whether *Bivens* is being used as a vehicle to alter an entity's policy"). Plaintiffs' claims against the Individual Defendants do just that and thus counsel hesitation.

This remains particularly so with respect to Assistant Director in Charge Johnson. The sole basis for her liability is her alleged "authority over the policies and procedures implemented by, and the actions of, FBI agents" involved in the USPV operation. Comp. ¶ 16. Nowhere do Plaintiffs allege that she had anything to with the warrant, inventorying Plaintiffs' box, developing the inventory procedure, or retaining the property. And so Plaintiffs impermissibly seek to hold her "responsible for acts of [her] subordinates" in an attempt to "alter[] an entity's policy." *Abbasi*, 137 S. Ct. at 1860.

An analysis of the claims themselves demonstrates their policy focus. The inventory search allegedly was not "conducted pursuant to established and standardized agency policies and procedures." Comp. ¶ 78. Similarly, Plaintiffs assert that the FBI's procedures and policies for returning property fall short of due process requirements. *Id.* ¶ 79. Although styled as an absence of policy, these theories function no less as an attempt "to alter an entity's policy" because they seek to force the FBI to conform to policies Plaintiffs deem appropriate. This necessarily "require[s] inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged." *Abbasi*, 137 S. Ct. at 1860. Here those discussions range from the best method for effectively inventorying the boxes (Fourth Amendment) to how the FBI's property retrieval procedures fulfill its goal to seize criminal proceeds and return non-criminal property (Fifth Amendment). Plaintiffs' attempt to challenge or change these policies counsels hesitation.

### 3. Plaintiffs' *Bivens* action would cause disruptive intrusion into the Executive Branch.

Plaintiffs take issue with multiple steps taken in a large criminal investigation and prosecution into a complex criminal scheme. They complain that the warrant, the search of their box, and the retention of box contents, were all unconstitutional. *See* Compl. ¶¶ 71-79. But the inherent factual complexity of each theory risks "burdening and interfering with the executive branch's investigative and prosecutorial functions." *Farah*, 926 F.3d at 500. This would cause an "intrusive" interference into "sensitive functions of the Executive Branch" that courts must avoid. *Abbasi*, 137 S. Ct. at 1861.

Plaintiffs' contention that the warrant was "so lacking in indicia of probable cause . . . as to render official belief . . . entirely unreasonable" guarantees intrusion. Compl. ¶ 74. To prove "any error was not obvious" and thus not unlawful, Special Agent Zellhart would need to demonstrate "[p]resentation to a superior officer and prosecutor, and approval by a judicial officer[.]" *Armstrong v. Asselin*, 734 F.3d 984, 991 (9th Cir. 2013). This necessarily involves examining the sufficiency of multiple internal steps in an approval process that is the province of the Executive. *See Farah*, 926 F.3d at 500.

The complexity of the case magnifies this inquiry and thus also the intrusiveness that counsels hesitation. The government has alleged that USPV was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements. Affidavit ¶ 20(a)-(j). The suspected scheme involved numerous actors and entities executing a plan sophisticated enough to skirt federal banking laws. *See id.*; *see also* Indictment ¶ 2(a)-(c). Just as in *Cantu*, where the fact that the case involved a "multi-jurisdictional investigation into transnational organized crime" counseled hesitation, so too here does the expansiveness of the USPV investigation counsel hesitation. 933 F.3d at 424.

Plaintiffs' related claim that the inventory search allegedly occurred in the absence of an inventory policy also would require delving into an executive function. *See* Comp.

¶ 78. This would result in intrusion into law enforcement operations that reflect choices about how to securely and efficiently inventory property, and so too counsels hesitation.

    4.    <u>Existing legislation suggests that the absence of a monetary remedy against individuals under the circumstance alleged is more than inadvertent.</u>

Finally, the absence of a damages remedy against federal officers under these circumstances does not mean that one should be authorized here. Rather, "congressional silence might be more than 'inadvertent.'" *Abbasi*, 137 S. Ct. at 1862 (citation omitted). In *Farah*, the Eighth Circuit explained this inference in the context of statutes intended to compensate wrongly convicted defendants. *See Farah,* 926 F.3d at 502 (citing to the Hyde Amendment for baseless prosecutions, and 28 U.S.C. § 1495 and 28 U.S.C. § 2513 for unjust convictions). It reasoned "that Congress has expressly provided a damages remedy for some victims of this particular type of injury, but not for others, suggests that it considered the issue and made a deliberate choice" not to compensate those others. *Id.* Similar reasoning applies in this case as well.

