NINA MARINO, ESQ. (State Bar No. 142815)
JENNIFER LIESER, ESQ. (State Bar No. 313707)
KAPLAN MARINO, PC
1546 N. Fairfax Avenue
Los Angeles, CA  90046
Tel:    (310) 557-0007
Fax:   (310) 861-1776
Email:  marino@kaplanmarino.com
             lieser@kaplanmarino.com

Attorneys for Plaintiffs
DONALD LEO MELLEIN
PAULA MARGARITA VILLEGAS de MELLEIN

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DONALD LEO MELLEIN;**<br>**PAULA MARGARITA VILLEGAS DE**<br>**MELLEIN,**<br><br>                              Plaintiffs,<br><br>                    v.<br><br>**UNITED STATES OF AMERICA;**<br>**TRACY WILKISON,**<br>   in her official capacity only;<br>**KRISTI KOONS JOHNSON,**<br>   in her official and individual capacities;<br>**LYNNE ZELLHART,**<br>   in her individual capacity only;<br>**JUSTIN PALMERTON,**<br>   in his individual capacity only;<br>**KATHRYN E. BAILEY DRESS,**<br>   in her individual capacity only;<br>**DEZMOND BEVERLY,**<br>   in his individual capacity only;<br>**JESSIE MURRAY,**<br>   in her individual capacity only; and<br>**DOE UNIDENTIFIED FEDERAL LAW**<br>**ENFORCEMENT AGENTS 1-10,**<br>   in their individual capacities,<br><br>                              Defendants. | No. 21-CV-06588<br><br>**FIRST AMENDED COMPLAINT**<br>**(MOTION) FOR:**<br><br>**(1) RETURN OF PROPERTY**<br>**PURSUANT TO FEDERAL RULE OF**<br>**CRIMINAL PROCEDURE 41(g);**<br><br>**(2) DAMAGES PURSUANT TO**<br>***BIVENS V. SIX UNKNOWN NAMED***<br>***AGENTS OF THE FEDERAL BUREAU***<br>***OF NARCOTICS*, 403 U.S. 388 (1971);**<br><br>**(3) ORDER REQUIRING**<br>**DISCLOSURE OF WRITTEN AND**<br>**VIDEO INVENTORY**<br><br>**DEMAND FOR JURY TRIAL** |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 10, 2022, Plaintiffs Donald Mellein and Paula Margarita Villegas de Mellein will and hereby do move the Court (1) for an order that the government return all as-yet unreturned property it seized from Box #224 pursuant to Fed. R. Crim. Proc. § 41(g), or in the alternative; (2) for an order awarding damages pursuant to *Bivens v. Six Unknown Names Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); and (3) for an order requiring the government to provide all inventory materials and records related to the search, seizure, and chain-of-custody of the contents of Box #224 at U.S. Private Vaults, located at 9182 West Olympic Blvd., Beverly Hills, CA 90212. Plaintiffs are entitled to this material pursuant to Federal Rules of Criminal Procedure 41 and the Fourth and Fifth Amendments of the United States Constitution.

This Motion shall be based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declarations of Nina Marino and Jennifer Lieser, the files and records in this action, and any other evidence that may be presented at or before the hearing on this matter.

Because Plaintiffs are not the subject of any criminal prosecution, any request made under Fed. R. Crim. Proc. § 41 is treated as a civil equitable proceeding. *Nottoli v. United States*, No. 1: 13-mc-0049-BAM (E.D. Cal. Sep. 26, 2013) (citing *United States v. Ritchie*, 342 F.3d 903, 906 (9th Cir. 2003)).

DATED: December 23, 2021

Respectfully submitted,
KAPLAN MARINO, PC

/s/ Nina Marino

_____
NINA MARINO
JENNIFER LIESER
Attorneys for Plaintiffs
DONALD LEO MELLEIN
PAULA MARGARITA VILLEGAS de
MELLEIN

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

1.    Donald Mellein is a 77-year-old retired civil servant for the City of Los Angeles and Paula Margarita Villegas de Mellein is his wife, an El Salvadorean who fled to the United States in 1981 after experiencing severe hardship. Both have led law-abiding lives of service and dedication to the City of Los Angeles where Donald Mellein worked for 24 years. About nine months ago, the government unlawfully seized from their safe deposit Box #224 at U.S. Private Vaults, Inc. ("USPV") their retirement savings and the inheritance they had slowly built up for their 19-year-old son. On June 14, 2021, the FBI returned only *some* of their property. ***The FBI failed to return approximately 110 one-ounce gold coins worth roughly $220,000.*** Left with no further redress, the Plaintiffs filed suit on August 13, 2021. (Dkt. No. 1.)

2.    It was not until four months after Plaintiffs filed a civil suit that Plaintiffs learned for the first time, in the United States' Motion to Dismiss Plaintiffs' Complaint, that the government still possessed 47 of the gold coins. (Dkt. No. 30; see also Dkt. Nos. 34, 35.)

3.    The Government's seizure of the Plaintiffs' retirement savings and inheritance for their teenage son has caused the Plaintiffs considerable stress and anxiety. The Government's initial loss of 110 gold coins valued at approximately $220,000, their continued loss of 63 gold coins valued at approximately $122,350, and lack of any kind of inventory necessary to trace them, coupled with the lack of ***any meaningful response at all*** from the Government, only adds to their injury.

4.    Plaintiffs seek an order (1) that the government returns all as-yet unreturned property it seized from Box #224 pursuant to Fed. R. Crim. Proc. § 41(g), or in the alternative; (2) for damages pursuant to *Bivens v. Six Unknown Names Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); and (3) for the government to provide all inventory materials and records related to the search, seizure, and chain-of-custody of the contents of Box #224 at U.S. Private Vaults, Inc., located at 9182 West Olympic Blvd., Beverly Hills, CA 90212. Plaintiffs are entitled to this material pursuant to Federal Rules of Criminal Procedure 41 and the Fourth and Fifth Amendments of the United States Constitution.

## II.     JURISDICTION, AUTHORITY, AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Article III of the United States Constitution in that the United States is a party to this action, and the action involves questions of federal statutory and constitutional law.

6.     The Court has the authority to order Defendants to return Plaintiffs' personal property pursuant to Federal Rules of Criminal Procedure § 41(g) ("Rule 41(g)"), even in the absence of a criminal proceeding, as it was the subject of an unlawful search, seizure, and deprivation of property. *See Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993); *United States v. Martinson*, 809 F.2d 1364, 1366-67 (9th Cir. 1987).

7.     This Court has the inherent equitable power to order the return of Plaintiffs' personal property separate and apart from Rule 41(g). *see Otonye v. United States*, 903 F. Supp. 357, 360 (E.D.N.Y. 1995).

8.     This Court also has the authority to award damages against the law enforcement agents who engaged in the unlawful search and seizure of Plaintiffs' property pursuant to the United States Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), and its progeny.

