TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorneys
Major Frauds/Asset Forfeiture/
General Crimes Sections
 1100/1400/1200 United States Courthouse
 312 North Spring Street
 Los Angeles, California 90012
 Telephone: (213) 894-0102/2569/1785
 Facsimile: (213) 894-6269/0142/0141
 E-mail: Andrew.Brown@usdoj.gov
   Victor.Rodgers@usdoj.gov
   Maxwell.Coll@usdoj.gov

Attorneys for Defendants
UNITED STATES OF AMERICA and
TRACY L. WILKISON and KRISTI KOONS JOHNSON
IN THEIR OFFICIAL CAPACITY ONLY

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| DONALD LEO MELLEIN AND PAULA MARGARITA VILLEGAS DE MELLEIN,<br><br>   Plaintiffs,<br><br>   v.<br><br>UNITED STATES OF AMERICA, <u>ET AL.</u>,<br><br>   Defendants. | Case No. 2:21-cv-06588-RGK-MAR<br><br>**DEFENDANTS UNITED STATES OF AMERICA AND TRACY L. WILKISON AND KRISTI KOONS JOHNSON IN THEIR OFFICIAL CAPACITY ONLY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION FOR ALL INVENTORIES ASSOCIATED WITH BOX # 224 AND DECLARATION OF VICTOR A. RODGERS**<br><br>Date:  January 24, 2022<br>Time:  9:00 a.m.<br>Courtroom: 850, the Honorable<br>     R. Gary Klausner |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.    INTRODUCTION .................................................................................... 1

II.   STATEMENT OF FACTS ....................................................................... 3

    A.    The Allegations In Plaintiffs' First Amended Complaint ............................ 3

    B.    Plaintiffs Delete Their Federal Tort Claims Act Claim From Their December 23, 2021 FAC And Advise They Are Still In The Process Of Submitting Their Administrative Tort Claim For The Coins They Alleged Six Months Ago Were Missing ....................................................... 6

    C.    Plaintiffs' Inaccurate Arguments Regarding The Government's Actions Are Unavailing ......................................................................... 8

III.  ARGUMENT .......................................................................................... 10

    A.    The Standards For Preliminary Injuntive Releif ..................................... 10

    B.    Plaintiffs Are Not Likely To Succeed On The Merits On Their Causes Of  Action In Their FAC Filed December 23, 2021 (Docket No. 36), For Which The Government Will Be Filing A Motion To Dismiss .............................................................................................. 11

          1.    Plaintiffs' First Cause of Action For Return Of Property Pursuant To Rule 41(g) Is Subject To Dismissal For Lack Of Subject Matter Jurisdiction  Because Rule 41(g) Cannot Be Used To Recover Property The Government Does Not Possess ....... 11

          2.    Plaintiffs Third Cause of Action For Order Disclosing Inventory Fails To State A Claim Upon Which Relief Can Be Granted And Is Therefore Subject To Dismissal Under Fed. R. Civ. P. 12(b)(6).............................................................................. 14

    C.    Plaintiffs' Are Not Likely To Suffer Irreparable Injury If Preliminary Injunctive Relief Is Denied ................................................ 16

    D.    The Balance Of Hardships Does Not Tip In Plaintiffs' Favor And The Proposed Injunction Is Not In The Public's Interest.................................. 17

IV.  CONCLUSION....................................................................................... 18

i

1

## <u>TABLE OF CONTENTS CONTINUED</u>

2

DECLARATION OF VICTOR A. RODGERS ............................................................ 19

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Federal Cases**

Adeleke v. United States,
  355 F.3d 144 (2d Cir. 2004) ........................................................................ 12

Alliance for Wild Rockies v. Cottrell,
  632 F.3d 1127 (9th Cir. 2011) ............................................................... 10, 16

Arford v. United States,
  934 F.2d 229 (9th Cir. 1991) ...................................................................... 12

Bailey v. United States,
  508 F.3d 736 (5th Cir. 2007) ....................................................................... 12

Bender v. Williamsport Area School Dist.,
  475 U.S. 534 (1986) ................................................................................... 13

Campbell Soup Co. v. ConAgra, Inc.,
  977 F.2d 86 (3d Cir. 1992) .......................................................................... 17

Caribbean Marine Services Co., Inc. v. Baldridge,
  844 F.2d 668 (9th Cir. 1988) .................................................................... 2, 16

Church v. City of Huntsville,
  30 F.3d 1332 (11th Cir. 1994) ..................................................................... 17

Colorado v. Bertine,
  479 U.S. 367 (1987) .................................................................................... 15

D.T. v. Sumner County Schools,
  942 F.3d 324 (6th Cir. 2019) ....................................................................... 16

Dahl v. HEM Pharms. Corp.,
  7 F.3d 1399 (9th Cir. 1993) ......................................................................... 11

DaimlerChrysler Corp. v. Cuno,
  547 U.S. 332 (2006) .................................................................................... 13

Diaz v. United States,
  517 F.3d 608 (2d Cir. 2008) ........................................................................ 12

## <u>TABLE OF AUTHORITIES CONTINUED</u>

<u>Drakes Bay Oyster Co. v. Jewell,</u>
   747 F.3d 1073 (9th Cir. 2014) .................................................................... 10

<u>Frazier v. Roberts,</u>
   441 F.2d 1224 (8th Cir. 1971) .................................................................... 14

<u>Garcia v. Google, Inc.,</u>
   786 F.3d 733 (9th Cir. 2015) ...................................................................... 11

<u>Jachetta v. United States,</u>
   653 F.3d 898 (9th Cir. 2011) ...................................................................... 12

