BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division
C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division
RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division
JOSEPH A. GONZALEZ
Trial Attorney, Torts Branch, Civil Division
    U.S. DEPARTMENT OF JUSTICE
    Ben Franklin Station
    P.O. Box 7146
    Washington, D.C. 20044-7146
    (202) 598-3888 (phone)
    joseph.a.gonzalez@usdoj.gov

Attorneys for Defendants Kristi Koons Johnson
and Lynne K. Zellhart in their individual capacities

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| DONALD MELLEIN, ET AL.<br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, ET AL.,<br>    Defendants. | Case No. 2:21-cv-06588-RGK-MAR<br><br>**Assistant Director in Charge Johnson and Special Agent Zellhart's Notice Of Motion And Motion To Dismiss The First Amended Complaint; Memorandum Of Points And Authorities And Declaration Of Joseph A. Gonzalez; [Proposed] Order Granting Motion Lodged Under Separate Cover**<br><br>Date:    February 7, 2022<br>Time:    9:00 a.m.<br>Courtroom: 850, the Honorable<br>      R. Gary Klausner |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on February 7, 2022 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable R. Gary Klausner, United States District Court, Courtroom 850, Royal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012, Defendants Kristi Koons Johnson and Lynne K. Zellhart will and hereby do move, under to Fed. R. Civ. P. 12(b)(6), to dismiss the first amended complaint for failure to state a claim upon which relief can be granted. This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on December 23, 2021 (*see* Gonzalez Decl. ¶ 2), and is made on the grounds that the Complaint fails to state a claim upon which relief can be granted.

This motion is based upon this notice of motion; the attached memorandum of points and authorities and declaration of Joseph A. Gonzalez; the proposed order granting the motion (lodged under separate cover); all pleadings and papers on file in this action; such other and further matters as may be presented at any hearing on this motion; and matters of which the Court may take notice.

Dated: January 6, 2022                    Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Acting Assistant Attorney General, Civil Division

                                          C. SALVATORE D'ALESSIO, JR.
                                          Acting Director, Torts Branch, Civil Division

                                          RICHARD MONTAGUE
                                          Senior Trial Counsel, Torts Branch, Civil Division

                                          /s/ *Joseph A. Gonzalez*
                                          JOSEPH A. GONZALEZ
                                          Trial Attorney, Torts Branch, Civil Division
                                          U.S. DEPARTMENT OF JUSTICE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
(202) 598-3888 (phone)
(202) 616-4314 (fax)
joseph.a.gonzalez@usdoj.gov

Attorneys for Defendants Kristi Koons Johnson
and Lynne K. Zellhart in their individual
capacities

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 1

STANDARD OF REVIEW ..................................................................................... 4

ARGUMENT ........................................................................................................... 5

I.     Plaintiffs' *Bivens* claims against Assistant Director in Charge Johnson and Special Agent Zellhart fail because they arise in a new context and special factors counsel hesitation. ................................................................................................. 5

     A.    Plaintiffs' *Bivens* claims present a new context. ......................................... 6

     B.    Special factors counsel against a *Bivens* remedy in this new context. .......... 8

          1.    Plaintiffs have alternative procedures for relief that counsel against recognizing a new *Bivens* action. ......................................................... 9

          2.    *Bivens* precludes holding Assistant Director in Charge Johnson and Special Agent Zellhart responsible for the formulation of policy. .... 10

          3.    Plaintiffs' *Bivens* action would cause disruptive intrusion into the Executive Branch. .................................................................................. 11

          4.    Existing legislation suggests that the absence of a monetary remedy against individuals under the circumstance alleged is more than inadvertent. ......................................................................................... 13

II.    Assistant Director in Charge Johnson and Special Agent Zellhart are entitled to qualified immunity. .......................................................................................... 14

     A.    Plaintiffs fail to allege that Assistant Director in Charge Johnson was personally involved in the alleged actions that were unconstitutional. ...... 14

     B.    Assistant Director in Charge Johnson and Special Agent Zellhart did not violate Plaintiffs' clearly established rights. .............................................. 16

          1.    It is not clearly established that the warrant was invalid. ................. 16

          2.    It is not clearly established that the inventory search was

unconstitutional. ..................................................................................18

    3.    Plaintiffs have not alleged a violation of clearly established rights under the Fifth Amendment. ..........................................................19

CONCLUSION ...........................................................................................20

# TABLE OF AUTHORITIES

**Federal Cases**

*Ahmed v. Weyker,*
   984 F.3d 564 (8th Cir. 2020) ...................................................................... 7

*Alexander v. Sandoval,*
   532 U.S. 275 (2001) .................................................................................... 5

*Amon Ra v. Cochise Cnty.,*
   442 F. App'x 286 (9th Cir. 2011) ............................................................. 15

*Annappareddy v. Pascale,*
   996 F.3d 120 (4th Cir. 2021) ...................................................................... 7

*Armstrong v. Asselin,*
   734 F.3d 984 (9th Cir. 2013) ............................................................... 12, 17

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011) ............................................................................. 14, 19

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................. 14, 15

*Barren v. Harrington,*
   152 F.3d 1193 (9th Cir. 1998) .................................................................. 14

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................... 5

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
   403 U.S. 388 (1971) ........................................................................... passim

*Bonneau v. Maxwell,*
   No. 3:12-CV-130-PA, 2012 WL 3644140 (D. Or. Aug. 23, 2012) ........... 10

*Caltex Plastics, Inc. v. Lockheed Martin Corp.,*
   824 F.3d 1156 (9th Cir. 2016) .................................................................... 4

iii

*Cantu v. Moody*,
  933 F.3d 414 (5th Cir. 2019) ................................................................. 7, 12

*Carlson v. Green*,
  446 U.S. 14 (1980) ..................................................................................... 6

*City of W. Covina v. Perkins*,
  525 U.S. 234 (1999) .................................................................................. 20

*Colorado v. Bertine*,
  479 U.S. 367 (1987) .................................................................................. 18

*Davis v. Billington*,
  681 F.3d 377 (D.C. Cir. 2012) .................................................................. 10

*Davis v. Dotson*,
  No. 20-13123, 2021 WL 5353099 (11th Cir. Nov. 17, 2021) .................... 10