In 2000, Congress passed the Civil Asset Forfeiture Reform Act (CAFRA), which amended section 2680(c)'s detention of goods exception by "'re-waiv[ing]' sovereign immunity for a narrow category of forfeiture-related damages claims . . . ." *Diaz v. United States*, 517 F.3d 608, 613 (2d Cir. 2008). To qualify, the claimants must, among other things, seek compensation for property "seized for the purpose of forfeiture," 28 U.S.C. § 2680(c)(1), and, unlike this case, *solely* seized for that purpose. *See Foster v. United States*, 522 F.3d 1071, 1075 (9th Cir. 2008) ("[T]he re-waiver of sovereign immunity in § 2680(c)(1)-(4) applies only to property seized solely for the purpose of forfeiture."). But the statute's legislative history demonstrates a comprehensive consideration of the various ways property is damaged or lost while in government custody. *See* H.R. Rep. No. 106-192 1999 WL 406892 at *18 (1999). And Congress was plainly aware that property can be damaged or lost by federal officers when seized for purposes other than forfeiture. Thus, "Congress' failure to provide a damages remedy"

against federal officers in the circumstances alleged here, or an unlimited damages remedy, "might be more than mere oversight, and that congressional silence might be more than 'inadvertent.'" *Abbasi*, 137 S. Ct. at 1862. Accordingly, because "Congress might doubt the efficacy or necessity of a damages remedy" against federal officers in these circumstances, this Court should "refrain from creating the remedy." *Id.* at 1858.

## II.  The Individual Defendants are entitled to qualified immunity.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). This "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation and quotations omitted). It does so by insulating government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

### A.   Plaintiffs fail to allege that Assistant Director in Charge Johnson was personally involved in the alleged actions that were unconstitutional.

"[V]icarious liability is inapplicable to *Bivens*[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991) ("We join other circuits in holding that *respondeat superior* is inapplicable to *Bivens* actions."). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). These principles prohibit liability premised solely on a defendant's status as a supervisor. *Iqbal*, 556 U.S. at 677 (noting that "the term 'supervisory liability' is a misnomer" because under *Bivens* "masters do not answer for the torts of their servants"). At a minimum, a plaintiff must allege a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

Plaintiffs fail to allege a sufficient causal connection between Assistant Director in Charge Johnson and the alleged violations. Instead, they embrace a vicarious liability

theory by alleging that she "has authority over the policies and procedures implemented by, and the actions of, FBI agents assigned to the Los Angeles Field Office." Compl. ¶ 16. Such bare assertions of authority over policy are incapable of plausibly alleging personal involvement in a violation. Likewise, bare assertions that a supervisor created or implemented specific policies also fall short because such statements fail to explain how the supervisor participated in unlawful acts. *See Iqbal*, 556 U.S. at 680–81 (allegation that the Attorney General was "the principal architect of this invidious policy" was a "bare assertion").

Plaintiffs' resort to a group pleading tactic in which they vaguely allege that "Defendants Koons Johnson, Zellhart and DOES 1-10" committed constitutional violations cannot remedy this deficiency. Compl. ¶¶ 92-95. These allegations "fail[] to identify what role, if any, each individual defendant had in" the alleged violation and thus fail to satisfy the personal involvement requirement. *Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004).

## B. The Individual Defendants did not violate Plaintiff's clearly established rights.

To be clearly established, a legal principle must be settled law, and it must "clearly prohibit the officer's conduct in the *particular circumstances* before him[.]" *District of Columbia v. Wesby*, 138 S. Ct. 577, 581 (2018) (emphasis added). "Such specificity is especially important in the Fourth Amendment context[.]" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam). It ensures that courts do not define the right at a "high level of generality" and therefore hold an officer liable without "fair notice that her conduct was unlawful[.]" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). Thus, to determine whether an officer's conduct violates clearly established law, the formulation of the conduct "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (citation and quotations omitted). As set forth below, the Individual Defendants are entitled to qualified

immunity because it is not clearly established under the specific circumstances alleged that Plaintiffs' constitutional rights were violated.