9.     This Court has the authority to grant the declaratory relief sought herein pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Federal Rules of Civil Procedure § 57.

10.     This Court has the authority to order the government to disclose to Plaintiffs' counsel any inventory of the contents of the safe deposit box pursuant to Federal Rules of Criminal Procedure § 41(f) ("Rule 41(f)").

11.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1), (2) and (3) and (e)(1) because Defendants include officers and employees of the United States and its agencies and, on information and belief, they reside in this district; because a substantial part of the events and/or omissions giving rise to the claims alleged herein occurred in this district; and because a substantial part of the property that is the subject of this action is situated in this district.

//

## III.   PARTIES

### A. Plaintiffs

12.     Plaintiffs Donald Leo Mellein and Paula Margarita Villegas de Mellein, are, and at all relevant times were, individuals over the age of 18 and residing in Los Angeles County, California.

### B. Defendants

13.     Defendant United States of America is, and at all relevant times was, the United States, its departments, agencies, and entities, including those responsible for the Fourth and Fifth Amendment violations alleged in this action.

14.     Defendant Wilkison is, and at all relevant times was, the Acting United States Attorney for the Central District of California (the "U.S. Attorney"). The U.S. Attorney has authority over all policies and practices of the USAO, and all actions taken by Assistant United States Attorneys for the Central District of California. Defendant Wilkison is sued in her official capacity only.

15.     Defendant Koons Johnson is, and at all relevant times was, the Assistant Director in Charge of the FBI's Los Angeles Field Office (the "Assistant Director"). The Assistant Director has authority over the policies and procedures implemented by, and the actions of, FBI agents assigned to the Los Angeles Field Office. The search and seizure of USPV was a large-scale operation, involving dozens of FBI and other federal law enforcement agents. On information and belief, such a significant mobilization of federal law enforcement agents, including FBI agents, in the Los Angeles metropolitan area could only have occurred with Koons Johnson's knowing participation in, and/or approval or ratification of the operational plan for the seizure of the USPV safe deposit boxes, including the decision to seize and break open all of the USPV boxes, and rifle through their contents, despite the complete absence of probable cause to do so. Defendant Koons Johnson is sued in her official and individual capacities.

16.     Defendant Lynne Zellhart is, and at all relevant times was, the lead agent assigned to the search and seizure at U.S. Private Vaults, Inc. Agent Zellhart supervised, participated in, and/or otherwise aided and assisted the unlawful search and seizure of Plaintiffs' safe deposit box

and its contents, and is jointly and severally responsible and liable for the damage and harm caused to Plaintiffs. Defendant Zellhart signed an affidavit under penalty of perjury that was submitted in support of the search and seizure warrants for USPV. The Affidavit was false and misleading for the reasons discussed below. Plaintiff is informed and believes that all of these false and misleading statements were made by Defendant Zellhart knowingly or with reckless disregard for their truth or falsity. Defendant Zellhart is sued in her individual capacity.

17.     Defendant Palmerton is, and at all relevant times was, a Special Agent of the FBI in, and acting at the direction of, the FBI's Los Angeles Field Office. In *Doe v. United States et al.,* Case No. 21-cv-02803, Defendant Palmerton submitted a Declaration, dated May 25, 2021, stating that, "I personally participated in the inventorying of the contents of the safety deposit boxes at U.S. Private Vaults." Defendant Palmerton is sued in his individual capacity.

18.     Defendant Bailey Dress is, and at all relevant times was, a Special Agent of the FBI in, and acting at the direction of, the FBI's Los Angeles Field Office. Plaintiffs are informed and believe that Defendant Beverly personally participated in the inventorying of the contents of the safety deposit boxes at USPV. Defendant Baily Dress is sued in her individual capacity.

19.     Defendant Beverly is, and at all relevant times was, a Federal Law Enforcement Agent, based in the Los Angeles metropolitan area, and acting at the direction of the FBI's Los Angeles Field Office. Plaintiffs are informed and believe that Defendant Beverly personally participated in the inventorying of the contents of the safety deposit boxes at USPV. Defendant Beverly is sued in his individual capacity.

20.     Defendant Murray is, and at relevant times was, a Supervisory Special Agent of the FBI in, and acting at the direction of, the FBI's Los Angeles Field Office. Plaintiffs are informed and believe that Defendant Murray has personally participated in the continued detention of Plaintiff's property by the government. *See* Declaration of Supervisory Special Agent Jessie Murray, *Doe v. United States et al.,* Case No. 21-cv-02803 (Dkt. No. 25-5). Defendant Murry is sued in her individual capacity.

21.     Plaintiffs are unaware of the true names and capacities of those Defendants sued as DOES 1-10, and therefore sues those Defendants using their fictitious names. On information and

belief, each such Defendant is a federal law enforcement agent who supervised, participated in, or otherwise aided and assisted the unlawful search and seizure of Plaintiffs' safe deposit box and its contents, and is jointly and severally responsible and liable for the damage and harm caused to Plaintiffs. Plaintiffs will amend this pleading to allege the true names and capacities of DOES 1-10 when they have been ascertained.

## IV.     RELATED CASES

22.     This case is related to the following civil cases pending in this district before United States District Judge Gary R. Klausner:

(a) *John Doe v. United States of America, et al.*,

Case No. 2:21-cv-02803, filed on March 31, 2021;

(b) *Richard Roe v. United States of America, et al.*,

Case No. 2:21-cv-02919, filed on April 5, 2021;

(c) *Michael Moe v. United States of America, et al.*,

Case No. 2:21-cv-02990, filed on April 6, 2021;

(d) *Charles Coe v. United States of America, et al.*,

Case No. 2:21-cv-03019, filed on April 7, 2021;

(e) *DOES 1-6 v. United States of America, at al.*, Case No. 2:21-cv-

03254, filed on April 15, 2021;

(f) *Mitchell Magee v. United States of America, et al.,*

Case No. 2:21-cv-03298, filed on April 16, 2021;

(g) *Louis Loe v. United States of America, et al.,*

Case No. 2:21-cv-03348, filed on April 19, 2021;

(h) *Search and Seizure of Box No. 8309 at U.S. Private Vaults*

Case No. 2:21-cv-03554, filed on April 26, 2021; and

(i) *John Joe v. United States, et al.,*

Case No. 2:21-cv-04366, filed on May 25, 2021.

23.     This case is related to the above civil cases pursuant to Local Rule 83-1.3, in that: (a) they all arise from the same or closely related transactions, happenings, and events; (b) they all

call for the determination of the same or substantially related or similar questions of law and fact; and (c) because they all name the United States as a defendant and seek some of the same relief, they would entail substantial duplication of effort if heard by different judges.

## V.   STATEMENT OF FACTS

24.   Plaintiffs request that the Court take judicial notice of all filings before this Court arising from the search of USPV and, ¶¶ 22 through 57 contained in the Statement of Facts to the Complaint of *John Joe v United States et al.*, Case No. 2:21-cv-04366.