<u>Kahn v. United States,</u>
   2009 WL 2900249 (S.D.N.Y. Sept. 8, 2009) ............................................. 13

<u>Karnoski v. Trump,</u>
   926 F.3d 1180 (9th Cir. 2019) .................................................................... 10

<u>Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,</u>
   571 F.3d 873 (9th Cir. 2009) ...................................................................... 11

<u>Mazurek v. Armstrong,</u>
   520 U.S. 968 (1997) .................................................................................... 10

<u>McNeil v. United States,</u>
   508 U.S. 106 (1993) ...................................................................................... 7

<u>Midgett v. Tri-County Metropolitan Transp. Dist. Of Oregon,</u>
   254 F.3d 846 (9th Cir. 2001) ................................................................. 2, 17

<u>Ordonez v. United States,</u>
   680 F.3d 1135 (9th Cir. 2012) ............................................................. 12, 13

<u>Roberts v. Corrothers,</u>
   812 F.2d 1173 (9th Cir. 1987) .................................................................... 13

<u>Safe Air for Everyone,</u>
   373 F.3d .................................................................................................... 13

iv

1

## <u>TABLE OF AUTHORITIES CONTINUED</u>

2

<u>South Dakota v. Opperman,</u>
3         428 U.S. 364 (1975) ............................................................................15

4

<u>Stormans, Inc. v. Selecky,</u>
5         586 F.3d 1109 (9th Cir. 2009) ..........................................................10

6

<u>Thornhill Pub. v. General Tel. and Electronics Corp.,</u>
7         594 F.2d 730 (9th Cir. 1979) ............................................................13

8

<u>United States v. Eames,</u>
9         524 F. App'x 320 (9th Cir. 2013) ................................................12, 13

10

<u>United States v. Lugo,</u>
11         978 F.2d 631 (10th Cir. 1992) ..........................................................15

12

<u>Winter v. Natural Resources Defense Council, Inc.,</u>
13         555 U.S. 7 (2008) ........................................................................passim

14

**Federal Statutes**

15

28 U.S.C. § 2671 ......................................................................................12
16      28 U.S.C. § 2672 ........................................................................................8

17

**Federal Rules**

18

Fed. R. Civ. P. 12(b)(1) .............................................................................6
19      Fed. R. Civ. P. 12(b)(6) .........................................................................6, 14
20      Fed. R. Civ. P. 41 ......................................................................................2
        Fed. R. Crim. P. 41 ............................................................................passim
21      Fed. R. Crim. P. 41(f)(1)(C) ....................................................................15
22      Fed. R. Crim. P. 41(f)(1)(D) ................................................................6, 14
        Fed. R. Crim. P. 41(g) .......................................................................passim

23

**Federal Regulations**

24

25      28 C.F.R. § 14.2(a) .....................................................................................8
        28 C.F.R. § 14.4(c) .....................................................................................8
26      28 C.F.R. § 14.6(a) .....................................................................................8

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Defendants United States of America and Tracy L. Wilkison and Kristi Koons Johnson in their official capacities only (collectively, "the government") respectfully submit this memorandum of points and authorities in opposition to the motion for preliminary injunction for the inventories associated with plaintiffs Donald Leo Mellein and Paula Margarita Villegas De Mellein (collectively, "plaintiffs") box at US Private Vaults.  Plaintiffs' motion lacks any legal support, but instead relies on allegations of government stonewalling and failure to cooperate, but none of that is true, as explained below.  Based on the applicable legal authorities, plaintiffs have not satisfied any of the elements they need to establish for preliminary injunctive relief.  Plaintiffs have not shown they are likely to succeed on the merits of their claims, they are likely to suffer irreparable injury if preliminary injunctive relief is denied, the balance of hardships tips in their favor and the proposed injunction is in the public interest.

Plaintiffs are not likely to prevail on the merits as to the two claims asserted against the government in their First Amended Complaint.  Subject matter jurisdiction does not lie as to plaintiffs' Fed. R. Crim. P. 41(g) cause of action for return of property because the government does not have the property (namely, the allegedly missing coins) plaintiffs seek to have returned and monetary damages for the value of the allegedly missing coins cannot be recovered on a Fed. R. Crim. P. 41(g) claim.  As the government noted in moving to dismiss plaintiffs' Federal Tort Claims Act cause of action for monetary damages for missing property in their initial complaint (which claim plaintiffs have omitted from their first amended complaint), plaintiffs must exhaust their administrative remedies by submitting an administrative tort claim requesting monetary damages to the seizing agency in order to establish subject matter jurisdiction over that claim (and could request the items they seek by this injunction), but plaintiffs moving papers advise they still have not bothered to submit their administrative tort claim.

1

Plaintiffs' other claim against the government, which seeks an order pursuant to Fed. R. Crim. P. 41 requiring the disclosure of any inventory of the items seized from plaintiffs' box, fails to state a claim upon which relief can be granted because plaintiffs' cause of action for a remedy is not a stand-alone cause of action and Fed. R. Civ. P. 41's inventory requirement applies to search warrants (including how they are obtained and executed) and not inventories, which are an administrative function involving the inventorying process.