*Davis v. Passman*,
  442 U.S. 228 (1979) ................................................................................... 6

*Diaz v. United States*,
  517 F.3d 608 (2d Cir. 2008) ..................................................................... 13

*District of Columbia v. Wesby*,
  138 S. Ct. 577 (2018) ................................................................................ 16

*Farah v. Weyker*,
  926 F.3d 492 (8th Cir. 2019) ..................................................... 6, 7, 8, 12, 13

*Fazaga v. Fed. Bureau of Investigation*,
  965 F.3d 1015 (9th Cir. 2020) .................................................................... 5

*Fed. Bureau of Investigation v. Fazaga*,
  No. 20-828, 2021 WL 2301971 (U.S. June 7, 2021) ................................... 5

*Florida v. Wells*,
  495 U.S. 1 (1990) ..................................................................................... 18

iv

*Foster v. United States*,

   522 F.3d 1071 (9th Cir. 2008) ...................................................................... 13

*Gerstein v. Pugh*,

   420 U.S. 103 (1975) .................................................................................... 20

*Harlow v. Fitzgerald*,

   457 U.S. 800 (1982) .................................................................................... 14

*Hernandez v. Mesa*,

   140 S. Ct. 735 (2020) ........................................................................... 5, 8, 10

*Hudson v. Palmer*,

   468 U.S. 517 (1984) .................................................................................... 19

*Kisela v. Hughes*,

   138 S. Ct. 1148 (2018) ................................................................................ 16

*Lanuza v. Love*,

   899 F.3d 1019 (9th Cir. 2018) ...................................................................... 11

*Leyland v. Edwards*,

   797 F. Supp. 2d 7 (D.D.C. 2011) ................................................................... 9

*Libretti v. Woodson*,

   600 F. App'x 367 (6th Cir. 2015) .................................................................. 18

*Loumiet v. United States*,

   948 F.3d 376 (D.C. Cir. 2020) ........................................................................ 8

*Marulanda v. U.S. Marshals Serv.*,

   467 F. App'x 590 (9th Cir. 2012) .................................................................. 20

*Messerschmidt v. Millender*,

   565 U.S. 535 (2012) .................................................................................... 17

*Mullenix v. Luna*,

   577 U.S. 7 (2015) ........................................................................................ 16

v

*Ochoa v. Bratton*,

    No. 16-CV-2852 (JGK), 2017 WL 5900552 (S.D.N.Y. Nov. 28, 2017) ......................10

*Perkins v. City of W. Covina*,

    113 F.3d 1004 (9th Cir. 1997) ......................................................................20

*Ramsden v. United States*,

    2 F.3d 322 (9th Cir. 1993) ..............................................................................9

*Schweiker v. Chilicky*,

    487 U.S. 412 (1988) ......................................................................................10

*Seismic Reservoir 2020, Inc. v. Paulsson*,

    785 F.3d 330 (9th Cir. 2015) ..........................................................................5

*South Dakota v. Opperman*,

    428 U.S. 364 (1976) ......................................................................................18

*Starr v. Baca*,

    652 F.3d 1202 (9th Cir. 2011) ......................................................................15

*Terrell v. Brewer*,

    935 F.2d 1015 (9th Cir. 1991) ......................................................................14

*United States v. Bowhay*,

    992 F.2d 229 (9th Cir. 1993) ........................................................................19

*United States v. Chung*,

    553 F. App'x 690 (9th Cir. 2014) ................................................................18

*United States v. Gaston*,

    740 F. App'x 576 (9th Cir. 2018) ................................................................18

*United States v. Leon*,

    468 U.S. 897 (1984) ......................................................................................17

*United States v. Lopez*,

    547 F.3d 364 (2d Cir. 2008) ..........................................................................19

*United States v. SDI Future Health, Inc.*,
  568 F.3d 684 (9th Cir. 2009) ...................................................................17

*Vega v. United States*,
  881 F.3d 1146 (9th Cir. 2018) ...................................................................9

*Warren v. Fox Fam. Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) ...................................................................5

*White v. Pauly*,
  137 S. Ct. 548 (2017) ..............................................................................16

*Wilkie v. Robbins*,
  551 U.S. 537 (2007) ..................................................................................9

*Wong v. United States*,
  373 F.3d 952 (9th Cir. 2004) ...................................................................16

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017)......................................................................passim

**Federal Statutes**

28 U.S.C. § 2680(c)(1)....................................................................................13

31 U.S.C. § 3724(a) ...........................................................................9, 10, 20

**Federal Rules**

Fed. R. Crim. P. 41(g) .................................................................................9, 20

**Other Authorities**

H.R. Rep. No. 106-192 1999 WL 406892 .......................................................18

## MEMORANDUM OF POINTS AND AUTHORITIES

### <u>INTRODUCTION</u>

This case arises out of a criminal investigation into U.S. Private Vaults, Inc. (USPV), a company that anonymously leases safe deposit boxes. Plaintiffs allege in their Count III *Bivens* claim, *see generally Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), that FBI Assistant Director in Charge Kristi Koons Johnson and FBI Special Agent Lynne K. Zellhart violated their constitutional rights in two ways. By seizing their safe deposit box pursuant to a seizure warrant issued in the investigation and then allegedly failing to return 63 gold coins contained in the box. Plaintiffs' *Bivens* claims warrant dismissal for two reasons.

First, Plaintiffs' theories of recovery arise in a new context that implicates classic reasons for rejecting the creation of a new *Bivens* remedy. These include: (i) the claim is improper given the existence of alternative remedies; (ii) it would impermissibly hold the Assistant Director in Charge Johnson and Special Agent Zellhart responsible for policy decisions; (iii) the claim would cause disruptive intrusion into the Executive branch; and (iv) it likely infringes on legislative intent to not provide a remedy against federal officers in this circumstance. Second, the unique circumstances of this case also demonstrate an entitlement to qualified immunity. No controlling authority or robust consensus of persuasive authority establishes that any of the actions alleged in these specific circumstances amounts to a violation of a clearly established right.