### 1. It is not clearly established that the warrant was invalid.

Plaintiffs allege that "based on the affidavit to the search warrant, there is no probable cause to search and/or seize the contents of Plaintiff's Box" and thus the search of their box violated the Fourth Amendment. Compl. ¶ 73. In support, they allege that "the warrant expressly states that it does not authorize the search or seizure of any box, including Plaintiffs, [sic] for purposes of criminal investigation." *Id.* ¶ 74. Even if probable cause were lacking, these allegations do not rise to a violation of a clearly established right.

In *Messerschmidt v. Millender*, 565 U.S. 535 (2012), the plaintiff made a similar argument. He claimed that a warrant was obviously overbroad because it identified just one particular gun, not all of the guns seized in a house. *Id.* at 548. But the Supreme Court disagreed, holding that "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause[.]" *Id.* at 547 (citation omitted). When this occurs, ordinarily "an officer cannot be expected to question the magistrate's probable-cause determination." *Id.*; *see also Armstrong v. Asselin*, 734 F.3d 984, 991 (9th Cir. 2013) ("[P]rior review of proposed searches [] supports qualified immunity, shielding police officers from liability under the line of cases reaffirmed and broadened most recently by *Messerschmidt v. Millender*."). This analysis applies in equal force here.

A magistrate judge approved the USPV warrant. That is "the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" *Messerschmidt*, 565 U.S. at 546 (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)) (foot note omitted). And an analysis of the warrant affidavit "demonstrates that any error was not obvious" and that Special Agent Zellhart and the agents that executed the warrant are entitled to qualified immunity. *Id.* at 556. The affidavit directly identifies the "nest of safety deposit boxes" as subject to seizure

and explains that the boxes are "evidence and instrumentalities of USPV's criminality." Affidavit ¶ 108:14-15; *see United States v. SDI Future Health, Inc.*, 568 F.3d 684, 703 (9th Cir. 2009). The government also explained that USPV was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements, among other offenses. *See* Affidavit ¶¶ 7, 20(a)-(j). And the affidavit further provided specific instances of not only how the criminal scheme worked, but also how the boxes were integral to the scheme. *Id*. Under these facts, no settled law clearly establishes an absence of probable cause.

Cases assessing the validity of warrants for safe-deposit boxes support this conclusion, especially when, as in this case, the available evidence indicates that the safe deposit boxes are being used in criminal schemes. For example, *United States v. Chung*, 553 F. App'x 690 (9th Cir. 2014) held that a magistrate judge had a substantial basis for finding probable cause to seize a safe deposit box given a DEA agent's explanation that "loansharking conspiracies will often hide their records and paraphernalia at their homes and in safe deposit boxes." *Id.* at 692; *see Libretti v. Woodson*, 600 F. App'x 367, 372 (6th Cir. 2015) (granting agent qualified immunity for claim that his warrant lacked probable cause because he explained that it was common for "drug traffickers to store drug proceeds in safe deposit boxes" and the box had been accessed recently).

### 2. It is not clearly established that the inventory search was unconstitutional.

The inventory search alleged in this case also did not violate clearly established law. The government, recognizing its "responsib[ility] for the property taken into [its] custody," opened and cataloged the contents of the seized safe deposit boxes to protect against claims of theft, damage and "any danger . . .that may have been posed by the property." *Colorado v. Bertine*, 479 U.S. 367, 373 (1987); *see South Dakota v. Opperman*, 428 U.S. 364, 371 (1976) ("[I]t is reasonable to search the container to itemize the property to be held by the police.") (citation omitted). Critically, this alleged process occurred pursuant to "standardized criteria or established routine," *Florida v.*

16

*Wells*, 495 U.S. 1, 4 (1990), as the FBI "follow[ed] their written inventory policies to protect their agencies from claims of theft or damage to the contents of the boxes, and to ensure that no hazardous items are unknowingly stored in a dangerous manner." Affidavit ¶ 108:14-15. *See United States v. Gaston*, 740 F. App'x 576, 577 (9th Cir. 2018) (Finding that "routine practice of opening locked containers if they can be readily opened during an inventory search" qualified as standardized practice and therefore validated inventory search.). This conformity to inventory search standards necessarily precludes Plaintiffs from plausibly alleging that the search violated clearly established law. The unique circumstances alleged here underscore the point. No "controlling authority" or "robust consensus of . . . persuasive authority" establishes that the government's inventorying of hundreds of anonymously held safe-deposit boxes, intentionally made anonymous by design and via sophisticated technology, violated the Fourth Amendment. *al-Kidd*, 563 U.S. at 741.