### A. Defendants' search and seizure of Plaintiffs' property at USPV.

25.   Plaintiffs leased safe deposit Box #224 at USPV. They were given the only two keys to Box #224 and have maintained control over Box #224 since the commencement of their lease in September 2017. Plaintiff Donald Mellein has one of the keys and Plaintiff Paula Margarita Villegas de Mellein has the other. As of the time of the search and seizure of USPV by the FBI, Plaintiffs were current on their rent payments and had an expectation of privacy in the interior of Box #224 and its contents.

26.   Neither of Plaintiffs is owners, officers, directors, managers, supervisors, employees, or representatives of USPV, and are not associated with or a customer of the Gold Business that is co-located with or adjacent to USPV. Plaintiffs were not aware of any criminal activity occurring at or connected to USPV. Plaintiffs would not have rented Box #224 or continued to rent Box #224 at USPV if they had become aware of any such activity.

27.   Plaintiffs' property was in their safe deposit Box #224 when the Government seized control of USPV and the nests of other safe deposit boxes at USPV on or about March 22, 2021.

28.   Plaintiffs invested their retirement savings and inheritance for their 19-year-old son in a collection of gold coins and one gold bar that they stored at USPV along with cash from an auto accident settlement. Specifically, Plaintiffs' safe deposit Box #224 contained (a) miscellaneous papers, including a receipt for 20 of the 110 gold coins stored in Box #224 (and, after a thorough search, Plaintiffs also believe the receipt for 60 American Eagles was also stored in Box #224 which has not been returned to Plaintiffs); (b) one gold bar; (c) $76,050 in US currency; and (d) 110 one-ounce gold coins – which included 30 Canadian maple leaf gold coins

and 80 American Eagle gold coins. Defendants have already implicitly acknowledged by returning some of Plaintiffs' property that the contents of Box #224 were not contraband or otherwise connected to criminal activity. Affixed to the top of Box #224 was Donald Mellein's name and contact information and name and contact information for the successor trustee in the event Plaintiffs died or were otherwise incapacitated.

29.    As this Court is now aware, beginning on March 22, 2021, Defendants executed search and seizure warrants at USPV. Among other things, Defendants seized each of the hundreds of safe deposit boxes housed at the facility, along with the contents of each box belonging to the individual box holders who rented them. Plaintiffs' Box #224 and its contents were among those seized.

**B. Plaintiffs' background and purchase of gold coins.**

30.    In 1966, Don Leo Mellein left his job with Security Pacific Bank and tested with the City of Los Angeles Department of Water and Power. After passing the test, he was hired as an Assistant Steam Plan Operator at the Van Nuys DWP plant. He went on to work his way up through various positions in DWP, participating in major projects including the Pacific Northwest Intertie and the building of the Castaic dam. In 1979, he transferred to Parks and Recreation as an electrician and electrical supervisor. Eventually, in approximately 1984, he transferred to the General Services Division where he rose to the position of Building Maintenance District Supervisor. He was in this position when he retired on March 6, 2000, after 24 years of service to the City of Los Angeles.

31.    Paula Margarita Villegas was born April 15, 1961, in El Salvador. Paula grew up in El Salvador during periods of political instability and violent unrest, including civil war. One of her brothers was kidnapped and killed by guerillas. She spoke out against communism and experienced great personal hardship at the hands of the government as a result. She eventually fled to America in 1981.

32.    Soon after Paula arrived in the United States, Donald and Paula met, began dating, and were married in 1986. After his retirement from the City of Los Angeles in 2000, Donald had plans to do volunteer work for the Salvation Army, but this was derailed when Paula decided she

wanted to have a baby before it was too late. (She was 40.) She became pregnant and the pregnancy was difficult. At the time, she and Donald were living in a four-story house in Malibu at 2955 Sequit Drive. Paula was bedridden for most of the pregnancy, which was touch and go as to whether the baby would be carried to term. Donald cared for Paula throughout the pregnancy.

33.     On May 26, 2002, the baby was born, a son, William Alexander Villegas-Mellein. William was born with severe health problems, including hip displacement which resulted in him being placed in a full-body cast, then a harness. After treatment for 18 months, he was able to stand and eventually was able to overcome his health problems. Today William lives with his family and is employed by Trader Joe's.

34.     To help provide for their new family, in 2002, Donald and Paula sold their four-story house in Malibu for $895,000. The mortgage was fully paid at that point, so Donald and Paula netted approximately $800,000. A very substantial amount of these proceeds remained intact and were available to Donald and Paula as they began to buy gold coins in 2005.

35.     In the early 2000s, Donald became friendly with an elderly Holocaust survivor, the owner of Kurt Jewelers in Los Angeles. Kurt spoke to Donald at length about the wisdom of opting out of the banking system for at least part of his personal wealth, due to the instability of the banking system, and what Kurt perceived to be the wisdom of owning gold. Donald had always maintained a somewhat skeptical view of the government and its institutions, and after listening to Kurt, Donald made his first purchase of gold coins on January 5, 2005, purchasing 30 gold one-ounce Canadian Maple leaf coins for $433 each, a total of $13,000. (Lieser Dec., ¶ 3, Ex A, 30 gold coins receipt.) He used funds from his savings, mainly the proceeds from the sale of the Malibu property, to fund the purchase.

36.     Donald's next purchase of gold was 60 American Eagle one-ounce gold coins, purchased in March 2006 with the proceeds from liquidating his Great West Retirement Services account, for which he received a check in the amount of $57,434.61. He cashed the check on March 16, 2006, and after paying taxes used the remainder to buy the 60 gold coins. After a thorough search for this receipt, Donald and Paula are of the belief that said receipt was stored inside Box #224 and was taken, misplaced, lost, stolen, etc. with the remaining 63 gold coins.

37.     Donald's final purchase of gold coins took place on May 5, 2008, when he bought 20 American Eagle one-ounce coins at approximately $900 each, for a total purchase of approximately $18,000, paid from savings. The receipt for this purchase was stored in Box #224 at USPV and was returned to counsel by the FBI on June 14, 2021. (Lieser Dec., ¶ 4, Ex. C, 20 gold coins receipt.)

38.     Upon making each purchase of gold coins, Plaintiffs stored the coins in their safe deposit box at Wells Fargo Bank in Thousand Oaks. As time went on, Donald became progressively more concerned about banking instability. Paula mentioned seeing USPV when she drove on Olympic Blvd. The couple decided to move their property from Wells Fargo Bank in Thousand Oaks to USPV in September 2017.  Their property remained there, at USPV, until it was seized by the FBI on or about March 22, 2021.

39.     Plaintiffs frequented USPV to add to or check on the contents of their safe deposit Box #224 approximately three to four times a year since September 2017. During these visits, Donald added cash, documents, and on a few occasions, took out cash. The major cash infused came when Donald received a settlement of $145,000 in approximately 2017 to 2018 from an auto accident that nearly took his life. Plaintiffs last viewed the contents of Box #224, including their 110 gold coins which were neatly stored in plastic vials, in January 2021. Plaintiffs have been unable to enter the USPV facility or access Box #224 or its contents since March 22, 2021.