Plaintiffs have not shown they will suffer irreparable injury if injunctive relief is denied.  A "possibility of irreparable harm" is insufficient [see Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008)], "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction[,]" plaintiffs must demonstrate "immediate threatened injury as a prerequisite to preliminary injunctive relief" [see Caribbean Marine Services Co., Inc. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988)] and establishing a risk of irreparable harm in the indefinite future is not enough, as the harm must be shown to be imminent [see Midgett v. Tri-County Metropolitan Transp. Dist. Of Oregon, 254 F.3d 846, 850 (9th Cir. 2001)].  As part of the administrative tort claim, plaintiffs can request whatever items they deem appropriate, plaintiffs already solely possesses the facts necessary to submit their administrative claim (e.g., when they purchased the allegedly missing coins, the monies they paid for the coins in order to estimate their monetary damages, and the dates they stored or removed coins from their box), and plaintiffs can request the information they seek by this injunction in a subsequent lawsuit should their administrative remedy exhaustion efforts prove unsuccessful.

Finally, plaintiffs have not shown the balance of equities tips in their favor and the proposed injunction is in the public interest.  Plaintiffs have made multiple estimates of the coins they claim were stored in their box (showing they are unsure of the total), plaintiffs have unilaterally and remarkably stated that they are keeping close to one half of the coins the government returned to them as "substitute property" even though

plaintiffs now assert that those coins do not even belong to them and are therefore owned by someone else, and inventories the government has turned over in other cases have been used not for purposes of ascertaining whether property was lost but for entirely different purposes in entirely different filed lawsuits.  Furthermore, the United States Supreme Court has recognized the appropriateness of and the policy favoring the exhaustion requirement as strictly barring a party from suing the United States for monetary damages for lost property, like plaintiffs have here, without first pursuing the administrative process to conclusion.

## II.

## STATEMENT OF FACTS

**A.    The Allegations In Plaintiffs' First Amended Complaint.**

Plaintiffs filed a three cause of action first amended complaint ("FAC") on December 23, 2021, alleging the following.   On or about March 22, 2021, the government seized $76,050.00 in U.S. Currency,[1] one gold bar, miscellaneous papers and 110 one-ounce gold coins (i.e., 30 Canadian maple leaf gold coins and 80 American Eagle gold coins) from plaintiffs' safe deposit box number 224 at US Private Vaults ("USPV") in Beverly Hills, California.  Docket No. 36 (FAC ¶ 28 at 8:24-9:1 and ¶ 38 at 11:10-11).  Shortly after learning of the seizure, around April 12, 2021, plaintiffs' counsel submitted a claim for return of the property at forms.fbi.gov/uspvclaims, without including any information about their box's contents because the Federal Bureau of Investigation (the "FBI's") form did not require it.  Id. at ¶ 40 at 11:20-24.

On or about May 24, 2021, plaintiffs received by certified mail a notice of forfeiture that did not include all items plaintiffs stored in box # 224 (namely, the 110 gold coins) (id. at ¶ 41 at 11:25-28), which means that the FBI did not commence (and presumably never intended to commence) administrative forfeiture proceedings against the unlisted items (id. at ¶ 42 at 12:3-6).  When plaintiffs' counsel spoke with the FBI

---

[1] Plaintiff's initial complaint, filed August 13, 2021, alleged that $57,434.61, and not $76,050.00, was stored in the box.  Docket no. 1 (complaint ¶ 25 at 8:5-8).

seven days later on June 1, 2021, the FBI agreed that very same day to remove from the asset forfeiture list the assets set forth thereon (namely, the currency and the gold bar) and return those items to plaintiffs (id. at ¶ 42 at 12:1-6), and on June 14, 2021, the FBI returned to plaintiffs' counsel one gold bar and miscellaneous paperwork, as reflected on the FBI's Receipt for Property returned (id. at ¶ 1 at 3:9-10, ¶ 43 at 12:11-12 and docket no. 36-4 [Lieser Decl. Ex. B]).  The receipt, on its face, shows that "One Gold-colored bar" (i.e., the one gold bar mentioned above) and "Identifying documents" (i.e., the miscellaneous papers mentioned above) were returned to "Attorney for Donald Mellein" on June 14, 2021.  Docket No. 36-4 (Lieser Decl. Ex. B).

By letter dated June 14, 2021, plaintiffs' counsel advised the FBI, with a copy to an Assistant United States Attorney ("AUSA"), that plaintiffs had not been provided with 120 gold coins plaintiffs were alleging were stored within the box, and requesting that the government amend the FBI's Receipt for Property returned (which plaintiffs' letter incorrectly called a "Inventory Log") and demanding the immediate production of any video of the inventorying of the contents of plaintiffs' box.  FAC ¶ 44 at 12:15-17 and docket no. 36-6 (Lieser Decl. Ex. D).  At some later time unknown to the government, plaintiffs concluded, as a result of what they characterized as a "thorough accounting" and "investigation," that there were only "approximately 110" (and not 120) coins in the box, as plaintiffs allege but relegate to a footnote in their FAC and briefs. FAC ¶ 44, n. 2 at 12:28-29 ("[i]n the letter, counsel indicated there were 120 missing coins.  After a thorough accounting, it has been determined there were approximately 110").  Accord, Docket No. 36-2 (Lieser Decl. ¶ 5, footnote 2 at 2:28-29 ("[i]n the letter, I indicated there were 120 missing coins.  After further investigation it was determined there were approximately 110 gold coins, not 120 gold coins, that were missing").  However, plaintiffs counsel's letter contended that more than twice the number of coins the FBI had actually seized were stored in plaintiffs' box.