### <u>BACKGROUND</u>

USPV operates a safe deposit box business in a Beverly Hills strip-mall that houses hundreds of boxes. *See* Gonzalez Decl. ¶ 3; Ex. C (Warrant Affidavit ¶¶ 4, 6). Unlike typical safety deposit boxes located in a bank, USPV does not use personal identifying information to identify box holders. *See id.* ¶ 6. Instead, box holders "anonymously" use "biometric identification" to gain access to the vault area without anyone ever knowing their identity. *Id.* ¶¶ 6, 10. Plaintiffs, a retired couple living in Los Angeles, allege that they own Box No. 224. First Amended Complaint (FAC) ¶ 1. It

allegedly contained 110 gold coins worth approximately $220,000, as well as "(a) miscellaneous papers, including a receipt for 20 of the 110 gold coins stored in Box #224 . . .; (b) one gold bar; [and] (c) $76,050 in US currency[.]" *Id.* ¶¶ 1, 28.

In March 2021, a grand jury indicted USPV for conspiracy to launder money, to distribute controlled substances, and to structure transactions to avoid reporting requirements. Gonzalez Decl. ¶ 3; Ex. A (Indictment). The indictment states that USPV's business is predicated on "attract[ing] customers in possession of proceeds from criminal offenses[.]" Ex. A 3:21. USPV allegedly did so by "touting the anonymity of the safety deposit rentals" and "boasting that, unlike banks, its anonymous safety deposit box rentals did not require customer information that 'can be easily accessed by government agencies (such as the IRS)[.]'" *Id.* at 3:23-28.

Thereafter the government obtained a seizure warrant for, among other things the "[n]ests of safety deposit boxes and keys" located at USPV. Gonzalez Decl. ¶ 4; Ex. B (Warrant Attachment B) 2:26. The warrant did "not authorize a criminal search or seizure of the contents of the safety deposit boxes." *Id.* at 2:28-3:1. Rather, it mandated that "agents shall follow their written inventory policies to protect their agencies and the contents of the boxes," and directed agents to "inspect the contents of the boxes in an effort to identify their owners[.]" *Id.* at 3:2-5. On March 22, 2021, the government executed the warrant and seized all boxes. FAC ¶ 24. Special Agent Zellhart allegedly served as the lead agent for the operation and "supervised, participated in, and/or otherwise aided and assisted" with executing the warrant. *Id.* ¶ 16. She also "signed an affidavit under penalty of perjury that was submitted in support of the search and seizure warrants for USPV." *Id.*[1]

---

[1]      Plaintiffs also state that "for the reasons discussed below" that the affidavit contained "false or misleading statements" that Special Agent Zellhart made with "knowingly or with reckless disregard for their truth or falsity." FAC ¶ 16. This same allegation appears in the Second Amended Complaint in *Louis Loe v. United States of America, et al.*, 2:21-cv-003348 (C.D. Cal.). *See id.* at Dkt. 51 ¶ 21. However unlike *Loe*,

Plaintiffs make no factual allegation that Assistant Director in Charge Johnson personally participated in, supervised, or even observed. Instead, Plaintiffs premised their allegations against her on the size of the operation and her "authority over the policies and procedures implemented by, and the actions of, FBI agents assigned" to the LA field office. *Id.* ¶ 15. From this, Plaintiffs surmise "[o]n information and belief," that the plan to "seize and break open all of the USPV boxes" could "only have occurred with Koons Johnson's knowing participation in, and/or approval or ratification[.]" *Id.*

Soon after executing the warrant the FBI directed box owners to an FBI website to make a claim for their property, which Plaintiffs did, through counsel, on April 12, 2021. *See Id.* ¶ 40. On May 24, 2021, Plaintiffs received via certified mail a notice of forfeiture of their box contents. *Id.* ¶ 41. The notice did not list the 110 gold coins Plaintiffs allege were in the box. *Id.* On June 1, 2021 Plaintiffs' counsel allegedly called Special Agent Zellhart regarding the forfeiture and secured her agreement to return the contents of Box No. 224 to them. *Id.* ¶ 41. Plaintiffs' counsel also inquired about the coins. *Id.* Special Agent Zellhart allegedly responded "that perhaps the gold coins were separated from the rest of the property as not subject to forfeiture." *Id.* ¶ 42. On June 14, 2021, Special Agent Zellhart provided to Plaintiffs' counsel all of the box contents except for the allegedly missing 110 coins. *Id.* ¶ 43. Plaintiffs' counsel allegedly followed up with Special Agent Zellhart several times thereafter about the coins but has yet to receive a response from her. *Id.* ¶ 44. In December, counsel for the United States notified Plaintiffs' counsel that the FBI had located 47 coins believed to be Plaintiffs' property and subsequently returned them. *Id.* ¶¶ 47, 52.

On August 13, 2021, Plaintiffs filed a complaint, which the Defendants moved to dismiss. During the pendency of the motions, this Court granted a motion to dismiss in *Louis Loe v. United States of America, et al.*, 2:21-cv-003348 (C.D. Cal.) on December 7, 2021. *See id* at Dkt. 76. The order dismissed similar claims, against the same

_____

Plaintiffs never provide these "reasons discussed below" in their First Amended Complaint.

3

individual defendants, challenging the same USPV operation, as is alleged in this case. *See id*. However, two weeks later, on December 23, 2021, Plaintiff filed a First Amended Complaint. It neither made mention of the *Loe* order, nor did it attempt to distinguish *Loe*'s allegations against Assistant Director in Charge Johnson and Special Agent Zellhart from those in this case. Instead, Plaintiffs once again bring a *Bivens* claim against them in their individual capacities.[2]

Plaintiffs allege that Assistant Director in Charge Johnson and Special Agent Zellhart violated the Fourth Amendment by seizing and searching Plaintiffs' safe deposit box without probable cause and performing an illegal investigatory search under the guise of an inventory search. *Id*. ¶¶ 83-89, 99, 100. Plaintiffs also allege that Assistant Director in Charge Johnson and Special Agent Zellhart have, in violation of the Fifth Amendment, "deprived Plaintiffs of the use, benefit, and enjoyment of their property without due process by failing to return" the remaining 63 gold coins. *Id*. ¶¶ 90, 101. As set forth in more detail below, Plaintiffs have failed to state a claim against the Assistant Director in Charge Johnson and Special Agent Zellhart.