Plaintiffs' unadorned allegation that the search was in fact a "pretext for conducting an investigatory search" cannot save his claim. Compl. ¶ 77. In *United States v. Bowhay*, 992 F.2d 229 (9th Cir. 1993), the plaintiff made a similar argument when an officer admitted that he "viewed [a] search as both an investigative and as an inventory search[.]" *Id.* at 231. However, the court still held that "the presence of an investigative motive [did] not invalidate the inventory search." *Id.* It reasoned that because "the department's policy was to search everything[,] the officer had no discretion" and thus his motive was beside the point. *Id.* This case is no different. Plaintiffs allege that the inventory procedure involved opening all boxes seized. Compl. ¶ 26. Thus motive is irrelevant. More to the point, it is clearly established that motive is irrelevant under these circumstances. "[T]he Supreme Court has not required an absence of expectation of finding criminal evidence as a prerequisite to a lawful inventory search. . . . [M]otivation [] cannot reasonably disqualify an inventory search that is performed under standardized procedures for legitimate custodial purposes." *United States v. Lopez*, 547 F.3d 364, 372 (2d Cir. 2008) (citations omitted).

17

### 3.   Plaintiffs have not alleged a violation of clearly established rights under the Fifth Amendment.

Plaintiffs fail to allege the violation of a clearly established procedural due process right because they do not allege the absence of a "meaningful post deprivation remedy" for recovering the contents of their box (or the value of those contents). *Cf. Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a [government] employee does not constitute a violation . . . of the Due Process Clause . . . if a meaningful post deprivation remedy for the loss is available."). The Fourth Amendment prevents them from doing so because it "define[s] the 'process that is due' for seizures of person or property in criminal cases," as is the circumstance here. *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975). And the Fourth Amendment usually does not require pre-deprivation notice and opportunity to be heard. Instead, the availability of a post-seizure return motion, such as under Federal Rule of Criminal Procedure 41(g), is the adequate post-deprivation process. *Cf. Perkins v. City of W. Covina*, 113 F.3d 1004, 1011 (9th Cir. 1997) (holding that California law provides by motion adequate remedies for return of property), *rev'd on other grounds, sub nom. City of W. Covina v. Perkins*, 525 U.S. 234 (1999).

The necessity of alleging the absence of a post deprivation remedy also extends to allegations that the property was either lost or destroyed. For example, in *Marulanda v. U.S. Marshals Serv.*, 467 F. Appx 590 (9th Cir. 2012) the plaintiff alleged "violations of his Fifth Amendment due process rights in connection with the destruction of his personal property." *Id*. at 590. But the Ninth Circuit affirmed the dismissal because 31 U.S.C. § 3724(a), which allows settlement of losses caused by law enforcement, "provided an adequate post-deprivation remedy for the unauthorized acts of a federal employee." *Id*. The availability of § 3724(a) in this case defeats Plaintiffs' procedural due process claim for loss or damage.

18

**CONCLUSION**

For the foregoing reasons, the Individual Defendants' motion to dismiss should be granted.

Dated: December 2, 2021                    Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Acting Assistant Attorney General, Civil Division

                                           C. SALVATORE D'ALESSIO, JR.
                                           Acting Director, Torts Branch, Civil Division

                                           RICHARD MONTAGUE
                                           Senior Trial Counsel, Torts Branch, Civil Division

                                           */s/ Joseph A. Gonzalez*
                                           JOSEPH A. GONZALEZ
                                           Trial Attorney, Torts Branch, Civil Division
                                           U.S. DEPARTMENT OF JUSTICE
                                           Ben Franklin Station
                                           P.O. Box 7146
                                           Washington, D.C. 20044-7146
                                           (202) 598-3888 (phone)
                                           (202) 616-4314 (fax)
                                           joseph.a.gonzalez@usdoj.gov

                                           Attorneys for Defendants Kristi Koons Johnson
                                           and Lynne K. Zellhart in their individual
                                           capacities

19