**C. Defendants returned some, but not all, of Plaintiffs' property.**

40.     Shortly after learning of the seizure of their property, around April 12, 2021, Plaintiffs' counsel submitted a claim for return of property on behalf of Plaintiffs at forms.fbi.gov/uspvclaims and provided the law firm contact information. The form did not require the inclusion of a box number or box contents – it only requested name and contact information. (Lieser Dec., ¶ 2.)

41.     On or about May 24, 2021, Plaintiffs received via certified mail a notice of forfeiture of their property. The forfeiture notice did not identify all the property Plaintiffs had stored in Box #224. It failed to include approximately 110 gold coins belonging to Plaintiffs. (Lieser Dec., ¶ 3.)

42.     On June 1, 2021, Plaintiffs' counsel spoke with Agent Zellhart in connection with this matter. During that call Agent Zellhart agreed to remove Box #224 from the FBI forfeiture list and return the property identified as belonging to Box #224 to Plaintiffs. When counsel inquired regarding the status of Plaintiffs' gold coins, which did not appear on the FBI forfeiture list, Agent Zellhart stated that perhaps the gold coins were separated from the rest of the property as not subject to forfeiture. It was counsels' expectation that all of Plaintiffs' property was to be returned, including the gold coins. (Marino Dec., ¶ 2.)

43.     On June 14, 2021, Plaintiffs' counsel met with FBI Agent Lynne Zellhart and another unidentified agent to obtain the contents of Box #224 that had been seized by Defendants. When the agents arrived with Box #224, they verified Plaintiffs' ownership by testing the USPV key that counsel had brought. After the key turned the lock for Box #224,[1] the agents provided counsel with a property receipt for Box #224. (Lieser Dec. ¶ 4, Ex. B). Notably, the receipt – and apparently the "inventory" form from which it was allegedly precisely copied – fails to include any record of the 110 gold coins seized on March 22, 2021.

44.     Upon return from the FBI, Counsel Lieser immediately sent a letter to Agent Zellhart and copied AUSA Andrew Brown notifying them of the missing coins and requesting a copy of the video inventory.[2] (Lieser Dec., ¶ 5, Ex. D.) Counsel requested that Agent Zellhart respond to their request with urgency. Despite multiple follow-up attempts, counsel has not received a response from Agent Zellhart. That same day, counsel also left a voice message for Agent Zellhart which was never returned. (Lieser Dec., ¶¶ 5-6.)

45.     On June 21, 2021, Plaintiffs' counsel left a voice message and an email for AUSA Andrew Brown again requesting a copy of the video inventory of Box #224 and on June 22, 2021, counsel attempted to reach Agent Zellhart over the phone, but her line continued to ring and eventually just cut off. Counsel then contacted the receptionist at the FBI who informed that an

---

[1] Of note, the key did not actually retract the lock to the safe deposit box, it merely turned in the lock. Agent Zellhart stated, although not verbatim, "Well what do you say, should we trust them?" and proceeded to have her unidentified FBI agent assistant remove the contents of the box.

[2] In the letter, counsel indicated there were 120 missing coins. After a thorough accounting, it has been determined there were approximately 110.

email message had been sent to Agent Zellhart. Later that same day, AUSA Brown returned counsel's call and informed counsel that the FBI's search and seizure at USPV was "not their finest moment." Counsel did not disagree. AUSA Brown then provided counsel with the phone number for FBI Associate Division Counsel Tammy Bloomfield whom AUSA Brown indicated would be the appropriate contact for requesting the video inventory. Counsel then attempted to reach Ms. Bloomfield; however, Ms. Bloomfield's number just rang and rang with no voicemail. Counsel then emailed Ms. Bloomfield requesting the video inventory and a return call. Counsel never received a response from Ms. Bloomfield. (Marino Dec., ¶ 3; Lieser Dec., ¶ 6.)

46.     On August 13, 2021, Plaintiffs filed suit, seeking redress for their missing property. (Dkt. No. 1.)

47.     On December 2, 2021, the United States filed a Motion to Dismiss, notifying Plaintiffs for the first time that it possessed 47 gold coins which it had seized from Plaintiffs' box. (Lieser Dec., ¶ 7; Dkt. No. 30, 3:21-23.)

48.     On December 8, 2021, counsel spoke with defense counsel, AUSAs Victor Rodgers and Joseph Gonzalez, in an attempt to meet and confer on this matter. Mr. Rodgers was unwilling to provide us with any sort of inventory for Box #224 and refused to state if any such video or other inventory even existed. (Lieser Dec., ¶ 8.)

49.     Shortly thereafter on that same day, counsel sent an email to AUSA Andrew Brown again requesting a copy of the inventory for Box #224. AUSA Brown refused. (Lieser Dec., ¶ 9; Ex. E.)

50.     On December 16, 2021, counsel again met and conferred with AUSAs Victor Rodgers and Joseph Gonzalez. Mr. Rodgers again expressed his unwillingness to provide any inventories. (Lieser Dec., ¶ 10.)

51.     On December 20, 2021, counsel retrieved 27 Canadian maple leaf gold coins and 20 American Eagle or Liberty gold coins. (Lieser Dec., ¶ 11; Ex. F.) Still unaccounted for are three Canadian maple leaf gold coins and 60 American Eagles. (Id.) When counsel inquired about additional gold coins, FBI agent Phyllis Mclan, spelling uncertain, who was accompanied by Agent Lesley Buchan, informed counsel, although not verbatim, that the FBI was still in the

process of reviewing the inventory photos and that it would be helpful to know the composition of the additional unaccounted-for gold coins so that they could look for them. (Id.) Shortly thereafter, counsel emailed Agent Lesley Buchan the composition of the outstanding gold coins (three Canadian maples and 60 American Eagles). (Lieser Dec., ¶ 11; Ex. G.)

52.    That same day, counsel gave the Melleins the 47 gold coins counsel had retrieved from the FBI. Upon inspection that afternoon, the Melleins noted that the 20 American Eagle gold coins that were returned were, in fact, not theirs. The mint dates are much older than any that they have purchased. The Melleins, however, accept these 20 gold coins as substitute property for 20 of the American Eagle gold coins that were stored in their box. (Lieser Dec., ¶ 12.)

53.    Also on December 20, 2021, Plaintiffs filed an Opposition to Defendants' Motions to Dismiss (Dkt. No. 34) and a Motion for a Preliminary Injunction for All Inventories Associated with Box #224 (Dkt. No. 35) which Plaintiffs incorporate by reference into the instant Amended Complaint.