/ / /

/ / /

One week later on June 21, 2021, the AUSA provided plaintiffs' counsel with a telephone number for a FBI Associate Division Counsel to contact regarding counsel's request, but plaintiffs received no return telephone call from either FBI counsel or the FBI agent to whom plaintiffs' June 14, 2021 letter was directed, so plaintiffs filed a complaint on August 13, 2021. FAC ¶ 45 at 12:21-24 and 13:3-8 and ¶ 46. On October 25, 2021, the government told plaintiffs' counsel it intended to file a motion to dismiss the complaint on November 1, 2021, but delayed the filing at plaintiffs' request because plaintiffs advised they were in the middle of trial preparation so the government filed the motion on December 2, 2021. Rodgers Decl. ¶ 2 and docket nos. 28 (extension stipulation) and 30 (motion to dismiss). As reflected in the motion to dismiss, the FBI only found and seized a total of 47 gold coins in plaintiffs' box, which coins the government was in the process of returning as of December 2, 2021. Docket No. 30-1 (Zellhart Decl. ¶ 3). On December 20, 2021, plaintiffs retrieved the 47 gold coins, which they therefore now possess and assert consist of 27 Canadian gold coins and 20 American Eagle or Liberty gold coins. FAC ¶ 51 at 13:24-25.[2]

Accordingly, the remaining coins that are the subject matter of plaintiffs' FAC total 63 (i.e., 110 minus 47), consisting of 60 American Eagle gold coins and 3 Canadian Maple Leaf gold coins. FAC ¶ 1 at 3:17-18, ¶ 51 at 13:25-26 and prayer for relief ¶ A at 30:3-4. Despite stating that the 20 American Eagle gold coins plaintiffs' counsel retrieved on December 20, 2021 were not plaintiffs (and therefore, according to plaintiffs' argument actually belong to someone else), plaintiffs have declared and unilaterally decided they are keeping the coins owned by someone else as "substitute property" for the 20 American Eagle gold coins they allege they stored in their box. FAC ¶ 52 at 14:5-9.

/ / /

---

[2] Plaintiffs mistakenly allege that the FBI is reviewing photographs and looking for plaintiffs coins (FAC ¶ 51), but the only request FBI made, in response to plaintiffs counsel's inquiry about the allegedly missing coins, was for plaintiffs to provide a description of the coins plaintiffs claim are still missing.

**B.     Plaintiffs Delete Their Federal Tort Claims Act Claim From Their December 23, 2021 FAC And Advise They Are Still In The Process Of Submitting Their Administrative Tort Claim For The Coins They Alleged Six Months Ago Were Missing.**

While plaintiffs' motion accuses the government of delays and tactical maneuvers for the purpose of shielding itself from liability, the facts show the government assisted plaintiffs, when appropriate, and plaintiffs own inaction has caused any delay for which they now complain.  On December 2, 2021, the government filed a motion to dismiss the original complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted relative to the three causes of action (i.e., the first, second and fourth causes of action) asserted against the government (as defined therein).[3]  Docket No. 30.  The government noted in the motion that plaintiffs' first cause of action "for return of property pursuant to FRCP § [sic] 41(g)" sought the return of the gold coins [docket No. 1 (complaint ¶¶ 4, 25, 35, 40, 50, 81-84 and prayer for relief ¶ A)]; plaintiffs' second cause of action pursuant to the Federal Tort Claims Act (the "FTCA") and based on California conversion law sought the return of property (i.e., the 110 gold coins) or monetary damages in an amount equal to the value of the coins (id. at ¶¶ 4, 56, 57 and 85-88); and plaintiffs' fourth cause of action was for an order requiring the government to provide plaintiffs, pursuant to Fed. R. Crim. P. 41(f)(1)(D) and the Court's inherent power, any inventory the government has of plaintiffs' property (id. at ¶¶ 4, 25 and 96-98).

The government's motion explained why plaintiffs' claims were barred, and noted that plaintiffs' second cause of action pursuant to the FTCA for return of property or monetary damages for the allegedly lost, missing or converted gold coins should be

---

[3] As set forth above, "the government" consists of Defendants United States of America, and Tracy Wilkison and Kristi Koons Johnson in their individual capacities only.  Plaintiffs remaining (i.e., the third) cause of action was for damages pursuant to Bivens and was asserted against Kristi Koons Johnson and Lynne Zellhart in their individual capacities only.  Those defendants filed a separate motion to dismiss the complaint on December 2, 2021.  Docket No. 29.

dismissed for lack of subject matter jurisdiction because plaintiffs had not exhausted their administrative remedies.  Specifically, the government noted that the FTCA waived the sovereign immunity of the United States for certain tort actions asserted against the United States, and that plaintiffs were required to first exhaust their administrative remedies by filing an administrative tort claim with the appropriate administrative agency and the administrative agency must have denied that claim before plaintiffs could file a FTCA action in federal court.  Docket No. 30 (government motion to dismiss at 9:14-11:26 and 12:10-13:3).  In addition, the government noted that the Supreme Court in McNeil v. United States, 508 U.S. 106, 112 (1993) recognized "Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process.  Every premature filing of an action under the FTCA imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions."  Docket No. 30 (motion to dismiss at 12:1-5).  In their December 20, 2021 opposition and in the instant preliminary injunction motion, plaintiffs advised they had yet bothered to submit an administrative tort claim for the allegedly missing coins (which they could have submitted as soon as they sent their June 14, 2021 letter) but were instead in the "process" of doing so.[4]

Plaintiffs apparently concede that pre-filing exhaustion of administrative remedies is required before filing a FTCA claim for monetary damages because on December 23, 2021, plaintiffs filed a FAC eliminating the FTCA second cause of action and realleging (as the sole causes of action against the government) verbatim the first cause of action pursuant to Rule 41(g) (FAC ¶¶ 92-95) and fourth cause of action (with the exception of changing "110" gold coins to "63" gold coins and renumbering it as the third instead of

/ / /

---

[4] See Docket No. 34 (plaintiffs' opposition to motion to dismiss at 3:27-28 n. 3: "Plaintiffs are in the process of submitting an administrative claim under the Federal Tort Claims Act alleged as their Second Cause of Action") and docket no. 35 (plaintiffs' instant motion for a preliminary injunction at 4:17-19: plaintiffs argue they are likely to succeed on the merits "at a later time after Plaintiffs exhaust their administrative remedies in connection with their Federal Tort Claim Act Cause of Action").