## STANDARD OF REVIEW

Courts should grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss when a complaint fails to allege a cognizable legal theory or sufficient factual support for a legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016); *see Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (internal quotations and citation omitted). Thus, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face" to defeat the motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But while courts should accept as true the well-pleaded material factual allegations, they should not accept as true conclusory allegations, unwarranted factual deductions, unreasonable inferences or legal

---

[2]      In the First Amended Complaint, Plaintiffs also named in their individual capacity Special Agents Justin Palmerton, Kathryn Baily Dress, Dezmond Beverly, and Jessie Murray. Upon information and belief, they remain unserved.

characterizations. *Id.* at 555; *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

## ARGUMENT

I.  **Plaintiffs' *Bivens* claims against Assistant Director in Charge Johnson and Special Agent Zellhart fail because they arise in a new context and special factors counsel hesitation.**

*Bivens* remedies are the product of what the Supreme Court has called an "*ancien regime*" where it "would imply causes of action" not present in the text of a law. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). In the forty years since then, the Court has reversed course and "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). Now if a law "itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Abbasi*, 137 S. Ct. at 1856 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)) (internal quotations and alteration omitted). As a result, "the availability of *Bivens* actions for new claims and contexts" is now "severely restricted." *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1055 (9th Cir. 2020) (citing *Abbasi*, 137 S. Ct. at 1856-57), *cert. granted sub nom. Fed. Bureau of Investigation v. Fazaga*, No. 20-828, 2021 WL 2301971 (U.S. June 7, 2021).

A plaintiff now only has two narrow paths to pursuing a *Bivens* action. If a plaintiff establishes that their claim qualifies as one of "the three *Bivens* claims the Court has approved in the past" then the *Bivens* claim may proceed (subject to other defenses). *Abbasi*, 137 S. Ct. at 1860. Alternatively, if the claim arises in a new context, a plaintiff must establish that there are no "special factors [that] counsel[] hesitation" before a court will imply a new cause of action. *Id.* at 1857. Plaintiffs fail to establish a *Bivens* claim through either path.

**A.     Plaintiffs' *Bivens* claims present a new context.**

Whether a claim presents a new context depends on whether the case is "different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court." *Id.* at 1859. This requires a comparison with the only three cases in which the Supreme Court has previously recognized a *Bivens* remedy: *Bivens*, 403 U.S. 388; *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980). Because search and seizure are primarily at issue "[t]he most analogous Supreme Court case" here "is *Bivens* itself." *Quintero Perez v. United States*, 8 F.4th 1095, 1104 (9th Cir. 2021). *Davis* and *Carlson* are "are clearly dissimilar." *Id.* at 1104 n.4. But "coming closest" is still a far cry from "exactly mirror[ing] the facts and legal issues[.]" *Farah v. Weyker*, 926 F.3d 492, 498 (8th Cir. 2019). Even a case with "significant parallels to one of the [Supreme] Court's [three] previous *Bivens* cases," or a case presenting just a "modest extension" of one of them, "is still an extension" into a new context. *Abbasi*, 137 S. Ct. at 1864; *see id.* at 1860 (listing seven non-exhaustive factors).

As the Court has already held in *Loe*, Plaintiffs' claims against Assistant Director in Charge Johnson and Special Agent Zellhart directly implicate several of the meaningful differences set forth by the Supreme Court and thus establish that the claims present a new context. *See Loe* at pp. 7-9. The type of injury is one meaningful difference. Unlike in *Bivens*, where the plaintiff was personally subjected to a warrantless search, seizure, and arrest that resulted in "humiliation, embarrassment, and mental suffering," 403 U.S. at 389-90, here, Plaintiffs were never personally seized or arrested. Rather, their alleged Fourth Amendment injury is confined to a property interest in a safe-deposit box that was located in a strip-mall. Plaintiffs' Fifth Amendment due process claim fares even worse, as the alleged deprivation of the gold coins is also fundamentally different from the rights, injuries, and context alleged in *Bivens*, *Carlson*, or *Davis*. The fact that the government returned part of the property in the box only heightens the distinctions from those three cases, and thus so too the lack of similarity.

6

But it is not just the injury that establishes a new context in this case. So too does the mechanism of injury. *Bivens* concerned a warrantless search from "stem to stern." 403 U.S. at 389. Here, conversely, the claims focus on an allegedly invalid warrant and the subsequent property retrieval process. *See Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2021) (finding new context because "*Bivens* involved [] the Fourth Amendment right to be free of unreasonable warrantless *searches* and seizures; [whereas] this case, by contrast, involves searches and a seizure conducted *with* a warrant") (emphasis in original). This difference not only establishes a new context by itself, but also reveals another meaningful difference from *Bivens*— attenuation between the defendant and the ultimate injury absent from *Bivens*.

For example, in *Ahmed v. Weyker*, 984 F.3d 564 (8th Cir. 2020) the plaintiff alleged that an officer drafted a sworn affidavit that, among other things, lacked probable cause. *Id.* at 566. The court held that this was enough to establish a new context. It reasoned that the steps between constructing the affidavit and executing the warrant involved "independent legal actors" and thus the "direct causal chain [present in *Bivens*] is missing." *Id.* at 569 (citation, alterations, and internal quotations omitted). *See also Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019). The same holds true here. Plaintiffs allege that the "facially deficient seizure warrant" was "lacking in indicia of probable cause with respect to Plaintiffs' safe deposit box[.]" FAC ¶ 85. This implicates independent legal actors responsible for both constructing the affidavit (various law enforcement officers) and approving it (magistrate judge), thus premising the claim on an "indirect mechanism of injury [that] bears little resemblance to the straightforward claims from *Bivens*." *Farah*, 926 F.3d at 499.

Similar reasoning establishes that Plaintiffs' related inventory search theory also presents a new context. Plaintiffs allege that it was "a pretext for conducting an investigatory search . . . to further Defendants' indiscriminate criminal investigation of USPV box holders." FAC ¶ 88. This theory implies government coordination among numerous actors that had various levels of participation in inventorying hundreds of

7

boxes. Thus not only does the theory present an "indirect mechanism of injury," it is also far more complicated than "the straightforward claims from *Bivens*." *Farah*, 926 F.3d at 499.