**Plaintiffs' Claims of Missing Coins Are Not Unique**

54.    Plaintiffs' claims of missing coins are not unique. Plaintiffs' counsel represents another box holder to which the FBI attributed an additional $239,200 to their box which was not theirs. (Lieser Dec., ¶ 13.)

55.    On December 9, 2021, counsel spoke with Robert Johnson, counsel to class action litigant box holders *in Snitko et al. v. United States et al.*, Case No. 21-cv-04405, who informed counsel that he also had a box holder client who was missing approximately $2,000 in cash from his box. (Lieser Dec., ¶ 14.)

56.    Counsel is also aware that Linda R. also filed suit against the United States for her 40 missing gold coins. *See In Re Search and Seizure of Box No. 8309 at U.S. Private Vaults*, Case No. 21-cv-03554. (Lieser Dec., ¶ 15.)

57.    With no further non-litigious recourse and with Plaintiffs' growing panic and emotional distress, Plaintiffs have filed this present Amended Complaint to seek the Court's intervention.

*//*

## VI.   RULE 41 AND THE COURT'S INHERENT POWER TO PROVIDE A VEHICLE TO OBTAIN RELIEF

### A. Plaintiffs are "aggrieved by the deprivation of their property" and are entitled to a copy of the video inventory of Box #224.

58.     Federal Rule of Criminal Procedure 41(g) provides:

> **Motion to Return Property.** A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant but may impose reasonable conditions to protect access to the property and its use in later proceedings.

59.     Plaintiffs are "aggrieved . . . by the deprivation of property," namely the 63 one-ounce gold coins that Defendants have not returned to them. Plaintiffs seek the immediate return of their property.

60.     Rule 41 is clear that "in a motion for return of property, as with any other equitable action, a court may fashion *any* appropriate relief that comports with traditional equitable principles" absent "clear Congressional command to exclude certain forms of relief." *United States v. Rodriguez*, No. EP-08-1865-PRM, 2011 WL 5854369, at *3 (W.D. Tex. Feb. 18, 2011); *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974) ("Rule 41 is a crystallization of the principle of equity jurisdiction. That equity jurisdiction persists as to situations not specifically covered by the Rule."); *see also United States v. Martinson*, 809 F.2d 1364, 1367 (9th Cir. 1987) (reversing denial of Rule 41(g) motion because "[i]t is the historic purpose of equity secure complete justice. The courts will be alert to adjust their remedies so as to grant the necessary relief."). The guiding principle of Rule 41(g) is "reasonableness under all of the circumstances." Fed. R. Crim. P. 41(g) Advisory Comm. Notes (1989), 124 F.R.D. 397, 427-29.

61.     In addition to the power granted by Rule 41, the Court has the inherent equitable power to consider motions for return of property. "This power stems from the court's disciplinary

authority over attorneys appearing before it as officers of the court. This inherent power also extends to federal agents charged with 'observ[ing] 'standards for law enforcement' established by 'the federal Rules governing searches and seizures.'" *Otonye v. United States*, 903 F. Supp. 357, 360 (E.D.N.Y. 1995) (citations omitted).

62.     Where, as here, the Government concedes that it must return a claimant's property, the Government bears the initial burden of proving that it "observed standards . . . governing searches and seizures," and handled the property consistent with proper protocols:

> Since  []  Plaintiff's  constitutional  rights  under  the  Fourth Amendment  are  implicated,  it  makes  sense  that  the  government should  initially  bear  the  burden  of  proving  that  it  dealt  with Plaintiff's  property  in  accordance  with  regulations  prescribed  in  41 C.F.R.  §  128.50–101[3]  or  other  acceptable  standards.  Once  this showing  is  made,  the  burden  should  then  shift  to  the  claimant  to demonstrate  the  existence  of  the  claimed  property.

*Id.* at 363 n.8; *see also United States v. Cardona*, 897 F. Supp. 802, 804 (S.D.N.Y. 1995) ("Clearly, the Government, in order to defeat a motion for the return of seized property, must provide some evidentiary proof accounting for the property seized."). Thus, the Government should be prepared to provide this information.

63.     Where, as here, no criminal proceeding is pending against a Rule 41(g) movant, the district court considers four factors in deciding whether to exercise jurisdiction over the movant's

---

[3] This regulation applies to Justice Department agencies and provides:

Each bureau shall be responsible for establishing and maintaining inventory records of its seized personal property to ensure that:

(a) The date the property was seized is recorded;

(b) All of the property associated with a case is recorded together under the case name and number;

(c) The location of storage of the property is recorded;

(d) A well-documented chain of custody is kept; and

(e) All information in the inventory records is accurate and current.

41 C.F.R. § 128-50.101.

request for relief: whether "(1) the Government displayed a callous disregard for the constitutional rights of the movant; (2) the movant has an individual interest in and need for the property he wants returned; (3) the movant would be irreparably injured by denying return of the property; and (4) the movant has an adequate remedy at law for the redress of his grievance." *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) (*quoting Ramsden v. United States*, 2 F.3d 322, 324-325 (9th Cir. 1993)) (internal citation marks omitted). Not all factors must weigh in the movant's favor for the district court to exercise jurisdiction; rather, a court engages in a balancing test. *Ramsden*, 2 F.3d at 326 (exercising jurisdiction over Rule 41(g) motion despite finding that the plaintiff had not shown irreparable injury).

64.     The Government's failure to account for initially 110 and now the remaining 63 gold coins and its provision of patently deficient receipts which fail to include a complete accounting of all of Plaintiffs' property stored in Box #224 satisfy all four elements of Rule 41's jurisdictional query: (1) failing to create or provide any useful inventory and losing Plaintiffs' retirement assets and inheritance for their son is easily callous; (2) Plaintiffs have an individual interest in and need for their retirement funds and ability to continue to care for and provide for their son; (3) Plaintiffs would be irreparably injured by the loss of their assets, and (4) Plaintiffs have no adequate remedy at law for the redress of this grievance. Thus, Plaintiffs submit that the Court should exercise its jurisdiction to help them.

65.     Because Plaintiffs have not been charged in any criminal proceeding – indeed Defendants have already returned some of their property and therefore impliedly concedes it had no probable cause to search or seize it – their Rule 41 motion is treated as a civil equitable proceeding. *See, e.g., United States v. Ibrahim*, 522 F.3d 1003, 1008 (9th Cir. 2008).

**B. Plaintiffs are entitled to their as-yet-unreturned assets.**

66.     Federal Rule of Criminal Procedure 41(g) empowers the Court to order the return of both lawfully and unlawfully seized property. The Rule provides that "[a]person aggrieved by . . . the deprivation of property may move for the property's return" and "[i]f it grants the motion, the court must return the property to the movant[.]" Fed. R. Crim. P. 41(g). Rule 41(g) offers recourse for anyone "whose property or privacy interests are impaired by [a] seizure." *United*

*States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1173 (9th Cir. 2010), overruled in part on other grounds as recognized by *Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018). Even if the original seizure was legal, Rule 41 provides for relief for the continued improper retention of property: "As amended, Rule 41[g] provides that . . . a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it." Fed. R. Crim. P. 41(g), Advisory Comm. Notes (1989), 124 F.R.D. 397, 427-429.