1   the fourth cause of action) for an order disclosing any inventory of plaintiffs' box (FAC

2   ¶¶ 103-105).  The government intends to file a motion to dismiss the FAC.

3   **C.     Plaintiffs' Inaccurate Arguments Regarding The Government's Actions Are**

4           **Unavailing.**

5           Plaintiffs' motion for a preliminary injunction is almost entirely devoid of legal

6   authority, and instead raises claims of government misconduct, tactics and failure to

7   cooperate, but plaintiffs arguments are untrue and/or misleading.  In addition to the facts

8   set forth in Section B above which reflect government cooperation, plaintiffs

9   misleadingly state that an AUSA during December 8 and 16, 2021 discussions expressed

10  an unwillingness to produce or inquire about the inventory, but the AUSA specifically

11  advised plaintiffs during they needed to make that request as part of plaintiffs'

12  administrative tort claim to the FBI with respect to their request for monetary damages

13  (Rodgers Decl. ¶ 3), which administrative tort claim procedure the government described

14  in its motion to dismiss filed December 2, 2021 (docket no. 30 at 9:14-13:4).  Nothing

15  the government has done prevented plaintiffs from submitting that administrative tort

16  claim to the FBI setting forth the number of coins they allege are missing, making a

17  claim for money damages therefor and requesting whatever items they seek in the

18  administrative proceedings.[5]  The coins did not magically appear, as plaintiffs suggest;

19  instead, plaintiffs stated that coins far in excess of those the FBI actually seized were

20  within their box (and the government never stated it had no coins), then sued when the

21  / / /

22

23       [5] Publicly available regulations describe the administrative tort proceedings.  <u>See</u>
    28 C.F.R. § 14.2(a) ("a claim shall be deemed to have been presented when a Federal

24  agency receives from a claimant . . . an executed Standard Form 95 [which warns the
    claimant about civil and criminal penalties for presenting fraudulent claims] or other

25  written notification of an incident, accompanied by a claim for money damages in a sum
    certain for injury to or loss of property . . ."); 28 C.F.R. § 14.4(c) (noting that claimant

26  may be required to submit, among other things, "(1) Proof of ownership [and] (2) A
    detailed statement of the amount claimed with respect to each item of property"); 28

27  C.F.R. § 14.6(a) (regarding dispute resolution techniques, and noting "The
    administrative process established pursuant to 28 U.S.C. § 2672 and this part 14 is
    intended to serve as an efficient effective forum for rapidly resolving tort claims with

28  low costs to all participants").

government did not immediately provide the items plaintiffs' demanded.  The government must defend itself against plaintiffs' lawsuit.

In addition, even if a request that a party produce documents and other items as is sought here were the proper subject of an injunction (which it is not), plaintiffs do not need an inventory to submit an administrative tort claim.  Plaintiffs solely possess whatever facts are pertinent to what coins they stored in their box, such as dates the allegedly missing coins were purchased, the amount plaintiffs paid for the coins to support any monetary damage claim therefor and the dates plaintiffs stored or removed particular coins from their box.  As to prejudice to the government, when the government voluntarily produced a video of the inventory in another case where a plaintiff alleged she needed it to verify the number of coins that were seized, still photographs from the video that depicted the faces of individuals were filed publicly as exhibits which plaintiffs' counsel in that other case later properly redacted at the Court's instruction.[6]  Significantly, the original declaration with the unredacted photographs from the video were filed in an entirely different case for purposes of seeking an injunction in that second case, for which the plaintiff in the first case was not involved, by the attorneys plaintiffs in the instant case recently consulted with on December 9, 2021.[7]  Needing the inventory for use in another case is not a valid reason for plaintiffs to request the inventory, particularly since it has no bearing whatsoever on plaintiffs' ability to submit the administrative tort claim and plaintiffs in any event can make that

/ / /

---

[6] See Search and Seizure of Box No. 8309 at U.S. Private Vaults v. United States of America, Case No. 2:21-cv-03554-RGK-MAR, docket no. 14 (in chambers order notifying plaintiff's counsel that a temporary seal had been placed on the declaration and ordering counsel to refile the declaration with the faces of the individuals depicted therein redacted) and docket no. 15 (revised declaration with faces redacted).

[7] See Docket No. 34-1 [Lieser Decl. ¶ 7] in instant case and docket no. 16-4 in Snitko, et al. v. United States of America, et al., Case No. 2:21-cv-04405-RGK-MAR).

1    request as part of the administrative tort claim proceedings[8] or thereafter in a federal

2    court lawsuit after plaintiffs satisfy the pre-filing exhaustion requirement.