Finally, the allegations against Assistant Director in Charge Johnson evince a textbook difference—the "rank of the officers involved." *Abbasi*, 137 S. Ct. at 1860. *Bivens* concerned line-level officers operating in the field, not a high-level supervisor allegedly responsible for "the policies and procedures . . . and the actions of [] FBI agents assigned to the Los Angeles Field Office." FAC ¶ 15. This casts Assistant Director in Charge Johnson as an entirely new category of defendant, which is dispositive. *See Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020) (observing that a "'new context' is present whenever the plaintiff seeks damages from a 'new category of defendants'" and finding that executive officers in the comptroller office were a new category) (quoting *Abbasi*, 137 S. Ct. at 1860).

**B.    Special factors counsel against a *Bivens* remedy in this new context.**

The creation of a new *Bivens* remedy is a rare thing. Indeed, "for almost 40 years, [the Supreme Court has] consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez*, 140 S. Ct. at 743. This remains the status quo because the Supreme Court's "precedents now instruct [that] the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Abbasi*, 137 S. Ct. at 1857 (internal citations and quotations omitted). The Supreme Court urges "caution" for this reason, holding that the mere presence of a "special factor counselling hesitation" forecloses the creation of *Bivens* remedy. *Id.* at 1858. That is a case-specific inquiry. But if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy[.]" *Id.* Plaintiffs' allegations here implicate textbook "sound reasons" to hesitate and for the Court to "refrain from creating" the *Bivens* remedies Plaintiffs request. *Id.*

1.   <u>Plaintiffs have alternative procedures for relief that counsel against
recognizing a new *Bivens* action.</u>

In *Abbasi*, the Supreme Court held that "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Id.* at 1865; *see Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) ("[A]ny alternative, existing process for protecting the [injured party's] interest" may "amount[] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages."). Such "'[a]lternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). Here, there are at least three.

In Count I, Plaintiffs seek the return of their property under Federal Rule of Criminal Procedure Rule 41(g), which as an equitable procedure, falls within the other forms of equitable relief category set forth in *Abbasi*. *See Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993) ("district courts have the power to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant."). Thus, the principal relief Plaintiffs seek (property return) is provided for under Rule 41(g)'s alternative remedial structure. *See Leyland v. Edwards*, 797 F. Supp. 2d 7, 11 (D.D.C. 2011) (holding that the plaintiff's *Bivens* claim for the return of his property was "barred due to Rule 41(g) providing an adequate, comprehensive procedural and remedial scheme").

Plaintiffs also have potential statutory remedies that qualify as an alternative remedial structure. Under 31 U.S.C. § 3724(a), the "Attorney General may settle, for not more than $50,000 . . . a claim for . . . damage to, or loss of, privately owned property, caused by . . . [a] Department of Justice [employee] acting within the scope of employment[.]" Section 3723(a) also provides relief up to $1,000 for "damage to, or loss of, privately owned property" under similar circumstances. Courts throughout the country have recognized that these alternative remedial structures preclude a *Bivens* remedy for a variety of lost or damaged property claims. Indeed, most recently, the

Eleventh Circuit rejected a *Bivens* claim because § 3724(a) "provided at least one alternative means for [the plaintiff] to seek compensation for the destruction of his property." *Davis v. Dotson*, No. 20-13123, 2021 WL 5353099, at *2 (11th Cir. Nov. 17, 2021); *see also Ochoa v. Bratton*, No. 16-CV-2852 (JGK), 2017 WL 5900552, at *2, 7 (S.D.N.Y. Nov. 28, 2017) (denying Bivens claim alleging that DEA agents failed to return clothes and $4,800 because sections 3723(a) and 3724(a) provide alternative remedies); *Bonneau v. Maxwell*, No. 3:12-CV-130-PA, 2012 WL 3644140, at *2 (D. Or. Aug. 23, 2012) (denying *Bivens* claim alleging that FBI agents destroyed hard drives with intellectual property claimed to be worth 1.7 million because sections 3723(a) and 3724(a) provide alternative remedies). This case requires the same result.

The preclusive effect of these alternative remedies remains even if they prove unsuccessful. *See Davis v. Billington*, 681 F.3d 377, 387 (D.C. Cir. 2012) (A "scheme's failure to provide a remedy to a particular plaintiff for the particular claim . . . does not make the scheme any less comprehensive for purposes of determining whether it is a special factor that precludes the creation of a *Bivens* remedy.") (citation and quotations omitted); *Cf. Hernandez*, 140 S. Ct. at 750 n12 ("Indeed, in *Abbasi* we explained that existence of alternative remedies was merely a further reason not to create *Bivens* liability.") (citation omitted). The inability to provide full compensation under a remedial structure also does not render it inadequate. *See Davis*, 2021 WL 5353099, at *2 (That § 3724 "may not fully compensate [the plaintiff] for his lost data . . . does not justify the expansion of *Bivens* to a new context.") (citing *Schweiker v. Chilicky*, 487 U.S. 412, 425–29 (1988)). Thus, Rule 41(g), § 3724(a), and § 3723(a)'s existence as remedial schemes designed to address the type of injury Plaintiffs allege is enough to counsel hesitation, regardless of their actual success and the possibility of full compensation.

2.    <u>*Bivens* precludes holding Assistant Director in Charge Johnson and Special Agent Zellhart responsible for the formulation of policy.</u>

A "*Bivens* action is not 'a proper vehicle for altering an entity's policy.'" *Abbasi*, 137 S. Ct. at 1860. This holds true "[e]ven if the [*Bivens*] action is confined to the

10

conduct of a particular Executive Officer in a discrete instance." *Id.* Such claims still require hesitation if they "call into question the formulation and implementation of a general policy[.]" *Id.*; *see Lanuza v. Love*, 899 F.3d 1019, 1028 (9th Cir. 2018) ("special factors include . . . whether *Bivens* is being used as a vehicle to alter an entity's policy"). Plaintiffs' claims against Assistant Director in Charge Johnson and Special Agent Zellhart do just that and thus counsel hesitation.