67. A court determines whether property should be returned to its owner based on "reasonableness under all of the circumstances." Fed. R. Crim. P. 41(g) Advisory Comm. Notes (1989), 124 F.R.D. 397, 427-29; *Ramsden*, 2 F.3d at 326. The standard of proof is a preponderance of the evidence. *See Motion to Return Property*, 3A Fed. Prac. & Proc. Crim. § 690 (4th ed.) (citing cases). Importantly, where, as here, the property at issue is not being held as part of a criminal search or seizure, the property owner "is presumed to have a right to [the property's] return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property." *United States v. Gladding*, 775 F.3d 1149, 1152 (9th Cir. 2014) (citing *Martinson*, 809 F.2d at 1369 (alteration in original). Indeed, a property owner's Rule 41(g) motion "should presumptively be granted if the government no longer needs the property for evidence." *United States v. Kriesel*, 720 F.3d 1137, 1144 (9th Cir. 2013). The Government can rebut this presumption only with admissible evidence; mere arguments or assertions by Government attorneys are not sufficient. *See Gladding*, 775 F.3d at 1153 ("[R]epresentations are not evidence unless adopted by the opponent. The government failed to submit any evidence [supporting] a 'legitimate reason' for retention of the noncontraband files. For that reason, the government could not have carried its burden of proof[.]"); *Motion to Return Property*, 3A Fed. Prac. & Proc. Crim. § 690 (4th ed.) ("If factual issues need to be resolved to decide the motion, the court must receive evidence on the factual issues.").

68. Even a temporary delay in returning property has Fourth Amendment ramifications. For example, the Ninth Circuit has found that a "30-day impound is a 'meaningful interference with an individual's possessory interests'" under the Fourth Amendment. *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017) (quoting *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)). This is

true even when the original seizure was justified: "The Fourth Amendment doesn't become irrelevant once an initial seizure has run its course. . . . Thereafter, the government must cease the seizure or secure a new justification." *Id.* at 1197 (citing *United States v. Jacobsen*, 466 U.S. 109, 124 & n.25 (1984)). Here, Defendants say the inventory and inspection were completed no later than March 26, 2021, when it ended its search of USPV. (Govt. Opp. to Ex Parte App. for TRO and OSC at 2, *Doe v. United States*, No. 2:21-cv-02803, Dkt. 15.) But the Defendants have continued the "impound" of Plaintiffs' property for nine months now and still refuse to return it or even acknowledge Plaintiffs continued requests for the video inventory search. Defendants have no authority for the continued retention of Plaintiffs' property and indeed have acknowledged that it does not by agreeing to return some of it. Defendants' retention, therefore, violates the Fourth Amendment.

## VII.   RELEVANT SEARCH AND SEIZURE LAW

69.   Not only are Defendants actively violating Plaintiffs' Fourth Amendment rights through the wrongful detention of their property, but the initial search and seizure of Plaintiffs' safe deposit box was in violation of the Plaintiffs' Fourth Amendment rights. The Fourth Amendment to the United States Constitution provides that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend IV. "The Fourth Amendment protects two types of expectations, one involving 'searches,' the other 'seizures.' A 'search' occurs when the government intrudes upon an expectation of privacy that society is prepared to consider reasonable. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012) (*quoting United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). There is no question both occurred here. All of the Plaintiffs' possessions in Box #224 were searched and were seized—but at issue here are solely the 110 – now 63 – missing gold coins.

//

**A.  The Probable Cause requirement**

70.     The confiscation, detention, inspection, and/or cataloging of the contents of a safe deposit box containing private property is a search and seizure for purposes of the Fourth Amendment. *See, e.g., United States v. Chadwick*, 433 U.S. 1, 11 (1977) ("By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination."), abrogated on other grounds by *California v. Acevedo*, 500 U.S. 565 (1991); *United States v. Spilotro*, 800 F.2d 959, 962 (9th Cir. 1986) ("We begin by noting that there is no question that defendant Blasko has standing to challenge the search of his home, person, and safe deposit box."); *United States v. Wetselaar*, 2013 WL 8206582, *10 (D. Nev. Dec. 31, 2013) ("[A]s renters of those boxes, Defendants had a reasonable expectation of privacy in the contents, which include the space inside the box and the inner metal liner itself.").

71.     The Supreme Court has made clear that a warrant must describe the places to be searched and the items to be seized with particularity and supported by probable cause specific to those places and items:

> The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized." The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that

1   undocumented aliens are being transported in a van will not justify

2   a warrantless search of a suitcase."

3   *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (*quoting United States v. Ross*, 456 U.S. 798, 824

4   (1982)); *accord United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702-703 (9th Cir. 2009)

5   ("A warrant must not only give clear instructions to a search team, it must also give legal, that is,

6   not overbroad, instructions. Under the Fourth Amendment, this means that there [must] be

7   probable cause to seize the particular thing[s] named in the warrant. [P]robable cause means a fair

8   probability that contraband or evidence of a crime will be found in a particular place, based on the

9   totality of circumstances.") (citations and quotation marks omitted).

10   72.   Consequently, the search of a place or the seizure of an item pursuant to an

11   overbroad warrant for which there is no specific probable cause is invalid. *See United States v.*

12   *Know*, 58 F.3d 423, 427 (9th Cir. 1995) ("The warrant authorized the seizure of virtually every

13   document and computer file at HK Video . . . . [T]he warrant contained no limitations on which

14   documents within each category could be seized or suggested how they related to specific criminal

15   activity. By failing to describe with any particularity the items to be seized, the warrant is

16   indistinguishable from the general warrants repeatedly held by this court to be unconstitutional.").

17   73.   Moreover, probable cause in the warrant context requires more than "mere

18   suspicion" that the place to be searched or the item to be seized is connected to criminal activity;

19   it requires an "evidentiary nexus" to the alleged criminal activity. *United States v. Wanless*, 882

20   F.2d 1459, 1466 (9th Cir. 1989) ("Even if the evidence here would . . . justify the . . . suspicion

21   that there were illegal substances . . . [m]ere suspicion does not rise to the level of probable cause.")

22   (internal quotations omitted); *United States v. Schultz*, 14 F.3d 1093, 1097-98 (6th Cir. 1994)

23   ("While an officer's 'training and experience' may be considered in determining probable cause, it

24   cannot substitute for the lack of evidentiary nexus . . . between the safe-deposit boxes and any

25   criminal activity. Officer Ideker did not have anything more than a guess that contraband or

26   evidence of a crime would be found in the boxes, and therefore the . . . warrant should not have

27   been issued.").