3                                              **III.**

4                                        **ARGUMENT**

5    **A.    The Standards For Preliminary Injunctive Relief.**

6          "[A] preliminary injunction is an extraordinary and drastic remedy, one that

7    should not be granted unless the movant, <u>by a clear showing</u>, carries the burden of

8    persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (emphasis in original and

9    citation and internal quotation marks omitted); <u>see also</u> <u>Winter v. Natural Resources</u>

10   <u>Defense Council, Inc.</u>, 555 U.S. 7, 22 (2008).  In order to obtain a preliminary

11   injunction, the movant must demonstrate (1) that they are likely to succeed on the merits

12   of their claims; (2) that they are likely to suffer irreparable injury in the absence of

13   injunctive relief;  (3) that the balance of equities tips in their favor; and (4) that the

14   proposed injunction is in the public interest.  <u>Karnoski v. Trump</u>, 926 F.3d 1180, 1198

15   (9th Cir. 2019).  Where the government is a party to a case in which a preliminary

16   injunction is sought, the balance of the equities and public interest factors merge.

17   <u>Drakes Bay Oyster Co. v. Jewell</u>, 747 F.3d 1073, 1092 (9th Cir. 2014).

18         The Ninth Circuit has adopted a "sliding scale" test for issuing preliminary

19   injunctions, under which "serious questions going to the merits and a hardship balance

20   that tips sharply towards the plaintiff can support issuance of an injunction, assuming the

21   other two elements of the <u>Winter</u> test are also met." <u>Alliance for Wild Rockies v.</u>

22   <u>Cottrell</u>, 632 F.3d 1127, 1131-32 (9th Cir. 2011).  Thus, the movant must show the

23   injunction is in the public interest and there is a likelihood, not merely a possibility, of

24   irreparable injury. <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1127 (9th Cir. 2009).

25

26   ───────────────

27   [8] Similarly unavailing is plaintiffs' arguments regarding the FBI's seizures from three boxholders whom plaintiffs conclusorily assert that the items seized were different from FBI accountings. Docket No. 34-1 (Lieser Decl. ¶¶ 6-8).  Even assuming plaintiffs arguments were true and relevant, the government has received competing claims of

28   ownership to the same property.  The government cannot automatically accept, as plaintiffs appear to request here, that a conclusory claim for missing property is accurate.

Finally, because the function of a preliminary injunction is to maintain the status quo before the case is adjudicated on the merits, there is "heightened scrutiny" for mandatory preliminary injunctions, such as the injunction seeking the production of documents and other items sought here. Dahl v. HEM Pharms. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993) (mandatory injunctions are "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party") (citation omitted). "A mandatory injunction orders a responsible party to take action," and thus, "goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009) (citations and internal quotation marks omitted). A party seeking a mandatory injunction "must establish that the law and facts clearly favor her position, not simply that she is likely to succeed." Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (emphasis in original). Accordingly, "mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases." Marlyn Nutraceuticals, Inc., 571 F.3d at 879 (internal quotation marks and citation omitted).

**B.** **Plaintiffs Are Not Likely To Succeed On The Merits On Their Causes Of Action In Their FAC Filed December 23, 2021 (Docket No. 36), For Which The Government Will Be Filing A Motion To Dismiss.**

Citing no cases, plaintiffs argue they are likely to succeed on the merits on their causes of action. However, as set forth below, plaintiffs are not likely to succeed on their claims against the government.

**1.** **Plaintiffs' First Cause of Action For Return Of Property Pursuant To Rule 41(g) Is Subject To Dismissal For Lack Of Subject Matter Jurisdiction  Because Rule 41(g) Cannot Be Used To Recover Property The Government Does Not Possess.**

Plaintiffs are not likely to prevail on their first cause of action for return of property pursuant to Rule 41(g) for the 63 coins.  Rule 41(g) does not waive sovereign

11

immunity to allow suits for monetary damages for property the government does not have, and any claim for missing/lost/stolen property must be brought under the FTCA, 28 U.S.C. § 2671 et seq., for monetary damages.  Accordingly, plaintiffs' first cause of action, which by its explicit terms is "for Return of Property Pursuant to FRCP § [sic] 41(g)[,]" and will be the subject of the government's future motion to dismiss the FAC.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." Jachetta v. United States, 653 F.3d 898, 903 (9th Cir. 2011) (internal quotation marks and citation omitted).  Thus, "[i]n an action against the United States, in addition to statutory authority granting subject matter jurisdiction, there must be a waiver of sovereign immunity." Arford v. United States, 934 F.2d 229, 231 (9th Cir. 1991).  That waiver "cannot be implied, but must be unequivocally expressed in statutory text." Jachetta, 653 F.3d at 903 (internal quotation marks and citation omitted).

The government cannot return property it does not possess and a plaintiff is barred from seeking monetary damages under Rule 41(g). Ordonez v. United States, 680 F.3d 1135, 1137–40 (9th Cir. 2012) ("No matter how compelling the circumstances, because Rule 41(g) contains no express and unequivocal waiver of the government's sovereign immunity, money damages are not a permitted form of relief"); see also United States v. Eames, 524 F. App'x 320 (9th Cir. 2013) (vacating district court's award of money damages and remanding with instructions to dismiss Rule 41(g) movant's claim for compensation for lost coins); Bailey v. United States, 508 F.3d 736, 740 (5th Cir. 2007) (if the government no longer possesses the seized cash, "[claimant's] motion must be denied because the government cannot return property it does not possess, and the doctrine of sovereign immunity bars the award of monetary damages under Rule 41(g)").