An analysis of the claims themselves demonstrates their policy focus. The inventory search allegedly was not "conducted pursuant to established and standardized agency policies and procedures." FAC ¶ 89. Similarly, Plaintiffs assert that the FBI's procedures and policies for returning property fall short of due process requirements. *Id.* ¶ 90. Although styled as an absence of policy, these theories function no less as an attempt to "alter[] an entity's policy" because they seek to force the FBI to conform to policies Plaintiffs deem appropriate. This necessarily "require[s] inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged." *Abbasi*, 137 S. Ct. at 1860. Here those discussions range from the best method for effectively inventorying the boxes (Fourth Amendment) to how the FBI's property retrieval procedures fulfill its goal to seize criminal proceeds and return non-criminal property (Fifth Amendment). In *Loe*, this Court came to this same conclusion when those plaintiffs also alleged a lack of policies for returning seized property. It reasoned that "[a]t the very least, this allegation implicitly challenges the FBI's policy, or lack thereof, regarding return of property after an inventory search" and thus "weighs against extending *Bivens* to [the] [p]laintiff's claims." *Id.* at Dkt. 76 p. 11. The same conclusion follows here.

3.   Plaintiffs' *Bivens* action would cause disruptive intrusion into the Executive Branch.

Plaintiffs take issue with multiple steps taken in a large criminal investigation and prosecution into a complex criminal scheme. They complain that the warrant, the search of their box, and the retention of box contents, were all unconstitutional. *See* FAC ¶¶ 83-

11

90. But the inherent factual complexity of each theory risks "burdening and interfering with the executive branch's investigative and prosecutorial functions." *Farah*, 926 F.3d at 500. This would cause an "intrusive" interference into "sensitive functions of the Executive Branch" that courts must avoid. *Abbasi*, 137 S. Ct. at 1861; *see Loe* at Dkt. 76 p. 11 (finding reason for hesitation because "[p]laintiff is seeking to prove that Zellhart knowingly made material misstatements to obtain the search warrant and that Johnson was involved in the [USPV] operational plan"

Plaintiffs' contention that the warrant was "so lacking in indicia of probable cause . . . as to render official belief . . . entirely unreasonable" guarantees intrusion. FAC ¶ 85. To prove "any error was not obvious" and thus not unlawful, Special Agent Zellhart would need to demonstrate "[p]resentation to a superior officer and prosecutor, and approval by a judicial officer[.]" *Armstrong v. Asselin*, 734 F.3d 984, 991 (9th Cir. 2013). This necessarily involves examining the sufficiency of multiple internal steps in an approval process that is the province of the Executive. *See Farah*, 926 F.3d at 500.

The complexity of the case magnifies this inquiry and thus also the intrusiveness that counsels hesitation. The government has alleged that USPV was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements. Affidavit ¶ 20(a)-(j). The suspected scheme involved numerous actors and entities executing a plan sophisticated enough to skirt federal banking laws. *See id.*; *see also* Indictment ¶ 2(a)-(c). Just as in *Cantu*, where the fact that the case involved a "multi-jurisdictional investigation into transnational organized crime" counseled hesitation, so too here does the expansiveness of the USPV investigation counsel hesitation. 933 F.3d at 424.

Plaintiffs' related claim that the inventory search allegedly occurred in the absence of an inventory policy also would require delving into an executive function. *See* FAC ¶ 89. This would result in intrusion into law enforcement operations that reflect choices about how to securely and efficiently inventory property, and so too counsels hesitation.

4. <u>Existing legislation suggests that the absence of a monetary remedy against individuals under the circumstance alleged is more than inadvertent.</u>

Finally, the absence of a damages remedy against federal officers under these circumstances does not mean that one should be authorized here. Rather, "congressional silence might be more than 'inadvertent.'" *Abbasi*, 137 S. Ct. at 1862 (citation omitted). In *Farah*, the Eighth Circuit explained this inference in the context of statutes intended to compensate wrongly convicted defendants. *See Farah,* 926 F.3d at 502 (citing to the Hyde Amendment for baseless prosecutions, and 28 U.S.C. § 1495 and 28 U.S.C. § 2513 for unjust convictions). It reasoned "that Congress has expressly provided a damages remedy for some victims of this particular type of injury, but not for others, suggests that it considered the issue and made a deliberate choice" not to compensate those others. *Id.* Similar reasoning applies in this case as well.

In 2000, Congress passed the Civil Asset Forfeiture Reform Act (CAFRA), which amended section 2680(c)'s detention of goods exception by "'re-waiv[ing]' sovereign immunity for a narrow category of forfeiture-related damages claims . . . ." *Diaz v. United States*, 517 F.3d 608, 613 (2d Cir. 2008). To qualify, the claimants must, among other things, seek compensation for property "seized for the purpose of forfeiture," 28 U.S.C. § 2680(c)(1), and, unlike this case, *solely* seized for that purpose. *See Foster v. United States*, 522 F.3d 1071, 1075 (9th Cir. 2008) ("[T]he re-waiver of sovereign immunity in § 2680(c)(1)-(4) applies only to property seized solely for the purpose of forfeiture."). But the statute's legislative history demonstrates a comprehensive consideration of the various ways property is damaged or lost while in government custody. *See* H.R. Rep. No. 106-192 1999 WL 406892, at *18 (1999). And Congress was plainly aware that property can be damaged or lost by federal officers when seized for purposes other than forfeiture. Thus, "Congress' failure to provide a damages remedy" against federal officers in the circumstances alleged here, or an unlimited damages remedy, "might be more than mere oversight, and that congressional silence

might be more than 'inadvertent.'" *Abbasi*, 137 S. Ct. at 1862. Accordingly, because "Congress might doubt the efficacy or necessity of a damages remedy" against federal officers in these circumstances, this Court should "refrain from creating the remedy." *Id.* at 1858.