28   //

**B.  The Government cannot deliberately or recklessly mislead the issuing Magistrate Judge.**

74.    It is also well established that a warrant based upon deliberately or recklessly false or misleading information material to the issue of probable cause is invalid, in whole or in part. As the Supreme Court has decreed:

> [W]hen the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be a truthful showing. This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true. It is established law, that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter. If an informant's tip is the source of information, the affidavit must recite some of the underlying circumstances from which the informant concluded that relevant evidence might be discovered, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was "credible" or his information "reliable." Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond

impeachment."

*Franks v. Delaware*, 438 U.S. 154, 164-65 (1984) (citations and internal quotations omitted, emphasis in original); see also *United States v. Perkins*, 850 F.3d 1109, 1123 (9th Cir. 2017) ("We hold that the district court clearly erred in finding that Agent Ensley did not omit relevant information with at least a reckless disregard for whether the omissions would render the warrant application misleading. Had the omitted information been included, the application would not have supported probable cause. We, therefore, reverse the district court's denial of the motion to suppress evidence obtained pursuant to the search warrant, and vacate Perkins' conviction.").

75.     The "good faith" exception to a legally insufficient search or seizure warrant, recognized by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), does not apply where the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923; *see also United States. v. Underwood*, 725 F.3d 1076, 1085-86 (9th Cir. 2013) ("An affidavit is so lacking in indicia of probable cause, or bare-bones when it fails to provide a colorable argument for probable cause. A colorable argument is made when 'thoughtful and competent judges' could disagree that probable cause does not exist. Here . . . the affidavit submitted . . . in support of the state search warrant . . . was so deficient as to render official belief in its existence entirely unreasonable.") (citations omitted).

76.     Thus, "[a]n inventory search will not be sustained where the court believed that the officers were searching for incriminating evidence of other offenses." *United States v. Feldman*, 788 F.2d 544, 553 (9th Cir. 1986).

77.     In the course of an inventory search, Government agents are not permitted to read written documents, as they may contain information that goes well beyond the allowed limited scope of an inventory search. *See United States v. Khoury*, 901 F.2d 948, 959 (11th Cir. 1990) (reading diary during inventory search was a Fourth Amendment violation; the government agent was only allowed to flip through the diary to see if any separate document or object was stuck between its pages); *see also United States v. Santos*, 961 F.Supp. 71, 73–74 (S.D.N.Y.1997) (finding that reading all written material among defendant's possessions during inventory search was an "affirmative, investigatory act" in violation of the Fourth Amendment).

### C.  Relevant Fifth Amendment Due Process Law.

78.     The Due Process Clause of the Fifth Amendment to the United States Constitution provides that, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const., amend. V.

79.     The government's continued retention of seized property – even if initially lawful – raises the issue of procedural due process. See *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009) ("A complaint of continued retention of legally seized property raises an issue of procedural due process. . ."); *see also Al Haramain Islamic Foundation v. U.S. Dept. of Treasury*, 686 F.3d 965, 980 (9th Cir. 2012) ("[T]he Constitution does require that the government take reasonable measures to ensure basic fairness to the private party and that the government follow procedures reasonably designed to protect against erroneous deprivation of the private party's interests."); *Lewis v. City of Culver City*, 2018 WL 1406609, *2 (C.D. Cal. Mar. 19, 2018) ("[T]he continued retention of legally seized property would raise an issue of procedural due process . . . ."); *Lena Sutton v. Leesburg*, Alabama, 2021 WL 1264244, *13 (N.D. Ala. Apr. 6, 2021) ("[T]he continued retention of legally seized property. . . raises an issue of procedural due process.").

### D.  *Bivens*.

80.     In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that "violation of [the Fourth Amendment's] command by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct," id. at 389, and that a plaintiff "is entitled to recover money damages for any injuries he has suffered as a result of the agent's violation of the Amendment." *Id.* at 397; *see also Boule v. Egbert*, 980 F.3d 1309, 1315 (9th Cir. 2020) (Plaintiffs' "Fourth Amendment claim . . . is a permissible area for *Bivens* claims," and thus "may proceed as a *Bivens* damages claim.")

81.     The Supreme Court has long held that punitive damages may be awarded in a *Bivens* action. *See Carlson v. Green*, 446 U.S. 14, 22 (1980) ("Punitive damages are 'a particular remedial mechanism normally available in the federal courts,' and are especially appropriate to redress the violation by a government official of a citizen's constitutional rights.") (citation

omitted).

**E.  Defendants unlawfully searched, seized, and deprived Plaintiffs of their property.**

82.     Defendants' search of Plaintiffs' safe deposit Box #224 and continued detention of their property was, and is, unlawful and unconstitutional in the following respects, among others.

83.     First, the seizure warrant for Plaintiffs' Box #224 was invalid because Defendants lacked any probable cause that the contents of the box were contraband or otherwise connected to criminal activity. That the Defendants lacked probable cause is manifest on the face of the seizure warrant which, expressly states that "[t]his warrant does not authorize a criminal search or seizure of the contents of the safety deposit boxes." It is also evident from the supporting affidavit, which expressly states that "[t]he warrants authorize seizure of the nest of boxes themselves, not their contents." Finally, it is evident since the government returned some of the Plaintiffs' property. (Unsealed redacted affidavit available at https://www.documentcloud.org/documents/21037781-uspv-aff-under-seal_redacted.)

84.     Second, based on the affidavit to the search warrant, there is no probable cause to search and/or seize the contents of Plaintiff's Box #224. (Id.)

85.     Third, Defendants cannot avail themselves of the good-faith exception to a facially deficient seizure warrant because the warrant was so lacking in indicia of probable cause with respect to Plaintiffs' safe deposit box and its contents as to render official belief in the existence of such probable cause entirely unreasonable. Indeed, the warrant expressly states that it does not authorize the search or seizure of any box, including Plaintiffs, for purposes of a criminal investigation.

86.     Fourth, Defendants acted unreasonably in breaking open Plaintiffs' box because they lacked probable cause that the contents of the box were contraband or otherwise connected to criminal activity, and by breaking it open, Defendants needlessly subjected its contents to theft and government tampering.

87.     Fifth, Defendants purported "inventory search" of Plaintiffs' box was unlawful because their seizure was invalid in the first place, as entirely lacking in probable cause.

88.     Sixth, Defendants' purported "inventory search" of Plaintiffs' box was also

unlawful as it was, in fact, a pretext for conducting an investigatory search, the true purpose of which was to further Defendants' indiscriminate criminal investigation of USPV box holders.

89.     Seventh, Defendants purported "inventory search" of Plaintiffs' box was also unlawful because it was not required by or conducted pursuant to established and standardized agency policies and procedures. By way of example, and without limitation, under the Government's inventory search policies, the Government is only permitted to conduct an inventory search as far as needed to "determine ownership" and "should extend no further." Here, there was no need for the Government to conduct an inventory search of the contents of the Plaintiffs' box to determine ownership because the Plaintiffs' names, telephone numbers, and other identifying information were affixed to the top of Plaintiffs' box. Despite this readily available information, the Government made no effort to contact the Plaintiffs before searching and seizing the Plaintiffs' box and its contents.