While Rule 41(g) is a vehicle for seeking the return of property, it "does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property." Adeleke v. United States, 355 F.3d 144, 151 (2d Cir. 2004); Diaz v. United States, 517 F.3d 608, 613 (2d Cir. 2008) (in Rule 41(g) cases, "[o]nce

seized currency has been disbursed and is no longer available . . . a claim for its return is . . . no longer at hand: such claims are jurisdictionally barred by the principle of sovereign immunity"); <u>Kahn v. United States</u>, 2009 WL 2900249 at *3 (S.D.N.Y. Sept. 8, 2009) (where, as here, "property is not available for return for whatever reason, the aggrieved party cannot obtain monetary damages against the United States") (internal quotes and citation omitted); <u>Search and Seizure of Box No. 8309 at U.S. Private Vaults v. United States of America,</u> Case No. 2:21-cv-03554-RGK-MAR, Docket No. 28 (order re motion to dismiss) at page 5, footnote 1.

In <u>Eames</u>, the Ninth Circuit held that the district court erred when it ordered the government to make payment for the loss of gold coins seized during the course of an investigation into the Rule 41(g) movant's money laundering and related crimes.  524 F. App'x at 320.  The Ninth Circuit held that the district court should have denied a Rule 41(g) motion for the return of gold coins in its entirety because the government admitted that it misplaced four gold coins that it had seized, and the district court lacked jurisdiction to order payment of money damages because sovereign immunity bars an award of money damages against the government on a motion to recover property under Rule 41(g). <u>Id.</u>  (citing <u>Ordonez</u>, 680 F.3d at 1139-40).

Accordingly, subject matter jurisdiction[9] does not lie over plaintiffs' first cause of action due to sovereign immunity.  Plaintiffs are not likely to prevail on that claim.

_____

[9] Federal courts should not adjudicate controversies where subject matter jurisdiction is lacking because they "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." <u>Bender v. Williamsport Area School Dist.,</u> 475 U.S. 534, 541 (1986) (citation omitted).  As courts of limited jurisdiction, the presumption is that a court is "without jurisdiction unless the contrary appears affirmatively from the record." <u>Id.</u> at 546 (internal quotes and citations omitted).  The burden of establishing subject matter jurisdiction rests upon the party invoking it. <u>DaimlerChrysler Corp. v. Cuno,</u> 547 U.S. 332, 342 n.3 (2006).  In a factual attack on subject matter jurisdiction "[n]o presumptive truthfulness attaches to plaintiff's [complaint's] allegations" [<u>Thornhill Pub. v. General Tel. and Electronics Corp.,</u> 594 F.2d 730, 733 (9th Cir. 1979) (internal quotes and citation omitted)], "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" [<u>Safe Air for Everyone,</u> 373 F.3d at 1039 (citation omitted)], and courts may weigh the extrinsic evidence in determining whether the facts show that a plaintiff has discharged plaintiff's burden of demonstrating that subject matter jurisdiction exists [<u>Roberts v. Corrothers,</u> 812 F.2d 1173, 1177-78 (9th Cir. 1987)].

2.   **Plaintiffs' Third Cause of Action For Order Disclosing Inventory Fails To State A Claim Upon Which Relief Can Be Granted And Is Therefore Subject To Dismissal Under Fed. R. Civ. P. 12(b)(6).**

In their motion for a preliminary injunction, plaintiffs argue that if the government correctly argued in its motion to dismiss plaintiffs' initial complaint that the request for an inventory is akin to a seeking a remedy like an injunction, then plaintiffs can seek an injunction ordering the United States to produce inventories.  Docket No. 35 (motion for a preliminary injunction at 3:3-10).  Plaintiffs misinterpret the government's argument - - the government argued that plaintiffs' request for documents and a video was a stand-alone cause of action seeking a remedy, like a cause of action for an injunction (or for that matter a stand- alone cause of action that merely sought damages), and therefore failed to state a claim upon which relief can be granted.  The government did not argue that plaintiffs' cause of action constituted a cause of action for an injunction.

Regardless, and as the government noted in its motion to dismiss plaintiffs' initial complaint, Fed. R. Crim. P. 41 does not support plaintiffs' cause of action. As support for this cause of action, plaintiffs quote Fed. R. Crim. P. 41(f)(1)(D), noting that the statute provides "[t]he judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant."  Docket No. 36 (FAC ¶ 104).[10]  However, Fed. R. Crim. P. 41by its terms governs search warrants and how they are obtained and executed.  See Frazier v. Roberts, 441 F.2d 1224, 1230 n.2 (8th Cir. 1971) ("Rule 41[] governs issuance of search warrants").  Fed. R. Crim. P. 41 is not applicable to inventories, which is how the government obtained the contents of plaintiffs' box at USPV.

---

[10] The title of the third cause of action provides that it is based on Rule 41(f) and the Court's inherent power, but plaintiffs provide no caselaw holding that courts will use their inherent power to order production of documents, such as an inventory, particularly where, as here, no viable cause of action has been stated.  In addition, Rule 41(f)(1)(D) pertains to inventories filed with Magistrate Judges together with returns on executed search warrants, and authorizes Magistrate Judges to provide a copy of those documents that have been filed with the Magistrate Judge to persons identified in the statute.  The statute does not deal with the required substance of those documents.

With respect to search warrants, Fed. R. Crim. P. 41(f)(1)(C) requires officers executing a warrant to leave a receipt for the items taken, called an "inventory," with the person from whom or from whose premises the property was taken, or leave it at the place where the officer took the property.  Officers executed the search warrant at USPV and properly left behind an "inventory" indicating, among other things, they had seized USPV's nests of safe deposit boxes.  When the nests of safe deposit boxes were seized, there were no search warrants for any individual safe deposit boxes (such as plaintiffs' box), and therefore no requirement under Fed. R. Crim. P. 41 that any "inventory" for them be produced or served.