## II. **Assistant Director in Charge Johnson and Special Agent Zellhart are entitled to qualified immunity.**

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). This "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation and quotations omitted). It does so by insulating government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

### A. **Plaintiffs fail to allege that Assistant Director in Charge Johnson was personally involved in the alleged actions that were unconstitutional.**

"[V]icarious liability is inapplicable to *Bivens*[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991) ("We join other circuits in holding that *respondeat superior* is inapplicable to *Bivens* actions."). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). These principles prohibit liability premised solely on a defendant's status as a supervisor. *Iqbal*, 556 U.S. at 677 (noting that "the term 'supervisory liability' is a misnomer" because under *Bivens* "masters do not answer for the torts of their servants"); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (holding, in the context of prisoner bringing suit against a warden, that a plaintiff must allege a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation")

14

Plaintiffs fail to allege a sufficient causal connection between Assistant Director in Charge Johnson and the alleged violations. Instead, they embrace a vicarious liability theory by alleging that she "has authority over the policies and procedures implemented by, and the actions of, FBI agents assigned to the Los Angeles Field Office." FAC ¶ 15. Such bare assertions of authority over policy are incapable of plausibly alleging personal involvement in a violation. Likewise, bare assertions that a supervisor created or implemented specific policies also fall short because such statements fail to explain how the supervisor participated in unlawful acts. *See Iqbal*, 556 U.S. at 680–81 (allegation that the Attorney General was "the 'principal architect' of this invidious policy" was a "bare assertion").

Plaintiffs' attempt to manufacture Assistant Director in Charge Johnson's actual participation in the acts alleged also lack the requisite well-pleaded factual support. They assert that "such a significant mobilization of federal law enforcement agents . . . could only have occurred with Koons Johnson's knowing participation in, and/or approval or ratification of the operational plan[.]" FAC ¶ 15. But, as with the policy allegation, this assertion does not contain a well-pleaded factual allegation that shows her participation, approval, or knowledge. *See Amon Ra v. Cochise Cnty.*, 442 F. App'x 286, 288 (9th Cir. 2011) (Plaintiff "alleged that the County must have known and acquiesced in the investigation given its length and scope, but that allegation, standing alone, is not sufficient."). Plaintiffs simply invite the Court to make an inference based solely on the alleged scope of the operation. This is functionally no different than the "principal architect" of the policy allegation that *Iqbal* rejected for being "conclusory," though not necessarily "fanciful." *Iqbal*, 556 U.S. at 680-81. It is the complete lack of a well-pleaded participation allegation, not the improbability of the inference derived from a different allegation, which dooms it. *Id*.

Finally, Plaintiffs cannot remedy this deficiency with a group pleading tactic in which they vaguely allege that "Defendants Koons Johnson, Zellhart, Palmerton, Baily Dress, Beverly, Murray, and DOES 1-10" committed constitutional violations. FAC ¶¶

15

99-101. These allegations "fail[] to identify what role, if any, each individual defendant had in" the alleged violation and thus fail to satisfy the personal involvement requirement. *Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004).

**B.**     **Assistant Director in Charge Johnson and Special Agent Zellhart did not violate Plaintiffs' clearly established rights.**

To be clearly established, a legal principle must be settled law, and it must "clearly prohibit the officer's conduct in the *particular circumstances* before him[.]" *District of Columbia v. Wesby*, 138 S. Ct. 577, 581 (2018) (emphasis added). "Such specificity is especially important in the Fourth Amendment context[.]" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam). It ensures that courts do not define the right at a "high level of generality" and therefore hold an officer liable without "fair notice that her conduct was unlawful[.]" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). Thus, to determine whether an officer's conduct violates clearly established law, the formulation of the conduct "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (citation and quotations omitted). As set forth below, Assistant Director in Charge Johnson and Special Agent Zellhart are entitled to qualified immunity because it is not clearly established under the specific circumstances alleged that Plaintiffs' constitutional rights were violated.

<u>1.     It is not clearly established that the warrant was invalid.</u>

Plaintiffs allege that "based on the affidavit to the search warrant, there is no probable cause to search and/or seize the contents of Plaintiff's Box" and thus the search of their box violated the Fourth Amendment. FAC ¶ 84. In support, they allege that "the warrant expressly states that it does not authorize the search or seizure of any box, including Plaintiffs, [sic] for purposes of a criminal investigation." *Id.* ¶ 85. Even if probable cause were lacking, these allegations do not rise to a violation of a clearly established right.

In *Messerschmidt v. Millender*, 565 U.S. 535 (2012), the plaintiff made a similar argument. He claimed that a warrant was obviously overbroad because it identified just

one particular gun, not all of the guns seized in a house. *Id.* at 548. But the Supreme Court disagreed, holding that "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause[.]" *Id.* at 547 (citation omitted). When this occurs, ordinarily "an officer cannot be expected to question the magistrate's probable-cause determination." *Id.*; *see also Armstrong*, 734 F.3d at 991 ("[P]rior review of proposed searches [] supports qualified immunity, shielding police officers from liability under the line of cases reaffirmed and broadened most recently by *Messerschmidt v. Millender*."). This analysis applies in equal force here.

A magistrate judge approved the USPV warrant. That is "the clearest indication that the officers acted in an objectively reasonable manner or, as [courts] have sometimes put it, in 'objective good faith.'" *Messerschmidt*, 565 U.S. at 546 (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)) (foot note omitted). Moreover, an analysis of the warrant affidavit "demonstrates that any error was not obvious" and that Special Agent Zellhart and the agents that executed the warrant are entitled to qualified immunity. *Id.* at 556. The affidavit directly identifies the "nest of safety deposit boxes" as subject to seizure and explains that the boxes are "evidence and instrumentalities of USPV's criminality." Affidavit ¶ 108:14-15; *see United States v. SDI Future Health, Inc.*, 568 F.3d 684, 703 (9th Cir. 2009). The government also explained that USPV was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements, among other offenses. *See* Affidavit ¶¶ 7, 20(a)-(j). And the affidavit further provided specific instances of not only how the criminal scheme worked, but also how the boxes were integral to the scheme. *Id.* Under these facts, no settled law clearly establishes an absence of probable cause.

Cases assessing the validity of warrants for safe deposit boxes support this conclusion, especially when, as in this case, the available evidence indicates that the safe deposit boxes are being used in criminal schemes. For example, *United States v. Chung*, 553 F. App'x 690 (9th Cir. 2014) held that a magistrate judge had a substantial basis for

17

finding probable cause to seize a safe deposit box given a DEA agent's explanation that "loansharking conspiracies will often hide their records and paraphernalia at their homes and in safe deposit boxes." *Id.* at 692; *see Libretti v. Woodson*, 600 F. App'x 367, 372 (6th Cir. 2015) (granting agent qualified immunity for claim that his warrant lacked probable cause because he explained that it was common for "drug traffickers to store drug proceeds in safe deposit boxes" and the box had been accessed recently).