90.     Eighth, since Defendants completed inventorying the contents of Plaintiffs' box on or about March 26, 2021, Defendants have deprived Plaintiffs of the use, benefit, and enjoyment of their property without due process by failing to return Plaintiffs' missing property. It was not until nine months later and after suit was filed that Defendants realized they still retained or found 47 of Plaintiffs' gold coins. But they still refuse to return the remaining 63 even though forfeiture has not been sought.

**VIII.   CONCLUSION**

91.     Defendants concede that it must return the Plaintiffs' property, and it has already done so for some of it. But Defendants have yet to return 63 gold coins belonging to Plaintiffs which they are clearly entitled to under Rule 41, and the Fourth Amendment. Plaintiffs therefore respectfully assert the following causes of action.

# FIRST CAUSE OF ACTION

## (For Return of Property Pursuant to FRCP § 41(g))

### (Against Defendants United States, Wilkinson, and Koons Johnson)

92.     Plaintiffs repeat and reallege paragraphs 1 through 91 of this Complaint as if fully alleged herein.

93.     Federal Rules of Criminal Procedure § 41(g) provides that, "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return …"

94.     Plaintiff is a "person aggrieved" within the meaning of Rule 41(g) because, as described more fully above:

 (a) Defendants unlawfully seized their safe deposit box at USPV and its contents, in violation of their Fourth Amendment rights;

 (b) Defendants unlawfully searched that box and its contents, in further violation of their Fourth Amendment rights; and

 (c) Defendants have unlawfully deprived (and continue to deprive) Plaintiffs of the use, benefit, and enjoyment of their property, in violation of their Fifth Amendment due Process rights.

95.     Because Defendants' conduct as described herein constituted an unlawful search of Plaintiffs' safe deposit box and its contents, an unlawful seizure of Plaintiffs' box and its contents, an unlawful taking of Plaintiffs' box and its contents, and an unlawful deprivation of Plaintiffs' property without due process, Plaintiffs are entitled to the return of their property under Rule 41(g).

**SECOND CAUSE OF ACTION**

**(For Damages Pursuant to *Bivens*, 403 U.S. 388 (19791))**

**(Against Koons Johnson, Zellhart, Palmerton, Baily Dress, Beverly,**

**Murray, and DOES 1-10 all individually)**

96.     Plaintiffs repeat and reallege paragraphs 1 through 95 of this Complaint as if fully alleged herein.

97.     Under the Fourth Amendment, the Plaintiffs' safe deposit box and its contents may not be searched and seized without probable cause.

98.     Under the Fifth Amendment, Plaintiffs may not be deprived of the use, benefit, and enjoyment of their property without due process of law.

99.     Defendants Koons Johnson, Zellhart, Palmerton, Baily Dress, Beverly, Murray, and DOES 1-10, as agents of the United States acting under color of authority, further violated Plaintiffs' Fourth Amendment rights by searching their safe deposit box without probable cause.

100.     Defendants Koons Johnson, Zellhart, Palmerton, Baily Dress, Beverly, Murray, and DOES 1-10, as agents of the United States acting under color of authority, violated Plaintiffs' Fourth Amendment rights by seizing their safe deposit box and its contents without probable cause.

101.     Defendants Koons Johnson, Zellhart, Palmerton, Baily Dress, Beverly, Murray and DOES 1-10, as agents of the United States acting under color of authority, also violated Plaintiffs' Fifth Amendment rights by depriving Plaintiffs of the use, benefit, and enjoyment of the property they were storing in their safe deposit box without due process of law.

102.     Because Defendants Koons Johnson, Zellhart, Palmerton, Baily Dress, Beverly, Murray and DOES 1-10's conduct as described herein constituted an unlawful search of Plaintiffs' safe deposit box and its contents, an unlawful seizure of Plaintiffs' box and its contents, and an unlawful deprivation of Plaintiffs' property without due process, Plaintiffs are entitled to damages under *Bivens*, 403 U.S. 388 (1971), and its progeny, including, but not limited to, punitive and exemplary damages.

**THIRD CAUSE OF ACTION**

**(For Order Disclosing Video Inventory Pursuant to Rule 41(f) and the**

**Court's Inherent Power)**

**(Against Defendants United States, Wilkison, and Koons Johnson in official capacity)**

103.    Plaintiff repeats and realleges paragraphs 1 through 102 of this Complaint as if fully alleged herein.

104.    Federal Rule of Criminal Procedure 41(f)(1)(D) provides, in relevant part, that "[t]he judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant."

105.    The government has taken property from Plaintiffs, namely, 63 gold coins from their safe deposit box at USPV. Despite repeated requests, the Government has not provided Plaintiffs with the inventory of their property that was the product of the Defendants' purported inventory search of Plaintiffs' safe deposit box. Accordingly, pursuant to Rule 41(f), Plaintiffs are entitled to receive any inventories of their property prepared by Defendants.

AMENDED COMPLAINT

## **PRAYER FOR RELIEF**

Plaintiffs pray for judgment against Defendants as follows:

A.      For an order requiring Defendants to immediately return the remaining 63 gold coins seized from Plaintiffs' Box No. 224 at USPV.

B.      For damages against Defendants Koons Johnson individually, Zellhart, Palmerton, Baily Dress, Beverly, Murray and DOES 1-10 in an amount to be determined at trial, but at least for the value of the property taken.

C.      For punitive and exemplary damages against Defendants Koons Johnson individually, Zellhart, Palmerton, Baily Dress, Beverly, Murray and DOES 1-10.

D.      For an order requiring Defendants to immediately provide Plaintiffs' counsel and this Court with a copy of any and all inventories and chains of custody related to Plaintiffs' property and the search of Box #224.

E.      For costs and reasonable attorney's fees pursuant to 28 U.S.C. § 2412.

F.      For such other and further relief as the Court deems just and proper.


DATED: December 23, 2021                    Respectfully submitted,
                                            KAPLAN MARINO, PC

                                            /s/ Nina Marino
                                            _____
                                            NINA MARINO
                                            JENNIFER LIESER
                                            Attorneys for Plaintiffs
                                            DONALD LEO MELLEIN
                                            PAULA MARGARITA VILLEGAS de
                                            MELLEIN

AMENDED COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiffs hereby demand a jury trial on all issues properly triable to a jury pursuant to

3   Federal Rule of Civil Procedure 38.

4

5   DATED: December 23, 2021                  Respectfully submitted,
                                              KAPLAN MARINO, PC
6

7                                             /s/ Nina Marino

8                                             _____
                                              NINA MARINO
9                                             JENNIFER LIESER
                                              Attorneys for Plaintiffs
10                                            DONALD LEO MELLEIN
                                              PAULA MARGARITA VILLEGAS de
11                                            MELLEIN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28