In contrast to a search warrant, "an inventory search is a routine administrative procedure designed to effect three distinct purposes: protection of the owner's property . . . ; protection of the police against claims of lost, stolen or vandalized property; and protection of the police from potential danger."  United States v. Lugo, 978 F.2d 631, 636 (10th Cir. 1992) (citing South Dakota v. Opperman, 428 U.S. 364, 369 (1975)).  No court has ever held that Fed. R. Crim. P. 41 governs administrative inventory searches, which would be nonsensical because there is no warrant or affidavit for an inventory search, and therefore nothing to "obtain" or "execute."  "[I]nventory searches are . . . a well-defined exception to the warrant requirement of the Fourth Amendment."  Colorado v. Bertine, 479 U.S. 367, 371 (1987) (citations omitted).

Rule 41 does not govern inventory searches as to the items recovered from the inventory, which is an administrative function involving the inventorying process.  Because plaintiffs' individual safe deposit box was searched administratively, rather than pursuant to a criminal search warrant, the procedural requirements of Fed. R. Crim. P. 41 do not apply.  Therefore, plaintiffs are not likely to prevail on their third - - and last - - cause of action asserted against the government in their FAC.

/ / /

/ / /

/ / /

15

**C.     Plaintiffs Are Not Likely To Suffer Irreparable Injury If Preliminary Injunctive Relief Is Denied.**

Plaintiffs make arguments regarding their need for inventories immediately via a preliminary injunction, but they have offered nothing to show any injury they will suffer if an injunction is denied is irreparable.  If for some reason they actually need the items, they can request them either in the administrative tort proceeding, or in a subsequent federal district court lawsuit (presumably pursuant to a document request) if they are unsatisfied with the result of the administrative tort proceedings after they have exhausted their administrative remedies.

As to irreparable injury, a preliminary injunction may not be granted based on a mere possibility of irreparable harm, even if a plaintiff demonstrates a strong likelihood of success on the merits or the other factors evaluated when deciding a preliminary injunction motion.  D.T. v. Sumner County Schools, 942 F.3d 324, 326-27 (6th Cir. 2019)  ("even the strongest showing on the other three factors [considered in ruling on a preliminary injunction motion] cannot eliminate the irreparable harm requirement.  That factor is indispensable:  If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit") (emphasis in original and internal quotation marks and citations omitted).  This is because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter, 555 U.S. at 22 (2008) (citation omitted); see also Alliance for Wild Rockies, 632 F.3d at 1131.  "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."  Caribbean Marine Services Co., Inc. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted).

In addition, "[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."  Id. (citation omitted).  Establishing a

risk of irreparable harm in the indefinite future is not enough; the harm must be shown to be imminent.  <u>Midgett v. Tri-County Metropolitan Transp. Dist. Of Oregon</u>, 254 F.3d 846, 850 (9th Cir. 2001) ("[p]laintiff must make a showing that he faces a real or immediate threat of substantial or irreparable injury") (citation omitted); <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1337 (11th Cir. 1994) (party seeking injunctive relief must show and prove a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury); <u>Campbell Soup Co. v. ConAgra, Inc.</u>, 977 F.2d 86, 91 (3d Cir. 1992) ("a showing of irreparable harm is insufficient if the harm will occur only in the indefinite future.  Rather, the moving party must make a clear showing of <u>immediate</u> irreparable harm") (emphasis in original and citation/internal quotation marks omitted).

Plaintiffs have not shown they will suffer irreparable injury if a preliminary injunction is denied.  Therefore, their motion is therefore properly denied on this ground alone.

**D.    The Balance Of Hardships Does Not Tip In Plaintiffs' Favor And The Proposed Injunction Is Not In The Public's Interest.**

Contrary to plaintiffs arguments, the government would suffer prejudice by having to disclose the information via an injunction, when plaintiffs have not exhausted their administrative remedies and provided in the administrative proceedings whatever information they have to show there are missing coins.  This is particularly so where, as here, plaintiffs initially wrongfully estimated the number of coins in their box, later reduced the number of coins after they conducted what they describe as a "thorough accounting" and "investigation" and then declare they will retain 20 out of the 47 gold coins returned to them even though they assert those coins do not even belong to them (if plaintiffs are to be believed) and are therefore the property of someone else entirely. FAC ¶ 52 at 14:5-9.  Further, video inventories the government provided in other cases were used for purposes having nothing to do with verifying whether any items were lost when officers inventoried a USPV box, and plaintiffs already know what they stored in their box and can therefore submit an administrative tort claim.  The Supreme Court has

recognized the appropriateness of the exhaustion requirement in FTCA contexts, such as here, and the government respectfully submits that that the public interest favors a decision whereby plaintiffs are required to pursue the administrative tort procedure before seeking an injunction in federal district court.  Because plaintiffs have not shown that the balance of hardships tips in their favor and the proposed injunction is in the public's interest, plaintiffs' motion for a preliminary injunction should be denied.

## IV.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that plaintiffs' motion for a preliminary injunction be denied.

Dated: January 3, 2022                    Respectfully submitted,

                                          TRACY L. WILKISON
                                          United States Attorney
                                          SCOTT M. GARRINGER
                                          Assistant United States Attorney
                                          Chief, Criminal Division

                                          _____/s/_____
                                          ANDREW BROWN
                                          VICTOR A. RODGERS
                                          MAXWELL COLL
                                          Assistant United States Attorneys

                                          Attorneys for Defendants
                                          UNITED STATES OF AMERICA, and
                                          TRACY L. WILKISON and KRISTI
                                          KOONS JOHNSON IN THEIR OFFICIAL
                                          CAPACITY ONLY