2.   <u>It is not clearly established that the inventory search was unconstitutional.</u>

The inventory search alleged in this case also did not violate clearly established law. The government, recognizing its "responsib[ility] for the property taken into [its] custody," opened and cataloged the contents of the seized safe deposit boxes to protect against claims of theft, damage and "any danger . . .that may have been posed by the property." *Colorado v. Bertine*, 479 U.S. 367, 373 (1987); *see South Dakota v. Opperman*, 428 U.S. 364, 371 (1976) ("[I]t is reasonable to search the container to itemize the property to be held by the police.") (citation omitted). Critically, this alleged process occurred pursuant to "standardized criteria or established routine," *Florida v. Wells*, 495 U.S. 1, 4 (1990), as the FBI "follow[ed] their written inventory policies to protect their agencies from claims of theft or damage to the contents of the boxes, and to ensure that no hazardous items are unknowingly stored in a dangerous manner," Affidavit ¶ 108:14-15 *See United States v. Gaston*, 740 F. App'x 576, 577 (9th Cir. 2018) (Finding that "routine practice of opening locked containers if they can be readily opened during an inventory search" qualified as standardized practice and therefore validated inventory search.). This conformity to inventory search standards necessarily precludes Plaintiffs from plausibly alleging that the search violated clearly established law. The unique circumstances alleged here underscore the point. No "controlling authority" or "robust consensus of . . . persuasive authority" establishes that the government's inventorying of hundreds of anonymously held safe deposit boxes,

18

intentionally made anonymous by design and via sophisticated technology, violated the Fourth Amendment. *al-Kidd*, 563 U.S. at 741.

Plaintiffs' unadorned allegation that the search was in fact a "pretext for conducting an investigatory search" cannot save his claim. FAC ¶ 88. In *United States v. Bowhay*, 992 F.2d 229 (9th Cir. 1993), the plaintiff made a similar argument when an officer admitted that he "viewed [a] search as both an investigative and as an inventory search[.]" *Id*. at 231. However, the court still held that "the presence of an investigative motive [did] not invalidate the inventory search." *Id*. It reasoned that because "the department's policy was to search everything[,] the officer had no discretion" and thus his motive was beside the point. *Id*. This case is no different. Plaintiffs allege that the inventory procedure involved opening all boxes seized. FAC ¶ 29. Thus motive is irrelevant. More to the point, it is clearly established that motive is irrelevant under these circumstances. "[T]he Supreme Court has not required an absence of expectation of finding criminal evidence as a prerequisite to a lawful inventory search. . . . [M]otivation [] cannot reasonably disqualify an inventory search that is performed under standardized procedures for legitimate custodial purposes." *United States v. Lopez*, 547 F.3d 364, 372 (2d Cir. 2008) (citations omitted).

3.   Plaintiffs have not alleged a violation of clearly established rights under the Fifth Amendment.

Plaintiffs fail to allege the violation of a clearly established procedural due process right because they do not allege the absence of a "meaningful post deprivation remedy" for recovering the contents of their box (or the value of those contents). *Cf. Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a [government] employee does not constitute a violation . . . of the Due Process Clause . . . if a meaningful post deprivation remedy for the loss is available."). The Fourth Amendment prevents them from doing so because it "define[s] the 'process that is due' for seizures of person or property in criminal cases," as is the circumstance here. *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975). And the Fourth Amendment

19

usually does not require pre-deprivation notice and opportunity to be heard. Instead, the availability of a post-seizure return motion, such as under Federal Rule of Criminal Procedure 41(g), is the adequate post-deprivation process. *Cf. Perkins v. City of W. Covina*, 113 F.3d 1004, 1011 (9th Cir. 1997) (holding that California law provides by motion adequate remedies for return of property), *rev'd on other grounds, sub nom. City of W. Covina v. Perkins*, 525 U.S. 234 (1999).

The necessity of alleging the absence of a post deprivation remedy also extends to allegations that the property was either lost or destroyed. For example, in *Marulanda v. U.S. Marshals Serv.*, 467 F. App'x 590 (9th Cir. 2012) the plaintiff alleged "violations of his Fifth Amendment due process rights in connection with the destruction of his personal property." *Id*. at 590. But the Ninth Circuit affirmed the dismissal because 31 U.S.C. § 3724(a), which allows settlement of losses caused by law enforcement, "provided an adequate post-deprivation remedy for the unauthorized acts of a federal employee." *Id*. The availability of § 3724(a) in this case defeats Plaintiffs' procedural due process claim for loss or damage.

## CONCLUSION

For the foregoing reasons, the Assistant Director in Charge Johnson and Special Agent Zellhart's motion to dismiss should be granted.

Dated: January 6, 2022                    Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division

20

*/s/ Joseph A. Gonzalez*
JOSEPH A. GONZALEZ
Trial Attorney, Torts Branch, Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
(202) 598-3888 (phone)
(202) 616-4314 (fax)
joseph.a.gonzalez@usdoj.gov

Attorneys for Defendants Kristi Koons Johnson
and Lynne K. Zellhart in their individual
capacities

**DECLARATION OF DOJ ATTORNEY JOSEPH A. GONZALEZ**

I, Joseph A. Gonzalez, declare as follows:

1.      I am one of the DOJ attorneys representing the individual capacity defendants in this action.

2.      Plaintiffs' counsel informed me on December 22, 2021 that they would be filing an amended complaint the next day. I immediately requested a meet and confer and held a conference with Plaintiffs' counsel regarding the claims and defenses on December 23, 2021. Among other things, I questioned how Plaintiffs planned to overcome the Court's decision in *Louis Loe v. United States of America, et al.*, 2:21-cv-003348 (C.D. Cal.). We have not been able to resolve our differences.

3.      I have attached a copy of the indictment against USPV hereto as Exhibit A.

4.      I have attached a copy of the USPV warrant as Exhibit B

5.      I have attached a copy of the USPV warrant affidavit drafted by Special Agent Zellhart hereto as Exhibit C.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed in Washington, D.C. on January 6, 2022.

/s/ *Joseph A. Gonzalez*
Joseph A. Gonzalez

1